Kafdreec
                        Teleconference

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,              New York, N.Y.

4           v.                            20 Cr. 0500(JGK)

5   SAMUEL REED,

6                   Defendant.

7   ------------------------------x

8
                                          October 15, 2020
9                                         3:30 p.m.

10
    Before:
11
                        HON. JOHN G. KOELTL,
12
                                          District Judge
13

14                      APPEARANCES (via telephone)

15  AUDREY STRAUSS
        Acting United States Attorney for the
16      Southern District of New York
    BY:  SAMUEL RAYMOND
17      JESSICA GREENWOOD
        Assistant United States Attorneys
18
    LATHAM & WATKINS LLP
19      Attorneys for Defendant
    BY:  DOUGLAS KENT YATTER
20      BENJAMIN NAFTALIS
        JACK McNEILY
21

22

23

24

25

Kafdreec
                        Teleconference

1          (Teleconference initiated)

2          THE CLERK:  United States of America versus Samuel

3    Reed.

4          All parties, please state who they are for the record.

5          MR. RAYMOND:  Good afternoon, your Honor.  This is

6    A.U.S.A. Sam Raymond joined by my colleague A.U.S.A. Jessica

7    Greenwood for the government.

8          MR. YATTER:  Good afternoon, your Honor.  This is

9    Douglas Yatter, of Latham & Watkins, joined by my partner

10   Benjamin Naftalis and our colleague Jack McNeily on behalf of

11   Mr. Reed.

12         THE COURT:  All right.  This is Judge Koeltl.

13         We're on a telephone conference now.  There is no

14   video.  I would have the conference in court or by video if the

15   parties wished.  I'm doing it by telephone only because my

16   understanding is that the parties wanted to appear by

17   telephone.

18         Is the defendant also on the line?

19         MR. YATTER:  He is, your Honor.  Mr. Reed is here with

20   us on the phone.

21         THE COURT:  OK.  So, if the defendant wanted to have

22   this conference in court in person or, as an alternative, by

23   video hookup, I would do that.

24         Does the defendant waive his physical presence for

25   purposes of this conference?

Kafdreec
Teleconference

1    MR. YATTER:  He does, your Honor.

2    THE COURT:  OK.  I believe -- and if anyone talks,

3    they should say who they are so that the court reporter

4    properly gets the attributions.

5         Was that Mr. Yatter?

6    MR. YATTER:  It is, your Honor.  Yes.  Everything said

7    so far for Mr. Reed was by me.

8    THE COURT:  OK.  We also have a form for the defendant

9    to waive his physical presence at a conference, and defense

10   counsel should see that that waiver is signed and filed.

11   Mr. Fletcher can provide you a copy of it.

12        I take it that hasn't yet been signed and filed, am I

13   right?

14   MR. YATTER:  Your Honor, we did execute one in advance

15   of the initial appearance before Magistrate Judge Cave earlier

16   this week.

17   THE COURT:  Does that apply to this conference also?

18   MR. YATTER:  I believe it is written broadly enough to

19   do so, but I would have to check that, your Honor.  We're happy

20   to look at that, and if a new one is needed, we're happy to put

21   that on file.

22   THE COURT:  OK.  Great.

23        As another initial matter, I should point out that I

24   know Mr. Naftalis.  Nothing about that affects anything that I

25   do in the case.

Kafdreec
                    Teleconference

1          I should also point out that my niece is a partner in

2    Latham & Watkins, but she doesn't work on any cases where I am

3    the judge and she doesn't receive any income from any cases on

4    which I am the judge, and nothing about that affects anything

5    that I do in the case.  But I bring those matters to your

6    attention at the outset.

7          All right.  So, Mr. Raymond, tell me about the case

8    and where we are.

9          MR. RAYMOND:  Yes, your Honor.  This is A.U.S.A.

10   Raymond, to be clear.

11         THE COURT:  I can't -- whoa, whoa, whoa, whoa.  Your

12   connection is not very good for me.  I don't know how good it

13   is for the court reporter.

14         MR. RAYMOND:  Can you hear me better now, your Honor,

15   and the court reporter?

16         THE COURT:  I hear you somewhat better.

17         court reporter?

18         THE REPORTER:  Yes, your Honor.  He is a little bit

19   better now.

20         THE COURT:  OK.  OK.  Somewhat better for me, too.

21         MR. RAYMOND:  OK.  Your Honor, I'm holding the phone

22   to my ear so I hope there are no other issues, but please let

23   me know if you can't hear me.

24         THE COURT:  OK.  Go ahead.

25         MR. RAYMOND:  Thank you.

Kafdreec
                    Teleconference

1          This is a case, as the indictment makes clear, about

2    BitMEX, which is a company operated by, among others --

3          THE REPORTER:  Mr. Raymond, I'm sorry.  This is the

4    court reporter.  Mr. Raymond, you are too fuzzy.  I wasn't

5    making that out.  You have to go, because of your connection,

6    really slowly.  I'm sorry.

7          THE COURT:  I'm sorry.  What kind of phone are you

8    using?

9          MR. RAYMOND:  I'm using an iPhone.

10         THE COURT:  You don't have a regular -- OK.  Go

11   slowly, please.

12         MR. RAYMOND:  Yes.  Thank you. your Honor.  And

13   apologies for the bad connection.

14         This is a case about FitMEX, which is a financial

15   institution, which was operated by the defendant and his

16   codefendants, that has been -- the defendant and his

17   codefendants have been violating and conspiring to violate the

18   Bank Secrecy Act since in or about September 2015.

19         They did so -- excuse me, your honor.

20         THE COURT:  No.  I was just going to say, go ahead.

21         MR. RAYMOND:  Thank you.

22         They did so by failing to implement -- by willfully

23   failing to implement anti-money laundering and know your

24   customer programs, which would allow them to properly identify

25   their customers, and they did so while serving U.S. customers

Kafdreec
Teleconference

1    and operating in the United States.

2            As to this specific defendant, he earned millions of

3    dollars from his ownership and operation of BitMEX, and he and

4    his codefendants worked together to try to deceive regulators

5    by claiming not to serve the U.S. market while in fact doing

6    so.

7            And, just finally, as alleged in the indictment, when

8    the CFTC began to investigate BitMEX in late 2018, Mr. Reed was

9    deposed in January 2019.  He falsely denied knowing that BitMEX

10   maintained reports where it identified the presence of U.S.

11   customers on its platform despite the fact that just a month

12   earlier he had received such a report.

13           THE COURT:  All right.  What is the status of the

14   other defendants?

15           MR. RAYMOND:  Your Honor, no other defendant has been

16   arrested in this case.  They are currently -- they remain at

17   large in other jurisdictions, and we cannot predict the

18   timeline for any appearance.

19           THE COURT:  And what is the status of Mr. Reed?  He

20   was -- am I correct, he was arraigned on the indictment before

21   the Magistrate Judge and so had his initial appearance before

22   the Magistrate Judge and was warned of all of his rights?

23           MR. RAYMOND:  Your Honor, I'm going to turn over that

24   question to A.U.S.A. Greenwood, who handled that presentment.

25           MS. GREENWOOD:  Hi, your Honor.  This is A.U.S.A.

Kafdreec
                              Teleconference

1   Jessica Greenwood.

2          Yes, you are correct.  Mr. Reed had his initial

3   presentment and arraignment in magistrate's court on Tuesday,

4   the 13th of this week, in front of Judge Cave.  Following -- he

5   was arrested out of district and had initially had an

6   appearance in Massachusetts but has now appeared remotely in

7   this district.  And Judge Cave excluded time from the speedy

8   trial clock from that initial appearance and arraignment on

9   Tuesday through today's conference.

10         THE COURT:  OK.  Thank you.

11         What is the status of discovery?

12         MS. GREENWOOD:  This is A.U.S.A. Greenwood again.

13         So we have not yet begun discovery, but we had a

14  conference with defense counsel shortly before today's

15  conference to talk them through the general categories of

16  discovery, which I'm also happy to walk the Court through in

17  terms of what is anticipated, and so we will begin discovery

18  shortly.  And, as I said, I'm happy to walk the Court through

19  what we expect to produce.

20         THE COURT:  Yes.  Please.

21         MS. GREENWOOD:  So, by and large, the government's

22  discovery will consist of documents produced by BitMEX, by the

23  company as part of the investigation.  So the vast majority of

24  documents we'll be producing will be from the company that

25  Mr. Reed founded and co-ran during the relevant time period.

Kafdreec
Teleconference

1  We also have document productions from third parties.

2          There is one search warrant that implicates an account

3  used by Mr. Reed which is a Reddit account, a social media

4  website messaging platform.  We have additional search warrant

5  returns for other electronic accounts and devices belonging to

6  individuals other than Mr. Reed.  We also expect to produce

7  some limited data in response to other Court orders.  There was

8  a GPS location warrant on Mr. Reed's cell phone for less than a

9  day's worth of data prior to his arrest.

10          There were a couple of pen register orders for

11  information on a Twitter account and a couple of WhatsApp

12  accounts belonging to third parties other than Mr. Reed.  And

13  then there will be some materials relevant to a government

14  undercover investigation involving use of the BitMEX platform.

15          So, broadly, that's sort of the nature of the

16  discovery that we expect to produce.  Mr. Reed did not make a

17  post-arrest statement, and there were no other searches of

18  Reed's devices or promises.

19          THE COURT:  What's the volume of the discovery?

20          MS. GREENWOOD:  With respect to the documents from the

21  company, your Honor, it's in the neighborhood of a little in

22  excess of 100,000 documents.  I think it is about 107,000

23  documents from last I checked.  There are at least another

24  50,000 or so documents from third parties and a smaller number

25  that we're still compiling, and that would include third-party

1   document productions as well as things like search warrant

2   returns.

3   　　　　THE COURT:  OK.  And what's the timeline to make all

4   of the productions?

5   　　　　MS. GREENWOOD:  We can begin making productions

6   immediately, but we think it will take on the outer edge two

7   months to complete discovery.

8   　　　　THE COURT:  OK.

9   　　　　MS. GREENWOOD:  And one other issue, just to mention

10  about discovery, your Honor.

11  　　　　THE COURT:  Of course.

12  　　　　MS. GREENWOOD:  And we had conferred with defense to

13  let them know we'll be seeking a protective order to protect at

14  least some of the materials we plan to produce from disclosure.

15  We hope to reach consent with defense counsel on that

16  protective order, and we'll be discussing a draft with them

17  after today's conference.

18  　　　　THE COURT:  OK.  So, to confirm, no time off the

19  speedy trial clock at this point?

20  　　　　MS. GREENWOOD:  That's correct, your Honor.

21  　　　　THE COURT:  What is your estimate with respect to the

22  length of time for trial?

23  　　　　MS. GREENWOOD:  It will depend, I guess, somewhat on

24  whether or not there are additional defendants who appear

25  between now and then, but I think, assuming it is Mr. Reed and

Kafdreec

1  perhaps one or two others, I think at least a three- to

2  four-week trial would be, I think, a reasonable estimate.

3          THE COURT:  OK.  Did you mark this as a Wheel A case,

4  or, I'm sorry --

5          MS. GREENWOOD:  We did not, your Honor.

6          THE COURT:  What did you mark it as, a wheel which?

7          MS. GREENWOOD:  We marked it as a Wheel C case.

8          THE COURT:  Wheel C, OK.  Thanks.

9          OK.  What I would normally do is since the government

10  estimates it will take about two months to make discovery, that

11  would take us to the beginning of December.  I would set it

12  down for another conference perhaps the beginning of February,

13  at which time the defendant can tell me what motions, if any,

14  the defendant intends to make, how much time it will take the

15  defendants, and I would, depending on the schedule, set the

16  time for motions and trial at that point.

17          So, that would take us to the beginning of February

18  for another conference, unless the defendant has other thoughts

19  about an appropriate schedule or the government.  So, is there

20  anything that the defendant would like to tell me?

21          MR. YATTER:  Thank you, your Honor.  This is

22  Mr. Yatter.

23          The approach you've outlined sounds pretty much

24  reasonable to us, so no objection to proceeding on that

25  timeline.  We look forward to working with the government to

Kafdreec
Teleconference

1   get the material that they have described.

2           THE COURT:  OK.  Mr. Fletcher, can we get a date

3   towards the beginning of February?

4           THE CLERK:  Tuesday, February 9, 2021, at 11:30 a.m.

5           THE COURT:  Is that convenient for everyone?

6           MR. YATTER:  Your Honor, I apologize, I couldn't hear

7   the date that was said.

8           THE COURT:  Sure.  February 9 at 11:30 a.m.

9           MS. GREENWOOD:  That works for the government, your

10  Honor.

11          THE COURT:  And the defense?

12          MR. YATTER:  It looks fine on this end as well, your

13  Honor.

14          THE COURT:  OK.  Another conference February 9 at

15  11:30 a.m.

16          I will exclude prospectively the time from today until

17  February 9, 2021 from Speedy Trial Act calculations.  The

18  continuance is designed to assure effective assistance of

19  counsel.  It's required because of the complexity of the case

20  and the volume of discovery.  It's required in order to allow

21  the defense to determine what motions, if any, the defendant

22  intends to make.  The Court finds that the ends of justice

23  served by ordering the continuance outweigh the best interests

24  of the defendant and the public in a speedy trial.  This order

25  of exclusion is made pursuant to the 18 U.S.C. Section

Kafdreec
Teleconference

1   3161(h)(7)(A).

2          OK.  Anything else?

3          MR. RAYMOND:  Yes, your Honor.  This is A.U.S.A.

4   Raymond again.

5          I want to -- the government respectfully moves the

6   Court to revisit one of the bail conditions.  The defense wrote

7   to the Court on Tuesday seeking to modify two conditions of the

8   defendant's bail that had been set in Massachusetts and --

9          THE COURT:  Right.

10         MR. RAYMOND:  And that was, as the defense said at the

11  time, with the government's consent.  The government has since

12  learned with respect to the condition about the defendant not

13  contacting and communicating with his codefendants except in

14  the presence of counsel.  The government has since learned,

15  according to a public filing by the company, that Mr. Reed, as

16  well as his codefendants, have stepped back from executive

17  management responsibilities and are no longer officers of

18  BitMEX.  This was a blog post posted on October 8th by BitMEX.

19         So, the government would respectfully -- the

20  government did not seek this condition initially and then

21  consented to its removal, but the government respectfully moves

22  that given the changed circumstance of Mr. Reed's employment on

23  an ongoing basis at BitMEX, as well as his codefendants, that

24  the no-contact condition be reapplied, given the changed

25  circumstances around his employment.

Kafdreec
Teleconference

1    THE COURT:  All right.  Defense.

2    MR. YATTER:  Yes, your Honor.

3    We oppose the request to reopen that condition.  I

4 think the reasons for it are already embedded in Mr. Raymond's

5 description of the issue.  This restriction was not one that

6 the government thought when we negotiated the terms of Mr.

7 Reed's release.  It was not part of the agreed bail package.

8 It emerged through the proceedings in Boston, and then we

9 promptly raised it with them afterwards as one of the things

10 that has no basis and is not necessary and should be removed.

11    The government consented to that.  As Mr. Raymond

12 noted, we submitted the letter to the Court earlier this week,

13 I believe it was on the 13th.  The blog post that Mr. Raymond

14 is referring to was published on October 8th, several days

15 before our letter noting the government's consent.

16    And on the substance of it, we would just note that

17 there is no basis, apparent or needed, for that kind of a

18 restriction on Mr. Reed or his codefendants.  As the blog post

19 reported, he and others have stepped back from their executive

20 management roles, but Mr. Reed remains a director and there

21 are -- there may be needs for them to speak and discuss in that

22 context the business that they founded and for which Mr. Reed

23 and others are directors.

24    THE COURT:  Government?

25    MR. RAYMOND:  Your Honor, just in terms of the timing,

1  the government hadn't seen the blog post when it consented

2  despite the fact that it was -- might have been posted on

3  October 8th.  So that's, first of all, addressing the timing.

4    In terms of the underlying merits, your Honor, the

5  government would respectfully submit, given the fact of

6  Mr. Reed's actual obstruction in this case as alleged in the

7  indictment in paragraph 27, the fact his codefendants are at

8  large and have -- while the government is seeking a protective

9  order, the government's concerned that the purpose of that

10  protective order might be undermined if Mr. Reed were to have

11  discussions with his codefendants uncounseled.  And while

12  Mr. Reed still has some -- might still have some need to

13  communicate about business matters, it isn't the same level of

14  ongoing business that he did before this announcement was made

15  by the company.

16    So, given that, your Honor, the government

17  respectfully submits that there is a valid basis.  And I

18  understand this was also a recommendation by Pretrial in New

19  York for a no-contact order between the defendant and his

20  codefendants without counsel.  They can still have joint

21  defense conversations, of course, with counsel.

22    THE COURT:  Anything the defense wants to add?

23    MR. YATTER:  Yes, your Honor, just to respond to that.

24    Mr. Reed remains on the Board of Directors as do the

25  others, and they need to be able to hold meetings and have

Kafdreec
                    Teleconference

1  board-level discussions.

2          Mr. Raymond's concern about the protective order is

3  addressed by the protective order.  That's the vehicle for

4  addressing those concerns, not an unnecessary restriction on

5  contact between these individuals.  And, obviously, we would

6  strongly disagree with Mr. Raymond's characterization and note

7  that those are just allegations, not more.

8          THE COURT:  OK.  Several of the arguments that have

9  been made with respect to the no-contact condition are really

10 beside the point.  Whether the government originally consented

11 is not terribly relevant.  The government no longer consents.

12         The issue is whether there is a sufficient showing for

13 this particular condition.  Whether the government saw the blog

14 post or should have seen the blog post before it agreed to the

15 condition -- or agreed to eliminate the condition is also

16 beside the point.  The issue is whether the condition is

17 justified or not.  I could impose a brand new condition, and

18 what the parties had previously argued or consented to would be

19 beside the point.  The issue is, is there a basis for this

20 particular conclusion.

21         The government says it agreed to the condition

22 initially based on the understanding that the defendant needed

23 to contact and speak with his codefendants because they were

24 all executive officers of the company.  Now, it's represented

25 that they are no longer executives of the company but they are

Teleconference

1   directors of the company.  How often they would have to

2   communicate with respect to being directors of the company is

3   certainly something that hasn't been developed.  Whether they

4   get reports as directors and show up once every four months or

5   so for a Board of Directors' meeting and that's it would make a

6   difference.  Whether they need ongoing contact because they are

7   directors is something that's really not developed.

8           It obviously is an imposition not to talk to other

9   directors, but what the burden of that imposition is is

10  unclear.  The defendant would have an interest in not placing

11  himself in a position where it could be said that he was

12  involved in some form of obstruction through contacts with his

13  codefendants, and certainly defense counsel would have an

14  interest in avoiding even the appearance of obstruction, which

15  certainly could be obviated by a clear condition that the

16  defendant not talk to his codefendants except in the presence

17  of counsel.  All of those are considerations which really

18  haven't been fleshed out for me in the course of the discussion

19  before me.  And a little consideration of what the merits of

20  the condition are and what the benefits of the condition are to

21  the defendant would be useful.

22          My bottom line is that the parties, through this

23  application, haven't given me sufficient information to be able

24  to determine whether the reimposition of the condition is one

25  that's warranted.  So, I'm not going to change the condition,

Kafdreec
                        Teleconference

1  which has now been eliminated, with the government's consent,

2  but the government says they weren't aware of the change in

3  circumstances.  I am open to an application by the government

4  to impose the condition if in fact after further discussions

5  between the government and the defense there really is an issue

6  as to whether the condition should be reimposed or not

7  reimposed and why and whether there is a sufficient basis and

8  whether the defense really contests the condition.  As I have

9  said, on reflection, it may well appear to be the better course

10  to the defense that the defendant not have consultations with

11  his codefendants solely because they are directors of the

12  company except in the presence of counsel, but I'm not going to

13  decide that until I have an application and a response.

14        So, if the government wants to reimpose the condition

15  after discussing this with the defense and there is opposition,

16  the government can write me a letter, the defense can object.

17  And if the parties have any narrower suggestions for me, they

18  can put it in writing and I'll decide whether to reimpose the

19  condition.

20        MR. RAYMOND:  Thank you very much, your Honor.

21        MR. YATTER:  Thank you, your Honor.

22        THE COURT:  OK.  Sure.  Anything else?

23        MR. RAYMOND:  Nothing further from the government.

24  Thank you.

25        THE COURT:  I'll see you all hopefully in person

Kafdreec
Teleconference

1  February 9th at 11:30 a.m.  If there are any developments in

2  addition to the bail condition and the protective order, you

3  are welcome to ask for another conference before then.  Just

4  send me a letter.

5          OK.  Good to talk to you all.

6          Anything further?

7          (Pause)

8          MR. YATTER:  Thank you, your Honor.

9          MR. RAYMOND:  Nothing on this end, your Honor.  Thank

10  you.

11          THE COURT:  OK.  Bye now.

12          (Adjourned)

13

14

15

16

17

18

19

20

21

22

23

24

25