```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

            v.                          20 CR 500 (JGK)

ARTHUR HAYES,
BENJAMIN DELO,
SAMUEL REED,

            Defendants.                 Conference
                                        (via Telephone)
------------------------------x

                                        New York, N.Y.
                                        April 14, 2021
                                        12:05 p.m.

Before:

                    HON. JOHN G. KOELTL,

                                        District Judge

                         APPEARANCES

AUDREY STRAUSS
     United States Attorney for the
     Southern District of New York
BY:  SAMUEL RAYMOND
     Assistant United States Attorney

AKIN GUMP STRAUSS HAUER & FELD LLP
     Attorneys for Defendant Hayes
BY:  JAMES JOSEPH BENJAMIN, JR.

SMITH VILLAZOR LLP
     Attorneys for Defendant Delo
BY:  PATRICK J. SMITH

LATHAM & WATKINS LLP
     Attorneys for Defendant Reed
BY:  DOUGLAS K. YATTER
     BENJAMIN A. NAFTALIS
```

1          (Case called)

2          MR. RAYMOND:  Good afternoon, your Honor, this is Sam

3    Raymond for the government.

4          MR. BENJAMIN:  Good afternoon your Honor, this is Jim

5    Benjamin from Akin Gump Strauss Hauer & Feld appearing on

6    behalf of Mr. Hayes, who is also on the line.

7          MR. SMITH:  Good afternoon, your Honor, Patrick Smith,

8    Smith Villazor LLP, for defendant Benjamin Delo, who is on the

9    line.

10          MR. YATTER:  Good afternoon, your Honor, Douglas

11    Yatter and my partner, Ben Naftalis, from Latham & Watkins for

12    Mr. Reed, who is also on the line.

13          THE COURT:  Good afternoon, all.

14          We are doing this by telephone conference.  I would

15    normally do it in court, but there is a national emergency as a

16    result of the pandemic.  There is also a continuing emergency

17    in our court which our former chief judge had declared.  Access

18    to the court is possible, although it is more limited.

19          I believe that each of the defendants has executed a

20    consent to have the conference today by a telephone conference.

21    There is some urgency for the conference in the interests of

22    justice, which would be harmed if we didn't have a conference

23    because the defendants have asked for the conference.

24          Am I right that each of the defendants consents to

25    have the proceeding via telephone conference and waives the

3

L4EMHAYC

1  right to a personal appearance?

2          Mr. Benjamin for Mr. Hayes.

3          MR. BENJAMIN:  Yes, your Honor.  Thank you.  We

4  consent.

5          THE COURT:  Mr. Smith for Mr. Delo.

6          MR. SMITH:  Yes.  Mr. Delo consents.

7          THE COURT:  Mr. Yatter for Mr. Reed.

8          MR. YATTER:  Yes, your Honor.  Mr. Reed consents.

9          THE COURT:  Mr. Raymond, do you think I should ask any

10  other questions or make any other findings?

11          MR. RAYMOND:  No, your Honor.  The government believes

12  that's sufficient.

13          THE COURT:  As the defendants have pointed out, I have

14  issued a 5(f) order at various points.  I've also stated it on

15  the record, so I assume that I don't have to do that again,

16  right, government?

17          MR. RAYMOND:  Yes, your Honor.  The government knows

18  of the 5(f) order and is complying with its obligations under

19  *Brady v. Maryland* and *Giglio v. United States*.

20          THE COURT:  Defendants don't think I should do

21  anything more about the public announcement.  Am I right?

22          MR. BENJAMIN:  That's correct, your Honor, on behalf

23  of Arthur Hayes.

24          MR. YATTER:  Agreed on behalf of Mr. Reed, your Honor,

25  and appreciate your referencing the orders that have been

1    previously entered.

2            THE COURT:  Mr. Smith, you agree, also?

3            MR. SMITH:  We agree.

4            THE COURT:  Mr. Raymond, a couple of preliminary

5    items.

6            Our next conference for everyone is scheduled for May

7    11.  I have excluded time until May 11.  I signed the

8    protective order that was provided by Mr. Hayes or directed

9    that it be signed, so it should go up on ECF soon.

10           I believe that each of the three defendants who have

11   appeared have now been arraigned.

12           Is that right, Mr. Raymond?

13           MR. RAYMOND:  Yes, it is, your Honor.  Mr. Hayes was

14   arraigned last week by the magistrate judge, Judge Aaron.

15           THE COURT:  Great.

16           Tell me where we are, Mr. Raymond.

17           MR. RAYMOND:  Yes, your Honor.

18           The government has produced hundreds of thousands of

19   pages of document discovery in this case.  The government has

20   also, as I noted in our letter filed last week, is making early

21   production of 3500 material that would otherwise not be subject

22   to disclosure until much later in this case, including 20

23   witnesses, three of whom are law enforcement witnesses, 17 lay

24   witnesses.

25           The government still has a few productions that are

1    outstanding and the outstanding productions are based on when

2    we obtain the materials, when we have completed review of

3    search warrants.  And because of the time it takes to process

4    some of the document production, especially now that we're

5    talking about potential productions of three different

6    defendants.

7              Then, finally, just the last category, your Honor,

8    which we are in the process of obtaining, are the documents

9    with respect to Mr. Hayes' arrest last week in Hawaii.

10             THE COURT:  Are we waiting on Mr. Dwyer?

11             MR. RAYMOND:  Your Honor, Mr. Dwyer is currently -- we

12   don't have a specific date for Mr. Dwyer right now.  The

13   government has initiated extradition proceedings.

14             THE COURT:  From where?

15             MR. RAYMOND:  From Bermuda.

16             THE COURT:  Did you complete your explanation of the

17   status of the case and discovery?

18             MR. RAYMOND:  Yes, your Honor.

19             THE COURT:  The reason for the conference was that I

20   was originally asked by counsel for Mr. Reed, joined by

21   Mr. Delo, for a discovery conference, and then Mr. Hayes also

22   added his request.

23             I read the correspondence, although the initial letter

24   referred to a series of exhibits, which are not on ECF, and

25   there was an indication that the parties were working on

1    redactions to those exhibits.

2           So there are issues raised by the defendants that the

3    government has not been responsive to the obligations for

4    discovery.  The government says it has been responsive and has

5    produced more than it would otherwise be required to produce,

6    particularly given the strictures of 3500.  And the government

7    says that with respect to Mr. Hayes, Mr. Hayes' questions will

8    soon be answered when it makes its production after it gets the

9    signed protective order.

10          As you probably know, my preference is certainly for

11   the parties to cooperate in terms of production of information.

12   There are -- I expect all the lawyers in the case to do that

13   and to attempt to work out among themselves issues with respect

14   to discovery.  There are limits to what the Court can do.  On

15   the other hand, as I've said, I expect the parties to

16   cooperate.  The government says it's been doing that and has

17   made more discovery, in fact, than it's required to produce.

18          There is also the issue of the existence of a taint

19   team that the government prefers to call filter team.  I am not

20   sure that I'm being asked to do anything with respect to that.

21   This isn't a case where I'm being asked to appoint a special

22   master.  It's not a case where lawyers' files have been seized

23   wholesale.

24          Those are some initial observations on the

25   correspondence.  Perhaps you all have worked everything out

7

L4DMREAYC

1   after the correspondence or will work everything out before the

2   next conference on May 11, but I'm certainly happy to listen to

3   anything that you all would like to tell me.

4          This was started by counsel for Mr. Reed.

5          Mr. Yatter, do you want to tell me anything?

6          MR. YATTER:  Yes, your Honor.

7          Mr. Naftalis is here with me as well, and we will each

8   speak to one of the issues teed up by the letters, your Honor.

9          We very much appreciate your calling this conference

10  for today.  It helps to get some clarity on the government's

11  position, although that position still leaves us with concerns

12  and a lack of information both in regard to the taint team and

13  under *Brady*.

14         If it's OK, your Honor, I will speak to the taint

15  teams issues and Mr. Naftalis will take up the *Brady*

16  discussion.

17         On the taint team, your Honor, we are frankly

18  surprised by the government's position on this.  The history,

19  as you know from the letters, is that the government disclosed

20  the existence of the taint team, with very little information

21  about it, to Mr. Reed in December, at a time when Mr. Reed was

22  the only defendant who had appeared in the case.

23         And then after some initial clarification of whose

24  privileges were, in the government's view, at issue, the

25  government declined to answer any of our questions until

1    informing us this week in their letter that they do not believe

2    they have any obligation to answer any questions from Mr. Reed

3    about the taint team process.

4         Setting aside for a moment the information that the

5    government has said it will share with Mr. Hayes -- and

6    Mr. Hayes' counsel is on the phone and I'm sure will be happy

7    to speak to that or a discussion they had with other privilege

8    holders -- we would just reiterate that we believe -- and it is

9    reflected by the fact that the government disclosed this issue

10   to Mr. Reed initially -- that Mr. Reed certainly has an

11   interest in the very basic information about the taint team and

12   its work.

13        We would note in this regard that the government's

14   position that we are not the privilege holder, in their view,

15   while we will reserve on the correctness of that, we think

16   that's beside the point in several ways, most notably that we

17   are not requesting the privileged information.  We are

18   requesting basic information akin to what would go in a

19   privilege log about the taint team's work and very basic

20   information about who the taint team is, how their work was

21   structured within the U.S. Attorney's Office.

22        As it stands now, we can only guess that the sources

23   of information that went to the taint team or sources of

24   information that went straight to the investigation, we can

25   only guess how the government determined which attorneys were

9

L4DMRAY1

1    at issue, what legal advice was at issue, and what was, in

2    their view, not privileged.

3            We are not aware of the government having consulted

4    with any of the privilege holders, or, for that matter, with

5    the Court, in formulating its approach.  So the government made

6    all these determinations on its own.

7            As it stands now, we are asked to take the

8    government's word for it, and not just the word of Mr. Raymond

9    or Ms. Greenwood, but the word of an unidentified taint team

10   somewhere within the U.S. Attorney's Office whose work is a

11   complete black box.

12           We would reiterate our request that the government

13   provide to Mr. Reed the basic information that we have

14   requested about the workings of the taint team and the

15   privileged determinations that are made.

16           THE COURT:  The government can respond in a moment,

17   but where would this information get listed in a privilege log?

18           MR. YATTER:  Your Honor, the things that we have

19   requested are really precisely what would go in a privilege

20   log, the dates of documents withheld --

21           THE COURT:  A privilege log would reflect documents

22   withheld on the basis of privilege and of basic information

23   about date from whom to whom.  It wouldn't include all of the

24   information about who reviewed the documents, when they were

25   reviewed, what standards were used to refer to review of the

1    documents for purposes of privilege.

2          The only reason I raise that question is the

3    information that you've outlined that you were seeking, you

4    said, would normally be covered in a privilege log and that

5    doesn't sound like information that would normally be in a

6    privilege log.

7          MR. YATTER:  Correct, your Honor.  There are really

8    two categories here.  The names, the identities of the taint

9    team that did the work, the outside scope of the conventional

10   privilege log.  But I believe everything else we have asked for

11   is squarely within, and it would be instructive in knowing what

12   they viewed as privileged and what they did not by having the

13   benefit of an assertion by them of the privileges that they

14   deem to be applicable.

15          I would just note, your Honor, that our concern for

16   this is heightened, to a great degree, as you have seen in the

17   correspondence, by the fact that the investigation -- at the

18   time of the initial disclosure, part of what they disclosed to

19   us in December is that the investigation team had in its

20   possession a privileged document that it then purged and sent

21   to the taint team.

22          Now, Mr. Raymond in his correspondence said that we

23   mischaracterized or misunderstood what they said, but his point

24   there only heightens our concern.  Because whether this is a

25   document that went through the taint team and ended up with the

1   investigation team inappropriately or, instead, was something

2   that came to the investigation team without going through the

3   taint team, that only heightens our concern as to what

4   privileged information may have been reviewed by the

5   investigation team.  We know there is already one document.  We

6   don't know what else there might have been.

7          THE COURT:  Mr. Raymond.

8          MR. RAYMOND:  Yes, your Honor.

9          I think that the most important point that I'd like to

10   emphasize is, Mr. Yatter said or he implied that because we

11   told Mr. Reed that there was potential issues of privilege,

12   that necessarily means that the government taint team process

13   is subject to disclosure.  I don't think one follows from the

14   other.  We told Mr. Reed of the fact that there were

15   potentially privileged documents unrelated to him that were in

16   this investigation.  The fact that we told him that, though,

17   does not mean that he's entitled to the other materials he is

18   asking for.

19          The only other point I would emphasize, your Honor, I

20   think the idea of a privilege log is itself somewhat -- it's

21   difficult to imagine how that would work.  The government and

22   the filter team has not made privilege determinations because

23   the government is not the privilege holder.  The filter team

24   has segregated potentially privileged documents from the

25   investigative team.

 1          Finally, your Honor, to come back to a point,

 2     especially as to Mr. Reed, that we made in the letter as to

 3     Mr. Hayes yesterday, I do think that Judge Rakoff's recent

 4     opinion in the *Weigand* case is directly on point and is even

 5     stronger on Mr. Reed.

 6          In *Weigand*, the defendant, whose potentially

 7     privileged documents themselves were at issue, asked for the

 8     scope of the government's review, the use of the filter process

 9     and the protocols, and Judge Rakoff correctly held that the

10     defendant himself is not entitled to that under Rule 16.  So a

11     fortiori for an individual like Mr. Reed, whose privileges are

12     not implicated, there is no basis for that information to be

13     disclosed to him.

14          THE COURT:  Is there any other information with

15     respect to the filter team process that, in the government's

16     view, can reasonably be provided?

17          I assume that you say there are -- the government has

18     come across, in the course of its work in preparation for the

19     case as a result of subpoenas or search warrants or whatever,

20     documents that might, for example, otherwise be produced.  But

21     the government says there are potential privileges, but they

22     are not Mr. Reed's privilege.

23          Would it not be useful to at least say what the

24     potential privileges are and who the potential holders are, who

25     I assume have to be consulted by the government, in any event.

1   The correspondence indicates that potential privileges include

2   attorney-client, spousal privilege.  Potential holders are

3   BitMEX and Mr. Hayes.  Whether there are any other privileges

4   involved and whether there are any other holders isn't clear.

5           Does the government want to respond to that, or not?

6           MR. RAYMOND:  Your Honor, I don't think that that

7   material or that information is material to preparing the

8   defense, so it is not subject to disclosure under Rule 16.  I

9   think as to -- this is some of the back and forth with

10  Mr. Hayes in the letter we filed this morning.  To the extent

11  that Mr. Hayes or Mr. Hayes, Mr. Delo, and Reed all together

12  are asserting some control over the corporate privilege, the

13  government is going to produce to the corporate counsel the

14  documents potentially privileged as to the corporation.  And

15  either they can use their control to obtain those documents or,

16  under what I think is a pretty fact-bound determination under

17  the Second Circuit's decision in the grand jury case, that they

18  are entitled to the corporate privilege themselves.

19          But as to any other applicable privilege, your Honor,

20  I don't think that that is material subject to disclosure under

21  Rule 16.

22          THE COURT:  With respect to the other potential

23  holders other than BitMEX and Mr. Hayes.

24          MR. RAYMOND:  Yes, your Honor.  I don't believe that

25  is subject to disclosure under Rule 16.

1          THE COURT:  The potential privileges other than

2     attorney-client and spousal privilege.

3          MR. RAYMOND:  The government also does not believe

4     that's subject to Rule 16, your Honor.

5          THE COURT:  You may be right on all of that.  It's

6     hard to see why that is material to the defense.

7          On the other hand, in view of all of the disclosure

8     that the government has made that plainly is not required to

9     do, including 3500 material, it's sort of puzzling why the

10    government would not be more forthcoming with respect to those

11    issues, what the sensitivity of that would be.

12         As always, the government can't disclose material that

13    may be privileged that someone else is holding the privilege.

14    But what the potential privileges are and who might be holding

15    them would seem to be, while the government may well be right,

16    not material to the defense, goes beyond the requirements of

17    Rule 16, *Brady*, or *Giglio*.

18         Why, in view of government's position of almost

19    open-file discovery, those are things that the government would

20    not simply say or indicate?  You can think about that.

21         MR. RAYMOND:  Thank you, your Honor.  We will.

22         THE COURT:  After all, if the government's position is

23    going to be, we have, you know, close to open-file discovery

24    and then the first issue that comes up the government says,

25    well, we are not going to tell you that because it goes beyond

Rule 16, even though we have made all of this other disclosure,

which not only goes beyond Rule 16, but which, under 3500, the

Court would be unable to grant.  Not the best way to begin to

emphasize the openness of the disclosure.  But maybe there is

something else going on that I just don't know.  But government

is certainly not telling me that now.

I certainly appreciate the issues, the sensitivity of

the issues of privilege, and the need to consult with a

privilege holder before simply turning over privileged

material.  And I understand the issues of who is able to get

disclosure of privileged material and who is in a position to

waive the privilege.  I take it, I understand from what you've

said, that you have in fact consulted with counsel for BitMEX.

I think that's as far as we can go with respect to the

issues with respect to the taint team.  I'm really not being

asked to do anything except to talk to the parties on this

issue.

Is that right, Mr. Yatter?

MR. YATTER:  That is right, your Honor.  We appreciate

the guidance that you have given.  We look forward to any

additional information that is forthcoming about this.  We

really do share and reiterate the concerns that you have

expressed, your Honor, that there should be more here.

We believe Mr. Reed, as well as the other defendants,

including Mr. Hayes, are entitled to more about this process,

1    including in regard to any privilege holders other than

2    Mr. Hayes or the company.  As it stands now, it is, again, a

3    complete black box as to what information is in the

4    government's information and what it decided was privileged,

5    your Honor.  We thank your Honor for that guidance.

6              THE COURT:  Mr. Benjamin, did you want to add anything

7    with respect to the issue of the taint team?  The government

8    says much will become clearer after they make their disclosures

9    to you, now that they will either have or will shortly have the

10   signed protective order.

11             MR. BENJAMIN:  Yes.  Just very briefly, your Honor.

12             THE COURT:  By the way, I should add, I made other

13   disclosures in the course of the case.

14             I know Mr. Benjamin somewhat because he tried a case

15   before me on more than one occasion.  Nothing about that

16   affects anything that I do in the case, but I usually make

17   disclosures at the outset.  This is the first opportunity, I

18   believe, for Mr. Benjamin to appear before me in this case.

19             So go ahead, please.

20             MR. BENJAMIN:  Thank you very much, your Honor.  I

21   will just be very brief.

22             We were encouraged to receive the government's letter

23   this morning.  We look forward to seeing the materials that

24   they will be sending us.

25             I guess I just want to make two brief comments.  One

1   is that the government's letter said that the information that

2   they will be producing will answer many of the questions.

3         I just want to reiterate, we really expect answers to

4   all of those questions, and I was and have been, frankly,

5   surprised by the government's unwillingness to provide this

6   basic information.  It would seem that this process should be

7   subject to scrutiny and review, but that's the entire issue

8   with the use of a taint team.  It's a fox/henhouse situation

9   that just may be handled correctly, but it needs to be

10  evaluated with full information.  We look forward to receiving

11  information from the government and following up with them if

12  we have additional outstanding questions.

13        I know that the legal issues are not directly

14  presented here, but I do want to note, we had a different view

15  of the issue here.  The government has cited case law about

16  waiver and cases that considered the question as to who had the

17  authority to waive a corporate privilege and whether particular

18  individual executives or employees have such authority.

19        That is not the issue here.  In fact, it's exactly the

20  opposite.  Our client and the other defendants are seeking to

21  ensure the protection of the privilege.  We are very concerned

22  about whether the government has had unauthorized access to

23  privileged communication.

24        The issue is one of standing, which is, you know, who

25  had a legally protected interest here, and we believe the

1    government cited no authority to suggest that we lacked

2    standing to ask these questions and make these inquiries.

3          We think in our common sense it's plain that the

4    executives, majority shareholders, alleged controlled people in

5    the company have an interest, a practical interest in ensuring

6    that the company's privilege was not violated by the

7    government.

8          That's the issue.  It's not ripe for disposition right

9    now because there is no factual development, but I did want

10   just to take the opportunity to respond to that submission by

11   the government.

12         That's all I wanted to say, your Honor.  I thank you,

13   your Honor, for the opportunity to address the Court.

14         THE COURT:  That's not really complete because you not

15   only want to see that the privilege is not violated, I assume

16   that with respect to the possibly privileged documents that may

17   be in the government's possession, you want to see them.  You

18   want to see them to perhaps make sure that they don't get

19   disclosed to the prosecution team, and you want to see them for

20   any assistance it may provide to the defense.

21         But if in fact they are covered by someone else's

22   privilege, not so clear that you would have the right to demand

23   them to be turned over to you by the government or to review

24   them to determine whether there is a privilege that prevents

25   the government from reviewing them for purposes of the

1    prosecution.  Isn't that right?

2           MR. BENJAMIN:  That is fair, your Honor.  I think, as

3    a practical matter, we may just be able to resolve all of this

4    with the government having committed today -- and I believe

5    today is the first time they have made this commitment -- that

6    they will engage with the company counsel and provide

7    information to company counsel.  It may turn out that these

8    issues of standing and so forth can be addressed.

9           THE COURT:  Great.

10          That leads then to the questions that were raised

11   about *Brady*, *Giglio*.

12          Mr. Naftalis.

13          MR. NAFTALIS:  Thank you, your Honor.

14          I don't want to rehash all of the letters that were

15   appended to the letter we sent the Court the other day.

16          But I do want to just kind of make the more general

17   point that when we first appeared before your Honor in October

18   for Mr. Reed's arraignment, the government committed to

19   producing discovery in one to two months, basically by the end

20   of 2020.

21          We stand here now, over four and a half months after

22   that, and we are still being told that stuff is being reviewed

23   and they have not completed discovery.

24          That's kind of part and parcel where we stand with the

25   *Brady*, which is, we are kind of pushing against a stiff door

1   here where we asked for answers as to when are we getting to

2   get our materials?  Is there any *Brady*?  And no one writes

3   back.  And that leads to two things.

4        One is, we have motions that we are going to announce,

5   hopefully, in May.  But without the full benefit of disclosure,

6   it's hard to announce those motions to you.

7        Secondly, it leads to a puzzlement as to why it's so

8   hard to get this basic information.  If it is open-file

9   discovery, why are we calling balls and strikes so close as to

10  what is or is not in Rule 16 or what is in *Brady*.

11       We are just asking to know the discovery and the facts

12  relative to *Brady*.  We bring this to your Honor on *Brady*

13  because, you know, we have asked specifically, is there or are

14  there any categories of *Brady*, not that the government

15  identified every single Bates number for us.  We are not asking

16  for that.  We are asking for real *Brady* disclosures, as opposed

17  to just the several quote/unquote examples that they delineated

18  to us in their letter, which is appended to the exhibits.  We

19  have put to them multiple categories of potential *Brady*

20  material that we want to know what, if anything, is there or is

21  there not.

22       You know, we have cited some good laws to them, and we

23  bring it to the Court's attention, that in the absence of a

24  response from the government to those questions, aside from

25  that, it's the right thing to do to tell us if there is or

1   there is not exculpatory material.  We review that and read

2   that as there is none as to those categories.

3         Their failure to really write back to us except for

4   one instance about the presence of *Brady*, where we then

5   personally dig into the discovery materials and see instances

6   of *Brady* as to some of those categories we have asked about,

7   leaves lots of questions, and there is a hole between what they

8   produced in discovery and what they have disclosed with regard

9   to *Brady*.

10        What we are asking for, we finally have brought this

11  to the Court's attention because we are not getting any

12  answers, is, we would like fulsome *Brady* disclosures as to the

13  categories of information that we have requested.  We are not

14  asking for line-by-line recitations, but statements as to

15  whether or not there is or the government is aware of X *Brady*

16  material, the categories of information and where it can be

17  found.

18        The one thing I'll add here is, and we have put this

19  to the government from the beginning, but have had no response,

20  is the search for and disclosure of *Brady* material from other

21  agencies.

22        As your Honor is likely aware, when Mr. Reed was

23  arrested and the indictment was unsealed in early October, a

24  companion CFTC case was filed that same day.  There was and is

25  a long-running CFTC investigation.  And we have asked that the

1   government search the CFTC files and disclose any materials

2   that would constitute *Brady*, *Giglio* or other from that file.

3   We have not gotten a yes or no that that work is being

4   undertaken.  We would like a firm representation that it is,

5   consistent with the practice in this district following *U.S. v.*

6   *Gupta*, and we think, especially as we come up to the May

7   deadline, that that process has to be undertaken quickly.

8           Those are the two issues for your Honor.  One is, we

9   would ask for some assistance in getting more fulsome *Brady*

10  disclosures and, secondly, a commitment from the government

11  that we will receive the CFTC'S files for the appropriate

12  exculpatory material.

13          THE COURT:  Mr. Raymond.

14          MR. RAYMOND:  Yes, your Honor.

15          Just to take the points in reverse order, the CFTC's

16  investigation was parallel to ours, not a joint investigation.

17  So we are not saying it is their files because that is not

18  within the government's investigative team for *Brady* materials.

19  The material that we have received from the CFTC we are

20  producing, but we are not going through their files because

21  their investigation was parallel to ours.

22          With respect to the more fulsome disclosures, the

23  government has made -- I think there was one statement in the

24  letters that a witness contradicted the description of a

25  statement in the indictment, which we directly flagged that to

1    defense counsel in this case.

2         Other than that, we have produced or we identified the

3    materials in our examples of information that is consistent

4    with their requests as proposed for potential *Brady*.  Other

5    than that, we do not have -- we have not identified specific

6    *Brady* information.

7         If we do, if we identify exculpatory material, we

8    will, of course, identify it to defense counsel.  But we do not

9    believe our obligation to include going through the voluminous

10   productions, which are all searchable, for however many bullet

11   points Mr. Reed's counsel sends us to identify the Bates ranges

12   and documents that fall into each of those categories.

13        Mr. Naftalis mentioned case law that they cited for

14   the proposition that the government has some obligation like

15   this.  As I think we made clear, those cases are simply in

16   apposite.  Those are cases with factually distinct situations

17   with defendants who are differently situated, had a different

18   relationship, as we have just been discussing, with the

19   corporation at issue.  These are gaps.

20        A large portion of the documents here are corporate

21   documents of a company that defense counsel say they control.

22   Unlike the *Saffarinia* case, which was a case cited by defense

23   counsel, this is not a case with a relatively small defense

24   team where they were handling the case pro bono with limited

25   financial resources.

1          The government would respectfully submit that we have

2    disclosed the exculpatory material that we have identified.

3    And to the extent Mr. Reed is asking that we go through our

4    productions that we have given to him for the information he

5    has identified as potentially *Brady*, I don't think that there

6    is a legal basis for that request, and it is not the

7    government's job to prepare both sides of the case at once.

8          If in our review we identify exculpatory documents, we

9    will raise them to defense counsel, but I don't think there is

10   any basis in the law that we have to go and find that material,

11   so long as we are producing it, which we are.  As your Honor

12   mentioned, our intention is to have open-file or near open-file

13   discovery in this case.

14         THE COURT:  There is a slight disconnect.  The

15   defendant says they have asked whether the government is aware

16   of categories of *Brady* material.  The government says the

17   government has identified any categories of *Brady* material that

18   it was aware of, although not every document within such

19   categories.

20         For example, a common footer that would be on

21   correspondence, the government has identified that as a

22   category of possible *Brady* material without identifying every

23   document within that category.  But it was unclear to me from

24   the back and forth whether the bottom line from the government

25   was, it wasn't aware of any other category of *Brady* material

1    that it hasn't identified for the defense.

2         MR. RAYMOND:  We have not identified any other

3    category that we know about that we have not identified for the

4    defense.

5         THE COURT:  There you go.  The government seems to

6    have answered the concerns raised by the defendant.

7         Mr. Naftalis.

8         MR. NAFTALIS:  If it's their representation that they

9    are aware of no *Brady* material, either by Bates or otherwise,

10   as to all of the categories we set forth in our January letter,

11   except for what they have written to us directly, we will take

12   that representation.  If I'm understanding that correctly from

13   your Honor and from Mr. Raymond, I think I understand their

14   position.  Is that a fair summary?

15        THE COURT:  Is that fair, Mr. Raymond?

16        MR. RAYMOND:  Again, we have not gone through each

17   category.

18        I think that there is maybe also a disconnect between

19   actual exculpatory material and the material that they have

20   flagged as potentially exculpatory material.  We have not gone

21   through each category of their potentially exculpatory material

22   into our production confirming every version of those examples,

23   those bullet points, to determine if this potentially falls

24   into that bucket.

25        But, as to exculpatory materials known to the

1  government and as to in our prior reviews of the information,

2  of the documents, that information we know falls into those

3  buckets, we have disclosed that to defense counsel.

4          THE COURT:  That appears to be a reasonable response

5  to what the defendant has asked for, particularly in view of

6  the fact that the government has made its production to the

7  defense, and the cases generally say that *Brady* is not a

8  discovery device.

9          I take it, from what the parties have said, that the

10  government represents it's acting in good faith.  If it's aware

11  of *Brady* material, it brings it to the attention of the

12  defense.  There is no effort to hide *Brady* material in a mass

13  of documents otherwise produced to the defense.

14          The defense is peculiarly familiar with the scope of

15  corporate documents which, I gather from the back and forth, is

16  the bulk of the material that's being produced.

17          So it's not clear to me that on the issue of *Brady*

18  there is anything further for me to do.  If the parties want to

19  make a motion at some point as part of the motions, they are

20  certainly welcome to do that, but there is pretty clear case

21  law that *Brady* is not another discovery device.

22          Go ahead.  Is that Mr. Naftalis?

23          MR. NAFTALIS:  Your Honor, I apologize for

24  interrupting.  I will be muted.

25          THE COURT:  I thought you wanted to say something.  I

 1  was going to say that the government has made its position

 2  known with respect to the CFTC documents.

 3          MR. NAFTALIS:  That I was going to take up, if it's

 4  OK, the CFTC question.

 5          THE COURT:  Go ahead.

 6          MR. NAFTALIS:  Your Honor, I think saying that this is

 7  not a parallel investigation, it doesn't really mean very much.

 8  I think if you dig into kind of the precedence in the last ten

 9  years and also your Honor's order, your 5(f) order and the

10  letter in spirit behind 5(f), I think your order says, and it's

11  the district-wide order, that the government includes other

12  officers who participate in the prosecution or investigation

13  that led to the prosecution.

14          And here, by the discovery provided and the timing of

15  the parallel suits, the government relied upon the CFTC's

16  investigation intensively in making their charging decisions.

17  For them to hold the line and say they don't have a *Brady*

18  obligation with regard to the CFTC, I don't think is accurate.

19  It doesn't align with your Honor's order.

20          But it also doesn't align with the facts, which is

21  that their investigation was intertwined with and based upon

22  the CFTC's work, depositions, subpoenas sent, etc. and they

23  have an obligation to farm that material as an arm of the U.S.

24  Government here for the benefit of the defense.

25          If we have to make a motion to demand that, we will,

1    but it seems at this point in time a pretty noncontroversial

2    point to make and a noncontroversial request to make of the

3    government to farm potential *Brady* material from its sister

4    agency that it's worked arm and arm with in this case.

5          If you look at the discovery, it says that they got

6    material from the CFTC.  They got data, they got discovery,

7    they got witness statements from the CFTC in order to bring

8    their charges.  So I don't think just saying these are parallel

9    investigations answers the question, your Honor.

10         THE COURT:  Mr. Raymond, I think you said that the --

11   it's not clear to me.  You said that the government was

12   producing the CFTC files.

13         MR. RAYMOND:  The documents the government has

14   received from the CFTC, but not -- I think if defense counsel

15   wants to brief it, I think we are happy to brief this.  I have

16   not heard of the position that Rule 5(f) means that when the

17   government has, pursuant to an access order, obtained documents

18   from a regulatory agency that it, therefore, no longer has a

19   parallel investigation.  I think the government would

20   respectfully request the opportunity to brief that question and

21   to see any authority that defense counsel has for that

22   proposition.

23         THE COURT:  Let me just pause to understand what the

24   positions of the parties are.  The government has some

25   documents from the CFTC.  To the extent it has those documents,

1    it has turned them over to the defense.  Is that fair?

2            MR. RAYMOND:  Yes.

3            THE COURT:  But it hasn't gone to the CFTC to say, do

4    you have any other documents that you haven't given us?  You

5    gave us all of your documents that went into your

6    investigation.

7            MR. RAYMOND:  We have not asked that question of the

8    CFTC, your Honor.

9            THE COURT:  With respect to the documents that the

10   CFTC has provided to the government and the government has

11   turned over, to the extent that the government, the prosecution

12   in this case, to the extent that the prosecution is aware of

13   any *Brady* material in those documents, it's identified that for

14   the defense.  Is that fair or not?

15           MR. RAYMOND:  Your Honor, you are saying among

16   documents that we know about or have access to?

17           THE COURT:  That have been produced to the government

18   and that the government has turned over to the defense.

19           MR. RAYMOND:  Yes.  To the extent there is *Brady*

20   material in those documents, we have identified it to defense

21   or produced it.  We have produced it, so, therefore, to the

22   extent there is anything that we identified, we have also

23   identified that as *Brady* or potential *Brady*.

24           THE COURT:  The difference between the parties is

25   whether the government should have an obligation to go to the

1    CFTC and say, give us everything else in your files that

2    relates to your investigation of BitMEX.

3            Mr. Naftalis, is that the defense's request?

4            MR. NAFTALIS:  Yes.  I think the defense's request is

5    consistent with *Gupta* -- we would be happy to brief this and

6    make a motion -- that the government review the CFTC's

7    memoranda and file for any additional *Brady* material and make

8    the appropriate disclosures, if any.  But simply saying that

9    they haven't gotten material from the CFTC and, therefore,

10   don't have an obligation to ferret out whether the CFTC has

11   *Brady* material, I think, is insufficient to us, that there has

12   to be an affirmative work by them with the CFTC and the CFTC's

13   file to ensure that they don't have *Brady* material.

14           THE COURT:  That is somewhat different.  I think the

15   original request was get all of the CFTC documents that went

16   into the CFTC investigation, not just a search for potential

17   *Brady* material and documents not turned over by the CFTC to the

18   prosecution in the case.

19           MR. NAFTALIS:  Your Honor, if I was unclear, our

20   search here is for *Brady*.  It sounds like we should probably

21   seek relief from your Honor, in part, because the government

22   has sought to stay discovery in the CFTC matter.  That at some

23   point will be resolved.  Regardless, we feel that we have the

24   duty and right to pursue that material through this process,

25   specifically the *Brady* material, if any, in the CFTC's file.

1          It can't be that just because no one looked in the

2     CFTC's file that that complies with *Brady*.  Otherwise, the

3     agency could cherrypick what to provide the government relative

4     to that obligation.  We are not pointing any fingers or, you

5     know, saying any bad faith here.  But in terms of the process,

6     that can't be enough to comply with *Brady*, and we are happy to

7     brief it.

8          THE COURT:  Mr. Raymond.

9          MR. RAYMOND:  Your Honor, I think it would have to be

10    subject to briefing.  Whatever the hypothetical that

11    Mr. Naftalis just described, that would be a hypothetical that

12    would be true in every single case with a parallel

13    investigation, and there is still a parallel investigation

14    doctrine that says that the U.S. Attorney's Office and the

15    Department of Justice is not required to go through -- I don't

16    think those statements are what Mr. Naftalis has said, and I

17    think it would require briefing by the parties.  We would be

18    happy to brief them.

19         THE COURT:  There is some static.  I don't know whose

20    phone is producing the static.

21         The parties should certainly discuss it.  It's not so

22    clear to me that Mr. Naftalis' request is sufficiently defined.

23    But, in any event, by all means, the parties should discuss it.

24    If after discussing it the defendant wants to make a discovery

25    motion, you are welcome to do that.  I plainly can't decide it

1    in the course of this telephone call.

2           Is there anything else, any issues that I haven't yet

3    covered?

4           MR. NAFTALIS:  There is one other matter, your Honor,

5    which is not briefed for you.

6           There were three search warrants written for two

7    telephones and one hard drive of a witness which we will call

8    witness 1.  We had asked the government for, you know, a

9    mirror-image copy of those devices or access to those devices

10   so that we can do our own forensic work on those digital

11   drives.  We have been told no.

12          And we would want to raise it to your Honor because

13   the government's response is they are aware of no authority

14   that requires them to give us access to a copy, forensic copy,

15   of additional drives so we can do our own work.

16          We are happy to bring authority to you, but I think we

17   can probably just discuss it, that under 16(a)(1)(E), if you

18   look at it, it clearly says that, you know, upon a defendant's

19   request, we are entitled to a copy of any, amongst other

20   things, data or tangible objects if it's material to our

21   defense or if the defense intends to use it in its case in

22   chief or if it belonged to the defendant.  The material on this

23   drive, we believe, is material to our defense and it contains

24   company records that was owned by the company.

25          If we are having nearly open-file discovery, it

1    doesn't seem like a huge ask to ask for a copy of the forensic

2    image so we can have our consultants do our work.  We have been

3    told no.  We are happy to brief it, although it seems like a

4    lot of paper to waste to get a copy of what has -- I used to

5    produce it, when asked, when I was a prosecutor.  I can give

6    you examples of it, if you wish, but it doesn't seem like the

7    type of thing -- why would the government oppose our access to

8    the actual object when it is called for under 16(a)(1)(E).  We

9    would ask for a copy of that and any other digital materials so

10   we can do our own forensic work.

11           THE COURT:  Mr. Raymond.

12           MR. RAYMOND:  Yes, your Honor.  There are different

13   devices that I think Mr. Naftalis was just talking about.  I

14   think they are potentially under different sources of law.

15           First of all, I hold up our letter.  I don't know --

16   we did not say no.  We said, please cite us to authority.  One

17   of those devices was searched pursuant to a search warrant.

18   Under the *Collins* case, which was decided two years ago, the

19   government only had in its possession materials, in actual

20   possession, materials responsive to the search warrant, not the

21   ability to just search the entire device endlessly.

22           So, again, and I think in the *Collins* case, at least

23   the implication is that the defendant is not necessarily

24   entitled to look at the entirety of material obtained pursuant

25   to a search warrant, but only the responsive material.

1          So with respect to that, again, if defense counsel

2     wants to cite authority, we did not say no, but the authority

3     we have seen suggests that at least as to that -- at least as

4     to the material that's pursuant to the search warrant that

5     there is not a basis for that request.

6          As to the other material, which was obtained, in part,

7     on consent, again, the government is not saying no, but

8     requested some authority beyond just what, this is what Rule 16

9     says on its face, which I am not sure is true.  The device

10    itself does not belong to defendants or the company.  Materials

11    on it might.  But that doesn't mean that the device itself

12    belongs to them.  And the material on the device is potentially

13    material to their defense.  The device with the forensic image

14    itself is not necessarily material to their defense.

15         We are happy to brief it, if that's what defendants

16    want, but we are also happy to discuss internally or discuss

17    with them before coming to the Court on this issue.

18         THE COURT:  As I understand the government position,

19    the government does not have access to that portion of the

20    telephones or the hard drive that's not responsive to the

21    search warrant.  Is that fair?

22         MR. RAYMOND:  Your Honor, once the review of the

23    materials, obtained pursuant to a search warrant, once that

24    material is reviewed and determined whether it is responsive to

25    the search warrant, the statement in *Collins* and my

1    understanding of the law would be, that is the material that's

2    in the government's possession, not the entirety of the

3    forensic image or the device.  So that material can be reviewed

4    for responsiveness to the search warrant and then for Rule 16,

5    *Brady* or *Giglio*, but not the entirety of the device or the

6    forensic image.

7            MR. NAFTALIS:  Your Honor, let's just talk about one

8    device.  There is a hard drive.  In the discovery it says the

9    government has the hard drive, the physical hard drive.  The

10   search warrant affidavit says that the way they exploited it is

11   by making a forensic image of the entire hard drive.  It says

12   that in the search warrant affidavit at paragraph 27.  The hard

13   drive or forensic image somewhere exists in the government's

14   files, with the FBI or the U.S. Attorney's Office.  We would

15   like do our own review of that drive for, amongst other

16   reasons, one, the government's affidavit says that the witness

17   attempted to destroy the hard drive with like a screwdriver.

18   We would like to review the image of it, in part, based on that

19   description.

20           But, two, as your Honor knows, there is a lot more to

21   data these days than just like the e-mails and the documents.

22   There is all the metadata built into that which, you know,

23   frankly, given the allegations of destruction of evidence, we

24   would like to understand better, and we would like to

25   understand it based on our tools.  That has not been produced.

1    That hard drive is somewhere in the government's possession.

2    There is no question.  An image of it is somewhere.  We would

3    just like a copy of the image.

4            THE COURT:  Is there any obligation under the cases to

5    return or segregate those portions of the hard drive that are

6    not responsive to the search warrant?

7            MR. RAYMOND:  Your Honor, going back to the *Collins*

8    case, once the government has conducted the search, it does not

9    have legal authority to go back and search materials that are

10   noted that are nonresponsive.

11           Your Honor, just with respect to the request by Mr.

12   Reed, not that this is necessarily true, but there could be

13   material on there that's -- I was just saying that it is

14   potentially possible that there is material that is privileged

15   on the entire copy of the forensic image.  I don't know of any

16   authority that would allow Mr. Reed to obtain someone else's

17   privileged materials on a device obtained by the government

18   pursuant to a search warrant.

19           THE COURT:  This is plainly an issue that I can't

20   decide over the phone.  It wasn't previously raised with me.

21   The parties can discuss it.  I understand the issues.  If the

22   parties can't work it out, the defendant can include that in a

23   discovery motion together with, if there is such a motion, how

24   to deal with the limits on a search warrant.

25           MR. NAFTALIS:  Understood, your Honor.

1          THE COURT:  Anything else?

2          MR. SMITH:  The update that the government gave on the

3     efforts to get codefendant Dwyer into the case was virtually

4     the same explanation it gave back on February 11 and it's been

5     two months.  They say they have initiated extradition

6     proceedings, but our understanding is there is nothing pending

7     in Bermuda, no extradition has been commenced there.

8          I guess I would like to ask of the government, is this

9     something that's just languishing in Washington at the Office

10    of International Affairs, and what efforts have been made to

11    actually move the extradition along?

12         Because we fear that when we show up on May 11 to then

13    set a schedule for all defendants and move the case forward,

14    and Mr. Delo gave up valuable extradition rights to get here

15    and wants this case to move as expeditiously as possible, we

16    don't want there to be additional delay because Mr. Dwyer is

17    not here before the Court with the rest of the codefendants.

18         We wish to go quickly, and we don't want Mr. Dwyer's

19    absence to prolong things.  I wanted to hear from the

20    government on what really the status is.

21         THE COURT:  I should add, Mr. Smith has also appeared

22    before me before.  Nothing about that affects anything that I

23    do.

24         Mr. Raymond.

25         MR. RAYMOND:  Yes, your Honor.  I honestly don't have

much more information than that in terms of where precisely the
case is, where precisely the extradition proceeding is.  I'm
happy to try and obtain what information I can, and to the
extent I can disclose that, I can do that.  But sitting here I
don't have any more information than the update that I provided
at the beginning of this call.

        Obviously, we understand Mr. Delo's concerns, but, we
also do not have control over exactly the timing for Mr. Dwyer
to appear here.

        THE COURT:  You should inquire about the status of the
extradition proceedings.  I assume that if Mr. Dwyer does not
resist extradition, for example, and doesn't timely appear in
this case, we go forward with the three defendants who are here
and the case wouldn't be delayed because of absence of the
other defendant.

        Mr. Raymond.

        MR. RAYMOND:  Your Honor, I think the government, we
discussed what the timing was, but I don't think we would have
an opposition to that if there was an indeterminate amount of
time before we thought Mr. Dwyer was going to get here.

        THE COURT:  So far the three defendants who have
appeared indicate their desire to have this case move along
promptly so that if it does take a long time for Mr. Dwyer to
appear, the case proceeds against the three defendants who are
here.

1            Anything else?

2            THE DEPUTY CLERK:  May the clerk interject.  The

3  matter is still on for May 11 at 2:30?

4            THE COURT:  Yes, may 11, 2:30.

5            Anything else from anyone?

6            Good afternoon, all.

7            (Adjourned)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25