UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

v.

ARTHUR HAYES, BENJAMIN DELO,
GREGORY DWYER, and SAMUEL REED,

*Defendants*.

20 Cr. 500 (JGK)

ORAL ARGUMENT REQUESTED

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL PRODUCTION OF *BRADY* AND RULE 16 MATERIALS IN POSSESSION OF THE U.S. COMMODITY FUTURES TRADING COMMISSION**

**TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT ......................................................................1

II.     STATEMENT OF FACTS .........................................................................3

        A.      The Government Relied on and Coordinated Closely with the CFTC in
                Investigating the Matters Set Forth in the Indictment ............................3

        B.      Notwithstanding Its Close Coordination with the CFTC, the Government
                Has Refused to Review or Disclose *Brady* Materials from the CFTC's
                Files.................................................................................9

III.    ARGUMENT ......................................................................................11

        A.      The Government's *Brady* and Rule 16 Obligations Extend to Materials in
                the Possession of Another Agency in a Joint Investigation...................11

        B.      The Government and the CFTC Investigated Jointly ...........................15

        C.      The CFTC is Likely in Possession of Evidence Exculpatory, Impeaching,
                and Material to the Defense ....................................................20

        D.      The Court Should Order an Evidentiary Hearing in the Alternative ...................23

IV.     CONCLUSION.....................................................................................24

## TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(S)**

*Brady v. Maryland,*
    373 U.S. 83 (1963)..................................................................................................1

*Carey v. Duckworth,*
    738 F.2d 875 (7th Cir. 1984) ...........................................................................2, 12

*Kyles v. Whitley,*
    514 U.S. 419 (1995)..........................................................................................11, 20

*Smith v. Cain,*
    565 U.S. 73 (2012)..................................................................................................20

*United States v. Antone,*
    603 F.2d 566 (5th Cir. 1979) .................................................................................14

*United States v. Bagley,*
    473 U.S. 667 (1985)................................................................................................23

*United States v. Bases,*
    No. 18-cr-00048 (N.D. Ill. Feb. 24, 2021), ECF No. 394......................14, 15, 18, 19

*United States v. Blumberg,*
    No. 14-cr-458 (D.N.J. Mar. 23, 2015), ECF No. 69 ...............................................14

*United States v. Cilins,*
    No. 13 Cr. 315 (WHP), 2014 WL 173414 (S.D.N.Y. Jan. 15, 2014).....................22

*United States v. Finnerty,*
    411 F. Supp. 2d 428 (S.D.N.Y. 2006)...................................................................12

*United States v. Gupta,*
    848 F. Supp. 2d 491 (S.D.N.Y. 2012)........................................................... *passim*

*United States v. Mahaffy,*
    693 F.3d 113 (2d Cir. 2012)...............................................................12, 18, 20, 22

*United States v. Martoma,*
    990 F. Supp. 2d 458 (S.D.N.Y. 2014)........................................................... *passim*

*United States v. Middendorf,*
    No. 18-CR-36, 2018 WL 3956494 (S.D.N.Y. Aug. 17, 2018)...................13, 17, 18

*United States v. Rigas,*
    583 F.3d 108 (2d Cir. 2009)..................................................................................19

*United States v. Rigas*,
No. 02-CR-1236 (LBS), 2008 WL 144824 (S.D.N.Y. Jan. 15, 2008)....................................19

*United States v. Rodriguez*,
496 F.3d 221 (2d Cir. 2007)...........................................................................................11, 20

*United States v. Santiago*,
46 F.3d 885 (9th Cir. 1995) ...................................................................................................14

*United States v. Shakur*,
543 F. Supp. 1059 (S.D.N.Y. 1982)........................................................................13, 16, 19

*United States v. Thomas*,
981 F. Supp. 2d 229 (S.D.N.Y. 2013)...................................................................................23

*United States v. Trevino*,
556 F.2d 1265 (5th Cir. 1977) ...................................................................................2, 12, 19

## RULES

FED. R. CRIM. P. 16............................................................................................. *passim*

## REGULATIONS

17 C.F.R. § 165.8(a).................................................................................................................22

17 C.F.R. § 165.11 ...................................................................................................................22

## OTHER AUTHORITIES

Mem. for Dep't Prosecutors, U.S. Dep't of Just., Guidance for Prosecutors
Regarding Criminal Discovery (Jan. 4, 2010), *available at*
https://www.justice.gov/archives/dag/memorandum-department-prosecutors.......................14

U.S. Dep't of Just., Just. Manual § 9-5.001.B (2020)...................................................20

U.S. Dep't of Just., Just. Manual § 9-5.002 (2020) ................................................14, 20

Defendants Arthur Hayes, Benjamin Delo, and Samuel Reed (collectively, "Defendants") respectfully submit this memorandum of law in support of their motion to compel the government to search the files of the U.S. Commodity Futures Trading Commission ("CFTC") and produce all exculpatory evidence pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), and all discoverable material pursuant to Federal Rule of Criminal Procedure 16 ("Rule 16").[1]

## I.     PRELIMINARY STATEMENT

On October 1, 2020, the government and the CFTC simultaneously announced charges for substantially identical conduct.  In the criminal case, the Indictment alleges the Defendants willfully operated and conspired to operate the BitMEX online trading platform in the United States as an unregistered futures commission merchant ("FCM") under the Commodity Exchange Act, without complying with Bank Secrecy Act provisions applicable to FCMs.  ECF No. 2 ¶¶ 1-4, 30-32 ("Ind.").  In the CFTC case, pending before Judge Vyskocil, the CFTC charged Defendants, among other allegations, with operating the BitMEX online trading platform in the United States as an unregistered FCM under the Commodity Exchange Act, without complying with Bank Secrecy Act provisions applicable to FCMs.  Complaint ¶¶ 1-4, 33-35, 93-101, 116-21, 131, *CFTC v. HDR Global Trading Ltd., et al.*, No. 20-cv-8132 (MKV) (S.D.N.Y. Oct. 1, 2020), ECF No. 1 ("CFTC Compl.").  The CFTC filed its complaint about *ten minutes* after the Indictment was unsealed.

---

[1]     As noted during the May 11, 2021 conference with the Court, Defendants may file additional discovery motions based on their ongoing review and the government's ongoing productions and disclosures, including but not limited to a motion regarding the government's use of a "taint team" to review potentially privileged materials.  *See* Ex. 28, May 11, 2021 Conf. Tr. at 5:18-7:3; *see also* ECF No. 42 at 2-3; Ex. 26, Def. May 3, 2021 Ltr. at 1.  All citations to exhibits refer to the exhibits to the Declaration of Douglas K. Yatter in Support of Defendants' Motion to Compel Production of *Brady* and Rule 16 Materials, submitted herewith.

Today, despite repeated requests, the government refuses to comply with the obligations attendant to its joint investigation, namely, to search for and produce exculpatory and discoverable materials from the CFTC's files.  The government maintains it has no obligation to review for or produce *Brady* or Rule 16 materials in the CFTC's possession because it conducted a "parallel" and not "joint" investigation with the CFTC.  Not so.  This position is inconsistent with the realities of this case—which is premised on a technical aspect of the Commodity Exchange Act being applied to a new and rapidly evolving industry.  It also contradicts the long-standing principle that the prosecution cannot circumvent *Brady* or Rule 16 by "compartmentalizing information about different aspects of a case," *Carey v. Duckworth*, 738 F.2d 875, 878 (7th Cir. 1984), or by "leaving relevant evidence to repose in the hands of another agency while utilizing [its] access to it in preparing [its] case for trial[.]'"  *United States v. Trevino*, 556 F.2d 1265, 1272 (5th Cir. 1977).

The joint nature of the investigation between the government and the CFTC is apparent:

- *First*, the government obtained voluminous documents from the CFTC, including at least six CFTC deposition transcripts, Wells submissions by the Defendants and the company they founded, HDR Global Trading Limited ("HDR"), and extensive document productions from HDR and at least eleven third parties.

- *Second*, the government jointly conducted significant witness interviews with the CFTC—a key hallmark of a joint investigation—and otherwise relied on the CFTC's depositions to obtain evidence relating directly to the charges in the Indictment.

- *Third*, the CFTC contributed to the government's development of prosecutorial strategy at key stages of the criminal investigation. ██████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████

- *Fourth*, the CFTC supplied its legal and technical expertise in commodities and derivatives regulations for a criminal action that rests entirely on the CFTC's theory of liability pursuant to those regulations—a contribution and partnership that the

government expressly acknowledged in its press release about this case.  Indeed, the actions are so closely related that the government recently moved to intervene in the CFTC action and asked Judge Vyskocil to stay all discovery there in light of "common questions of law and fact."  *See* Pre-Mot. Conf. Request Ltr. Regarding Mot. to Intervene at 2-3, *CFTC v. HDR Global Trading Ltd., et al.*, No. 20-cv-8132 (MKV) (S.D.N.Y. Feb. 10, 2021), ECF No. 40 ("Govt. Ltr. to J. Vyskocil").

- *Finally*, the two agencies filed their respective charging documents simultaneously, and issued press statements thanking one another for their respective "expertise," "assistance," and partnership.

The government has gained a tactical advantage from these joint investigative efforts and should not be permitted to use its close collaboration with the CFTC as both a sword and a shield.  The government developed its theory of the case and its investigative record in tandem with the CFTC; it cannot be allowed to avoid its *Brady* and Rule 16 obligations and deprive Defendants of their constitutional right to exculpatory materials from the CFTC's files.  For the reasons that follow, Defendants respectfully request that the Court order the government to review for and disclose all *Brady* materials and information material to the defense within the possession, custody, or control of the CFTC.  Alternatively, to the extent the Court does not grant Defendants' motion on the present record, Defendants respectfully request an evidentiary hearing, with accompanying pre-hearing discovery, to ascertain the full scope of the government's partnership with the CFTC.

## II.   STATEMENT OF FACTS

### A.   The Government Relied on and Coordinated Closely with the CFTC in Investigating the Matters Set Forth in the Indictment

On October 1, 2020, the government unsealed the Indictment.  About ten minutes later, the CFTC filed its civil enforcement action against HDR and Defendants Hayes, Delo, and Reed based on the same conduct and—in the government's own words—"arising out of the same core facts" set forth in the Indictment.  *See generally* CFTC Compl.; *see* Govt. Ltr. to J. Vyskocil at 2.  The allegations in the Indictment and the CFTC complaint closely track each other in

describing BitMEX's business operations, product offerings, and compliance and control measures, as well as Defendants' roles.  *Compare, e.g.*, Ind. ¶¶ 9-19 *with* CFTC Compl. ¶¶ 10, 16-19, 36-92.  And the prosecution's theory of liability—that BitMEX operated as an unregistered FCM under the Commodity Exchange Act, and failed to comply with AML obligations imposed on registered FCMs—is a mirror image of the CFTC's theory of liability.  *Compare* Ind. ¶¶ 3, 6-8, 18 *with* CFTC Compl. ¶¶ 4, 28, 31-35, 86, 87, 93, 131.

On the day these concurrent enforcement actions were filed, both the government and the CFTC released statements thanking the other agency for its efforts and assistance over the course of the investigation.  The government publicly acknowledged the "the diligent work of [its] . . . *partners* with the CFTC" and "thanked the attorneys and investigators at the CFTC for *offering their expertise in the development of this investigation*."  Press Release, United States Attorney's Office for the Southern District of New York, Founders and Executives of Off-Shore Cryptocurrency Derivatives Exchange Charged with Violation of the Bank Secrecy Act, *available at* https://www.justice.gov/usao-sdny/pr/founders-and-executives-shore-cryptocurrency-derivatives-exchange-charged-violation (emphasis added) ("USAO Press Release").  Likewise, the CFTC specifically referred to this criminal action as a "Related Criminal Action," noting that "the indictment was unsealed today."  Press Release, CFTC, CFTC Charges BitMEX Owners with Illegally Operating a Cryptocurrency Derivatives Trading Platform and Anti-Money Laundering Violations, *available at* https://www.cftc.gov/PressRoom/PressReleases/8270-20 ("CFTC Press Release").  The CFTC also "thank[ed] and acknowledg[ed] the assistance of" the government and the FBI.  *Id.*

While information regarding the agencies' collaborative efforts is uniquely within the government's knowledge, discovery has revealed that the government and the CFTC shared investigative resources and developed prosecutorial strategy in a coordinated fashion.  The FBI

opened its investigation regarding BitMEX several months after the CFTC began investigating the same entities and conduct.  *See* Ex. 14, US_00016232 (noting opening of investigation); Ex. 1, US_00624252 (CFTC subpoena to HDR).  The CFTC handed over voluminous materials to the government, including (i) CFTC deposition materials of at least six individuals—including those of the four Defendants and two HDR employees—such as the transcripts and associated exhibits, *see, e.g.*, Ex. 19, Govt. Dec. 11, 2020 Ltr. at 1-2; (ii) documents obtained from at least eleven third parties pursuant to CFTC subpoenas, *see, e.g.*, Ex. 21, Govt. Jan. 15, 2021 Ltr. at 5; (iii) written Wells submissions provided to the CFTC by HDR and Defendants Hayes, Delo, and Reed, *see id.* at 3; and (iv) a detailed presentation made by HDR to the CFTC regarding, among other topics, HDR's efforts to block US users from the BitMEX platform and to implement KYC/AML measures, *see id.*  As revealed by the government's production letters, the government repeatedly sought, and the CFTC granted, access requests pursuant to which the CFTC shared these portions of its files.  *See id.*; *see also* Ex. 23, Govt. Feb. 8, 2021 Prod. Ltr. at 1.

  The collaboration between the government and the CFTC went beyond sharing documentary evidence, deposition transcripts, and advocacy presentations.  ████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
███████████████████████████████ ████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

---

[2]  To date, the government has not produced any memoranda or other summaries of CFTC interviews of Witness-1 ████████████████████████████████████████████
████████████████████  Such information is highly material to the defense and is an example of the type of material that is sought by this motion.

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████     ████████████████████████████████████

██████████████████████████████████████████████████████

█████████████

      In November 2019, after an initial phone call with the government in late October,
Witness-1 traveled from Hong Kong to New York and met with the government for four days of
interviews.  Of note, the CFTC participated fully in the first two days of meetings.  *See* Ex. 6,
3516-12 at 1 (noting CFTC personnel joined the FBI interview telephonically); Ex. 7, 3516-14 at
1 (same).  Those two interviews account for 38 pages of interview notes of Witness-1 produced
by the government, including the longest single interview, and they appear to have supplied key
information alleged in the Indictment, including information about BitMEX's product offerings,
business development activities, and customer support procedures and functions.  *See generally*
Ex. 6, 3516-12; Ex. 7, 3516-14.   During these interviews, the government used numerous
documents ███████████████████████████████████████████████████
██████████████, including a potentially privileged document that the government recently
disclosed should not have been reviewed at all.  *See, e.g.*, Ex. 8, 3516-18 at 1; Ex. 15, 3519-1
(disclosing that a potentially privileged document ███████████████ was shown to and
discussed with Witness-1 by the government during an interview in November 2019).  Witness-1
also provided documents and data to the government, including those he copied from HDR without
permission and attempted to delete or destroy.  *See* Ex. 9, US_00002469 ¶¶ 22-24; Ex. 10,
US_00002487.

      Based on the discovery produced to date, there is no question that Witness-1, ███
██████████████████████████████████████████, is the key witness upon whom the

government built its criminal case.  Witness-1 represents the bulk of the 3500 material produced by the government: the government conducted *17 interviews* of him (out of 38 witness interviews in total).  During these interviews, Witness-1 provided extensive information about HDR and BitMEX—including information about BitMEX's customer base, its KYC and AML policies and procedures, IT infrastructure, and marketing activities and strategies—all of which go to the heart of the allegations in the Indictment.  *See, e.g.*, Ex. 6, 3516-12 at 7, 13; Ex. 7, 3516-14 at 1, 6.  Tellingly, in a letter to Defendant Reed's counsel in January 2021, the government identified Witness-1 as one—and *the only*—example of "witnesses [it] may call in this case."  Ex. 21, Govt. Jan. 15, 2021 Ltr. at 3.

Having plumbed the CFTC's files for helpful information and spoken at length with ▮▮▮▮▮▮, the government then relied on the fruits of the CFTC's investigation to obtain multiple search warrants.  Between December 2019 and June 2020, the government relied on the CFTC's investigative depositions, as well as information that Witness-1 provided during joint interviews with the government and the CFTC, to obtain (i) a search warrant for Reddit records, *see* Ex. 11, US_00002544 ¶¶ 23, 26, 27; (ii) a search warrant for an email address associated with Arthur Hayes, *see* Ex. 16, US_00002574 ¶¶ 13, 17, 18; (iii) two search warrants for eight email accounts associated with alleged U.S.-based users of BitMEX, *see* Ex. 12, US_00002429 ¶¶ 13, 16, 17; Ex. 17, US_00002596 ¶¶ 13, 16, 17; and (iv) a search warrant for a hard drive and forensic images of two iPhones received from Witness-1, *see* Ex. 9, US_00002469 ¶¶ 15, 18, 19.[3]  In total, the government appears to have obtained at least five search warrants

---

[3]     As explained below, Witness-1 provided these devices to the government in or about November 2019, during his four days of in-person meetings with the government, after unsuccessfully attempting to delete or destroy the contents of the devices.  *See* Ex. 9, US_00002469 ¶¶ 22-24.  Defendants are separately moving to compel production of these devices pursuant to the government's discovery obligations.  *See* Defs.' Mot. to Compel Prod. of Witness-1 Devices (June 4, 2021).

based on information supplied by Witness-1, stating in its supporting affidavits that Witness-1

█████████████████████████████████████████████████████████████  *See,*

*e.g.*, Ex. 9, US_00002469 ¶ 19.  Further, in April 2020, the FBI conducted an online undercover

operation to open an account on the BitMEX platform.  When seeking authorization and funds for

the operation, the FBI agent cited his conversation ████████████████  that provided more

information about BITMEX management wrongdoings" as "[j]ustification" for the requests.  *See*

Ex. 14, US_00016232 (emphasis added).

       As yet another indicator of coordinated fact-gathering, over the course of its

investigation, the government followed up with some of the same entities that made productions

and disclosures to the CFTC to subpoena additional documents and information.  *Compare, e.g.*,

Ex. 4, US_00204414 (email from third party to CFTC), *with* Ex. 13, US_00006000 (letter from

same third party to the government); *and* Ex. 21, Govt. Jan. 15, 2021 Ltr. at 5 (production cover

letter referencing CFTC Access Letter for third party), *with id.* at 6 (production cover letter

referencing subpoena returns from same third party).  The government has not produced the vast

majority of its subpoenas to or correspondence with these third parties, nor has it confirmed if it

will produce a complete set of the third parties' production cover letters (let alone its

correspondence with the CFTC), Ex. 27, Govt. May 7, 2021 Ltr. at 3, so the full extent of how the

government targeted and shaped its requests based on information from the CFTC remains hidden

from view.

       The collaboration between the government and the CFTC continues to this day.  Just this

week, on June 2, 2021, counsel for HDR produced an additional document to the CFTC *at the*

*urging of the government*.  *See* Ex. 29, HDR June 2, 2021 Prod. Ltr. at 1.  This unusual directive

from the government speaks volumes about its symbiotic relationship with the CFTC in the context

of this case.

**B.      Notwithstanding Its Close Coordination with the CFTC, the Government Has Refused to Review or Disclose *Brady* Materials from the CFTC's Files**

In November and December 2020, this Court twice ordered the government to disclose *Brady* information "promptly after its existence becomes known to the government" and "sufficiently in advance of trial," "so that the defense may make effective use of the information in the preparation of its case."  ECF Nos. 21, 24.  The Court's *Brady* orders confirm that the government's disclosure obligations extend to "other officers who have participated in the prosecution, or investigation that led to the prosecution" of the charges in this action:

> For purposes of this Order, the Government includes *all current or former* federal, state, and local prosecutors, *law-enforcement officers, and other officers who have participated in the prosecution, or investigation that led to the prosecution,* of the offense or offenses with which the defendants are charged.  The Government has an affirmative obligation to seek from such sources all information subject to disclosure under this Order.

ECF No. 21 at 2-3 (emphasis added); ECF No. 24 at 3 (same).  Under the plain language of the Court's Orders, the government cannot restrict its search for Rule 16 and *Brady* materials to the files of the Department of Justice ("DOJ"), but must instead *affirmatively seek* such information from others who participated in the investigation.

Since October 2020, and pursuant to the Court's Orders, Defendant Reed has repeatedly requested that the government produce *Brady* materials, including those in the possession of the CFTC.  *See, e.g.*, Ex. 18, Def. Oct. 20, 2020 Ltr. at 3 (requesting production of "any and all material received, or which may be received in the future" by the government from the CFTC and any exculpatory and impeaching evidence in the possession of the CFTC); Ex. 22, Def. Feb. 2, 2021 Ltr. at 5 (reiterating request for "all identified *Brady* material . . . whether in [the government's] files or in the possession of the [CFTC]"); Ex. 24, Def. Mar. 11, 2021 Ltr. at 3 (noting lack of response from government to prior request for *Brady* material in the CFTC's files).

Aside from identifying two Wells submissions and one presentation as *Brady* materials, and more generally producing a "CFTC production of documents obtained from" HDR, *see* Ex. 21, Govt. Jan. 15, 2021 Ltr. at 1, 3, the government has produced *nothing* in response to Defendants' requests for *Brady* materials in the CFTC's files.  And while the government has declined to comply with its *Brady* and other discovery obligations in this case, it rushed in February to Judge Vyskocil (the presiding judge in the CFTC action) to seek leave to intervene and stay discovery pending resolution of the criminal case—a further effort to block access to materials they seek to shield from Defendants and from this Court.  Govt. Ltr.to J. Vyskocil at 1.  In its motion to stay discovery in the CFTC case, the government affirmatively argued that the criminal and civil proceedings "*involve[] claims and defenses that share common questions of law and fact*" and "*aris[e] out of the same core facts*."  *Id.* at 1-2 (emphasis added).

At the April 14, 2021 conference, the government represented it intended to "have open-file or near open-file discovery in this case." Ex. 25, Apr. 14, 2021 Conf. Tr. at 24:11-13. However, when Defendants requested disclosure of *Brady* materials that may be in the CFTC's possession, *id.* at 21:18-22:12, the government asserted that it had no obligation to review the CFTC's files for *Brady* materials because the CFTC's investigation was "parallel" and not "joint." *Id.* at 22:15-16.  The government maintained that it was not obligated to search the CFTC's files for *Brady* materials and would only produce materials it had already received from the CFTC.  *Id.* at 22:17-21.  When the Court pressed for clarity, the government stated that, while it had turned over documents it had received from the CFTC, it had not asked the CFTC for any additional materials within the agency's possession.  *Id.* at 28:23-29:23.

On May 3, 2021, Defendants again asked the government to review the CFTC's files for *Brady* materials.  Ex. 26, Def. May 3, 2021 Ltr. at 2.  In response, the government stated that its investigation "was parallel to, not joint with, the CFTC's investigation," and that it has no

obligation to "produce documents in the custody of the CFTC." Ex. 27, Govt. May 7, 2021 Ltr. at 1. In support of its position that no joint investigation took place, the government asserted that "numerous witnesses were interviewed only by the USAO or FBI and without the presence of CFTC personnel"; "interviews in which both the USAO and CFTC participated were overwhelmingly arranged by the USAO"; the CFTC purportedly "did not take notes" at joint interviews; no one from the CFTC "was part of the USAO's investigative team"; "neither agency directed the other regarding investigative avenues"; the CFTC was not involved in the grand jury presentation and did not review the grand jury subpoena returns; and the agencies did not share drafts of the Indictment or the complaint or "confer on charging decisions." *Id.* at 1-2. This motion followed.

## III.    ARGUMENT

### A.    The Government's *Brady* and Rule 16 Obligations Extend to Materials in the Possession of Another Agency in a Joint Investigation

"*Brady* and its progeny require the Government to disclose material information that is favorable to the accused, either because it is exculpatory, or because it is impeaching." *United States v. Rodriguez*, 496 F.3d 221, 225 (2d Cir. 2007) (citation and internal quotation marks omitted). The government "has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case." *Kyles v. Whitley*, 514 U.S. 419, 437 (1995). In this Circuit, where prosecutors and a regulatory agency jointly investigate potential misconduct, the prosecution's duty "extends to reviewing the materials in the possession of that other agency for *Brady* evidence." *See United States v. Gupta*, 848 F. Supp. 2d 491, 493 (S.D.N.Y. 2012); *United States v. Martoma*, 990 F. Supp. 2d 458, 460 (S.D.N.Y. 2014); *see also* ECF No. 21 ("For purposes of [*Brady* disclosure], the Government includes all . . . other officers who have participated in the prosecution, or investigation that led to the prosecution, of the offense or offenses with which the defendants are charged."); ECF No. 24 (same). "[A] prosecutor's office

cannot get around *Brady* by keeping itself in ignorance, or compartmentalizing information about different aspects of a case." *Carey*, 738 F.2d at 878; *see also United States v. Mahaffy*, 693 F.3d 113, 122, 133-34 (2d Cir. 2012) (reversing criminal conviction based on government's failure to produce SEC deposition transcripts where "prosecutions were products of close collaboration between the [USAO] and the SEC").

Rule 16 requires the government to allow a defendant "to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and . . . the item is material to preparing the defense." FED. R. CRIM. P. 16(a)(1)(E); *see also id.* R. 16(a)(1)(F). "Courts have typically required the prosecution to disclose under Rule 16 documents material to the defense that (1) it has actually reviewed, or (2) are in the possession, custody, or control of a government agency so closely aligned with the prosecution so as to be considered part of the prosecution team." *United States v. Finnerty*, 411 F. Supp. 2d 428, 432 (S.D.N.Y. 2006). As the Fifth Circuit has observed, the prosecutor should "not be allowed to avoid disclosure of evidence by the simple expedient of leaving relevant evidence to repose in the hands of another agency while utilizing [its] access to it in preparing [its] case for trial; such evidence is plainly within his Rule 16 'control.'" *Trevino*, 556 F.2d at 1272.

Whether a parallel investigation becomes a joint one depends on the "disclosures being requested, and when it comes to *Brady* disclosures, the relevant context is one of *fact-gathering*." *Gupta*, 848 F. Supp. 2d at 494 (emphasis added). The focus on the factual investigation is necessary to effectuate the purpose of *Brady* and its progeny: to "apprise the defendant of exculpatory evidence obtained during the fact-gathering that might not otherwise be available to the defendant." *Id.* Whether an investigation is joint, such that the government's *Brady* and Rule 16 obligations expand beyond the four corners of their own office, is a "fact-

specific inquiry . . . [that] involves consideration of the degree of cooperation between agencies." *Martoma*, 990 F. Supp. 2d at 461 (citation omitted).

Relevant factors include whether the agency (i) participated in the prosecution's witness interviews; (ii) was involved in presenting the case to the grand jury; (iii) reviewed documents gathered by or shared documents with the prosecution; or (iv) played a role in the development of prosecutorial strategy. *United States v. Middendorf*, No. 18-CR-36, 2018 WL 3956494, at *4 (S.D.N.Y. Aug. 17, 2018) (citing cases). A "joint investigation" does not require the agencies to make the same "investigatory or charging decisions" or to conduct "coterminous investigation[s]." *Gupta*, 848 F. Supp. 2d at 494-95. "[A]ny argument that the Government's duty does not extend so far merely because another agency . . . is in actual possession of the documents created or obtained as part of the joint investigation is both 'hypertechnical and unrealistic.'" *Id.* at 493 (quoting *United States v. Shakur*, 543 F. Supp. 1059, 1060 (S.D.N.Y. 1982)).

In *Gupta*, Judge Rakoff held that the government had an obligation to review interview notes and memoranda by the Securities and Exchange Commission ("SEC") for *Brady* disclosure. 848 F. Supp. 2d at 493-95. The court concluded that the DOJ and the SEC conducted a joint investigation where—as here—the agencies jointly interviewed witnesses, even if only FBI agents took notes. *Id.* The court further rejected the government's arguments that neither agency "had control over the other's actions" or that it "conducted much of its investigation without the SEC's involvement," concluding that the agencies engaged in "joint fact-gathering" despite their "separate investigatory or charging decisions." *Id.* at 494. Similarly, in *Martoma*, the court found "joint fact gathering" between the government and the SEC, such that the government's *Brady* obligations extended to the SEC's files, where—as here—the agencies conferred about the investigation, coordinated efforts, jointly conducted witness interviews, and shared documents obtained during the investigation. 990 F. Supp. 2d at 461-62; *see also Shakur*, 543 F. Supp. at

1060 (holding that "cooperative activity" between the government and a local district attorney's office obligated the government to "obtain[] such *Brady* material in the possession of [that office]").

Courts outside this Circuit have similarly assessed joint investigative efforts between the government and other agencies in determining whether a prosecutor has a duty to disclose *Brady* materials in the possession of another agency.  *See, e.g.*, *United States v. Antone*, 603 F.2d 566, 569-70 (5th Cir. 1979) (holding that state investigative agents were part of a federal investigation where the two groups "pooled their investigative energies to a considerable extent"); *United States v. Santiago*, 46 F.3d 885, 894 (9th Cir. 1995) (finding Rule 16 violation where USAO had knowledge of and access to Bureau of Prisons documents even though Bureau did not participate in the investigation); Order at 5-7, *United States v. Blumberg*, No. 14-cr-458 (D.N.J. Mar. 23, 2015), ECF No. 69  (finding joint factual investigation by the DOJ and SEC where they conducted joint interviews, shared investigative files, coordinated document requests to third parties, and issued concurrent press releases thanking the other agency for its assistance); Order at 5-12, *United States v. Bases*, No. 18-cr-00048 (N.D. Ill. Feb. 24, 2021), ECF No. 394 ("*Bases* Order") (citing *Gupta* and *Martoma*) (finding joint investigation by the government and CFTC, and ordering government to review and produce materials in the CFTC's possession, based on joint interviews and meetings, sharing of trading data and other fruits of investigation, and coordinated investigative efforts).[4]

---

[4]     The Justice Manual provides that "in complex cases that involve parallel proceedings with regulatory agencies . . . , the prosecutor should consider whether the relationship with the other agency is close enough to make it part of the prosecution team for discovery purposes."  U.S. Dep't of Just., Just. Manual § 9-5.002 (2020).  The prosecutor is encouraged to "*err on the side of inclusiveness* when identifying the members of the prosecution team for discovery purposes."  *Id.* (emphasis added); *see also* Mem. for Dep't Prosecutors, U.S. Dep't of Just., Guidance for Prosecutors Regarding Criminal Discovery (Jan. 4, 2010), *available at* https://www.justice.gov/archives/dag/memorandum-department-prosecutors   (internal   DOJ

### B.      The Government and the CFTC Investigated Jointly

The information available to Defendants from the public record and the government's discovery productions demonstrates extensive and coordinated fact-gathering efforts between the agencies going back to the beginning of the criminal investigation and continuing through the joint and coordinated announcement of nearly-identical charging theories. On these facts, the law does not allow the government to obtain information selectively from the files of a regulatory agency and then seal off the rest of the agency's files from constitutionally required disclosure of material and exculpatory information by claiming the investigations are separate. *See Gupta*, 848 F. Supp. 2d at 494.

*First*, the CFTC provided the government with voluminous records central to the criminal investigation, including (i) *more than 2,000 pages* of CFTC deposition transcripts and exhibits for at least six witnesses; (ii) extensive third-party document productions from *at least eleven parties* constituting over *134,000 pages* of material; and (iii) Wells briefings and a presentation from Defendants and the company they founded.  *See Martoma*, 990 F. Supp. 2d at 461 (finding joint investigation where the SEC "provided the USAO with documents it obtained during its investigation"); *Bases* Order at 8 (finding joint investigation where the government intended to rely on trading data provided by the CFTC as part of its case in chief).  And the government further coordinated its investigative efforts with the work of the CFTC by subpoenaing documents from the same third parties after the government reviewed those parties' productions to the CFTC.  *See Bases* Order at 8-9 (noting that the DOJ and CFTC made similar document requests of the same entity and that the DOJ reviewed the search parameters used by the CFTC).

---

memorandum setting forth similar considerations requiring government to "review potentially discoverable information from another federal agency").

*Second*, as in *Gupta* and *Martoma*, the government jointly conducted witness interviews with the CFTC and otherwise relied on the CFTC's depositions to uncover purported evidence that led directly to charges in the Indictment.  *See Martoma*, 990 F. Supp. 2d at 461 (noting that agencies "coordinated their efforts in conducting depositions").  The government did not interview or depose any of the four Defendants, relying instead on those individuals' depositions before the CFTC to support its investigation, including to establish the probable cause asserted for multiple search warrants underpinning this action.  *Cf. id.* at 462 (finding joint investigation where indictment was based in part on "information received from" the SEC).  Critically, the CFTC also participated in at least two key interviews with the government's main witness. ████████████████████████████████████████████████████████  The government asserts that CFTC personnel did not take notes during these interviews, *see* Ex. 27, Govt. May 7, 2021 Ltr. at 2, but this is beside the point as the discovery materials leave no doubt that two CFTC enforcement attorneys participated in the interviews ████████████████ ████████████  *See* Ex. 6, 3516-12 at 1; Ex. 7, 3516-14 at 1; *cf. Gupta*, 848 F. Supp. 2d at 493-94 n.1 (ordering government to review and disclose SEC notes and memoranda despite government's assertion that only an FBI agent took notes during joint interviews); *Shakur*, 543 F. Supp. at 1060 (ordering government to "make available *all* Brady material, including *any that may be in the possession of* the [local district attorney's office]" (emphasis added)).[5]

---

[5]     Left unaddressed by the government is the critical question of whether the CFTC staff took notes in their own meetings with Witness-1—████████████████  As explained below in Section III.C, Witness-1 is a former HDR employee ████████████████████████ is being investigated by the government for obstruction of justice as a result of his attempts to delete information from and destroy devices containing data he took from HDR without permission.  *See* Ex. 9, US_00002469 ¶¶ 8, 19 n.2; *id.* ¶¶ 22-24.  As such, the contents of any debriefings the CFTC had with Witness-1 would clearly constitute *Brady* or *Giglio* material, yet the government has attempted to keep such information beyond the reach of the Defendants.

*Third*, the government has built its case substantially on the shoulders of Witness-1 ███████████████████████ further demonstrating that the CFTC "played a role in the development of prosecutorial strategy." *See Middendorf*, 2018 WL 3956494, at *4. The government interviewed Witness-1 shortly after opening its investigation into BitMEX and conducted 17 interviews of him in total—██████████████████████████████ ████████████████████████████. Witness-1, who claimed to possess "the full database of the customers at BitMEX," *see* Ex. 2, 3516-156 at 8, supplied by far the largest body of witness statements in the 3500 materials produced by the government. The government used information provided by Witness-1, including information obtained during joint interviews with the CFTC, to (i) assert the probable cause required for multiple search warrants into third-party records and email accounts, *see, e.g.*, Ex. 11, US_00002544, Ex. 12, US_00002429, Ex. 17, US_00002596; and (ii) enable the FBI to design and conduct an undercover operation on the BitMEX platform and to obtain authorization and funding for such operation, *see* Ex. 14, US_00016232. Tellingly, several months after commencing this action, the government identified Witness-1 as the *only* example of "witnesses [it] may call" during trial. *See* Ex. 21, Govt. Jan. 15, 2021 Ltr. at 3.

The government's extensive reliance on CFTC documents, deposition transcripts, and advocacy materials, plus a critical██████████witness█████████████ and jointly interviewed by the government and the CFTC, amply establishes a joint investigation for purposes of *Brady*. But the CFTC also contributed to "the development of prosecutorial strategy" by supplying its unique legal and technical expertise in a criminal prosecution premised on a novel and highly technical regulatory theory. *See Middendorf*, 2018 WL 3956494, at *4. In mirroring language, both the Indictment (¶¶ 3, 6-8, 18) and the CFTC Complaint (¶¶ 4, 28, 31-35, 86, 87, 93, 131) allege that BitMEX operated as an FCM under the Commodity Exchange Act, failed to register as such with the CFTC, and violated obligations associated with FCMs—a theory of

liability that hinges on interpretation of the Commodity Exchange Act, the statute for which the CFTC is the primary regulator.  The government's assertion that it did not confer with the CFTC on charging decisions lacks credibility.  Indeed, the government acknowledged the CFTC's instrumental contribution in its press release, thanking its partners "at the CFTC" for "offering their expertise in the development of this investigation."  *See* USAO Press Release.  And in its motion to stay discovery, the government conceded that the two actions "share common questions of law and fact" and "aris[e] out of the same core facts."  *See* Govt. Ltr. to J. Vyskocil at 2.  As in *Bases*, where the DOJ conferred with the CFTC regarding trading data in prosecuting a derivatives trading case, this action is a "product[] of close collaboration" between the agencies where the government indisputably relied on the CFTC's legal and technical expertise in developing its investigation and prosecution.  *See Bases* Order at 6-7; *Mahaffy*, 693 F.3d at 122.[6]

 *Finally*, while the government has not disclosed the full nature and scope of its communications with the CFTC, there are strong indicia of strategic coordination between the agencies that further evidence a joint investigation.  In particular, the government and the CFTC coordinated to unseal the Indictment and file the complaint the same morning within minutes of each other.  *See Middendorf*, 2018 WL 3956494, at *5 (recognizing that the government and SEC filed charges against the same defendants on the same day as "circumstantial evidence of strategic coordination").  The government and the CFTC publicly praised the "diligent work," "expertise," and "assistance" provided by the other agency in their respective press releases.  USAO Press

---

[6] It is of no moment that the Indictment and the CFTC complaint assert violations of different statutes, when the government's core theory of liability under the Bank Secrecy Act relies on a regulatory interpretation of the Commodity Exchange Act, and both sets of charges allege that Defendants failed to comply with specified provisions of the Bank Secrecy Act applicable to CFTC-regulated FCMs.  *See Bases* Order at 12 (ordering government to review for and produce *Brady* materials in CFTC files even though government charged the alleged misconduct under general fraud statutes in addition to the Commodity Exchange Act); Ind., *United States v. Bases*, No. 18-cr-00048 (N.D. Ill. July 17, 2018), ECF No. 66.

Release; *see Shakur*, 543 F. Supp. at 1060; *Bases* Order at 10 (DOJ press release acknowledging "invaluable assistance from" the CFTC supported finding of a joint investigation).

When considered in totality, these facts demonstrate extensive collaboration and resource-sharing between the government and the CFTC in their fact-gathering efforts. The "degree of cooperation" is substantially similar to (or exceeds) that in *Gupta*, *Martoma*, and *Bases*, such that the nature of the investigation is not parallel, but joint. In its May 7, 2021 letter, the government asserted that the CFTC was not "part of the USAO's investigative team" and "neither agency directed the other regarding investigative avenues." *See* Ex. 27, Govt. May 7, 2021 Ltr. at 2. But a joint investigation does not require the agencies to make the same "investigatory or charging decisions" or to conduct "coterminous investigation[s]." *See Gupta*, 848 F. Supp. 2d at 494-95. And while the government claimed that the CFTC was "not involved in the grand jury presentation," Ex. 27, Govt. May 7, 2021 Ltr. at 2, it failed to disclose other aspects of the CFTC's involvement, including how much of the evidence presented to the grand jury had come into the government's possession only through the CFTC.[7]

Having benefited from its joint investigative efforts with the CFTC, the government should not be allowed to avoid its *Brady* and Rule 16 obligations to review for and disclose relevant materials from the CFTC's files. *See Trevino*, 556 F.2d at 1272 (A prosecutor cannot "avoid disclosure of evidence by the simple expedient of leaving relevant evidence to repose in the hands of another agency while utilizing his access to it in preparing his case for trial . . . ."); *Gupta*, 848 F. Supp. 2d at 492 ("That separate government agencies having overlapping jurisdiction will

---

[7]     The government's apparent reliance on *United States v. Rigas* is misplaced, as that case was decided primarily on the ground that the "government is not obligated to disclose information that defendants[] already know." *See United States v. Rigas*, No. 02-CR-1236 (LBS), 2008 WL 144824, at *2 (S.D.N.Y. Jan. 15, 2008); *United States v. Rigas*, 583 F.3d 108, 126 (2d Cir. 2009); *see also Martoma*, 990 F. Supp. 2d at 460 n.2 (finding the USAO's argument in that case also "mischaracterize[d] the holding of *Rigas*").

cooperate in the factual investigation of the same alleged misconduct makes perfect sense; but that

they can then disclaim such cooperation to avoid their respective discovery obligations *makes no

sense at all*." (emphasis added)).   The government's position is unsupported by the facts or the

law, contradicts this Court's express orders, and ignores the DOJ's own guidance that a prosecutor

should "err on the side of inclusiveness when identifying the members of the prosecution team for

[*Brady*] purposes."   U.S. Dep't of Just., Just. Manual § 9-5.002 (2020).

> ### C.       The CFTC is Likely in Possession of Evidence Exculpatory, Impeaching, and Material to the Defense

"Under *Brady*, the State violates a defendant's right to due process if it withholds

evidence that is favorable to the defense and material to the defendant's guilt or punishment."

*Smith v. Cain*, 565 U.S. 73, 75 (2012).   Evidence is considered favorable to the defense if it is

either exculpatory or impeaching.   *Rodriguez*, 496 F.3d at 225.   Evidence is "material" if it could

"reasonably be taken to put the whole case in such a different light as to undermine confidence in

the verdict."   *Mahaffy*, 693 F.3d at 127 (quotation marks and citation omitted).   Further,

"prosecutors generally must take a broad view of materiality and err on the side of disclosing

exculpatory and impeaching evidence."   U.S. Dep't of Just., Just. Manual § 9-5.001.B (2020)

(citing *Kyles*, 514 U.S. at 439).

Here, the government's representation that it has produced *Brady* materials

received from the CFTC is not adequate.   As Defendants pointed out to the government five

months ago, exculpatory or impeaching evidence in this case includes information suggesting,

directly or indirectly and in whole or in part, that:

- BitMEX denied service to customers or prospective customers located or believed to be located in the United States;

- BitMEX took steps to restrict U.S. customers from accessing BitMEX;

- BitMEX implemented controls to block customers who attempted to circumvent the platform's terms and conditions to access from the United States;

- BitMEX took affirmative steps to mitigate the risk of criminal activity on its platform;

- Bank Secrecy Act obligations did not apply to BitMEX;

- Defendants believed, at any point, that the above statements were true;

- Defendants discouraged or denied access to or use of BitMEX by customers or prospective customers located or believed to be located in the United States; and

- Any alleged failure of BitMEX to establish, implement, and maintain an adequate anti-money laundering program was not willful.

*See* Ex. 20, Def. Jan. 9, 2021 Ltr. at 4-5.  Additionally, any evidence that the CFTC believed that

the application of the CEA to BitMEX was questionable or debatable is exculpatory and must be

produced.[8]  Given the scope of the CFTC's allegations and the issues encompassed in the CFTC

materials that the government has produced, it is highly likely that the CFTC is in possession of

information in some or all of the above categories.   The government must disclose such

information along with all other *Brady* materials.

The CFTC is also likely to possess material impeaching information with respect

to Witness-1, the government's only identified example of "witnesses [it] may call" at trial. *See*

Ex. 21, Govt. Jan. 15, 2021 Ltr. at 3. ████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

---

[8]          Such evidence includes any notes and memoranda regarding meetings between CFTC personnel and any Defendant or HDR representative or any third party regarding BitMEX, including but not limited to a meeting Defendant Hayes and counsel for BitMEX had with CFTC staff in or around June 2018.

███████████████████████████████████████████████████████████

████████████████████████████████████████████████

Further, Witness-1—a disgruntled former employee who stole and then deleted and destroyed HDR data—is motivated to cooperate with the government to avoid prosecution for obstruction of justice and has indeed been "offered a non-prosecution agreement by the [USAO]." *See* Ex. 17, US_00002596 ¶ 17 n.2.  As the government stated in its search warrant applications, Witness-1 "deleted" information from two iPhones allegedly containing information about BitMEX and "directed a third party to destroy" a hard drive allegedly containing "data that Witness-1 had saved from [an HDR] corporate laptop while an employee at BitMEX"—before voluntarily providing these devices to the government a few days later.  *See* Ex. 9, US_00002469 ¶¶ 22-24.[9]  The government has stated that it is investigating Witness-1 for obstruction of justice as a result of these actions.  *Id.*  ¶¶ 8, 19 n.2.

The CFTC's long-running contact with Witness-1 thus makes it likely that the agency is in possession of material impeaching information about Witness-1, including evidence (i) of Witness-1's bias or motive to lie; (ii) of any charges, criminal investigation, probation, parole, or offenses for which Witness-1 has not been charged; (iii) tending to show that Witness-1's perception, recollection, or ability to tell the truth is impaired; or (iv) showing any express or implied promises of any benefit to be conferred and/or assurance not to prosecute or leniency made in writing or orally to Witness-1.  *See Mahaffy*, 693 F.3d at 119 (information which "contradicted or undermined the testimony of key government witnesses . . . at trial" was material for *Brady* purposes); *United States v. Cilins*, No. 13 Cr. 315 (WHP), 2014 WL 173414, at *4 (S.D.N.Y. Jan. 15, 2014) (evidence is material if "there is a strong indication that it will play an important role in

---

[9]        *See* Defs.' Mot. to Compel Prod. of Witness-1 Devices (June 4, 2021).

. . . assisting impeachment or rebuttal") (citation omitted).  In particular, and as noted above, we assume that the CFTC debriefed Witness-1 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓.  The content of such debriefings would almost certainly include *Brady* and/or *Giglio* material.

The government should not be allowed to artificially circumscribe its review of CFTC files that are highly likely to contain exculpatory or impeaching information, especially in light of Defendants' specific requests for such evidence.  *See United States v. Thomas*, 981 F. Supp. 2d 229, 240 (S.D.N.Y. 2013) ("[T]he more specifically the defense requests certain evidence, thus putting the prosecutor on notice of its value, the more reasonable it is for the defense to assume from the nondisclosure that the evidence does not exist, and to make pretrial and trial decisions on the basis of this assumption." (quoting *United States v. Bagley*, 473 U.S. 667, 682-83 (1985))); *see* Ex. 20, Def. Jan. 9, 2021 Ltr. at 4-5.

### D.     The Court Should Order an Evidentiary Hearing in the Alternative

Defendants submit that the facts set forth in this motion mandate the conclusion that the government's *Brady* and Rule 16 obligations extend to materials in the CFTC's possession. However, should the Court find that additional facts are necessary to determine the degree of the government's coordination with the CFTC, the Court should order an evidentiary hearing, prior to which the government should produce documents sufficient to show the nature, frequency, and content of its interactions with the CFTC.

At a minimum, the government should produce (i) all documents and communications reflecting or memorializing meetings and telephone calls between the government (including the FBI) and the CFTC regarding BitMEX; (ii) all documents and communications reflecting the sharing or pooling of resources between the government and the CFTC; (iii) all documents and communications reflecting the sharing of information and materials between the government and the CFTC; (iv) all documents and communications reflecting

coordination of witness interviews and requests for information from third parties; (v) all communications between the government and the CFTC regarding Witness-1; (vi) all CFTC interview notes and memoranda relating to Witness-1; and (vii) all documents and communications reflecting the degree of consultation and input from the CFTC that the government has received, is receiving, or will receive in preparation for and during trial.

There are legitimate questions regarding the government's representation of the degree of collaboration between the agencies, which is uniquely within the government's knowledge.  The government has conclusorily characterized its investigation as "parallel to," rather than "joint with," that of the CFTC.  Ex. 27, Govt. May 7, 2021 Ltr. at 1.  Without divulging any of its communications with the CFTC, the government represented that "no one from the CFTC was part of the [government's] investigative team."  *Id.* at 2.  However, the documents produced to date reveal a robust record of the agencies sharing documentary and testimonial evidence; the government issued a press statement thanking the CFTC for its partnership and expertise; and the government affirmatively stated when seeking to stay discovery in the CFTC action that the two cases "involve[] claims and defenses that share common questions of law and fact."  *See* Govt. Ltr. to J. Vyskocil at 2.  At the very least, an evidentiary hearing is necessary to determine whether the CFTC and the government conducted a joint investigation, thereby triggering constitutionally-mandated discovery obligations.

## IV.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court order the government to produce exculpatory and discoverable materials pursuant to *Brady* and Rule 16 from the files of the CFTC, or in the alternative order an evidentiary hearing following discovery of the government's interactions with the CFTC.

Dated: June 4, 2021
     New York, New York

Respectfully submitted,

*James J. Benjamin, Jr. /py/*

James J. Benjamin, Jr.
Katherine Goldstein
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Tel: (212) 872-8091
jbenjamin@akingump.com
kgoldstein@akingump.com

Peter Altman
AKIN GUMP STRAUSS HAUER & FELD LLP
1999 Avenue of the Stars, Suite 600
Los Angeles, CA 90067-6022
Tel: (310) 299-1000
paltman@akingump.com

*Attorneys for Defendant Arthur Hayes*

*Douglas K. Yatter*

Douglas K. Yatter
Benjamin Naftalis
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, New York 10020
Tel: (212) 906-1200
douglas.yatter@lw.com
benjamin.naftalis@lw.com

Jack M. McNeily
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Tel: (312) 876-7700
jack.mcneily@lw.com

*Attorneys for Defendant Samuel Reed*

*Patrick J. Smith /py/*

Patrick J. Smith
Andrew J. Rodgers
SMITH VILLAZOR LLP
250 West 55th Street, 30th Floor
New York, New York 10019
Tel: (212) 377-0851
patrick.smith@smithvillazor.com
andrew.rodgers@smithvillazor.com

Harlan A. Levy
FOLEY HOAG LLP
1301 Avenue of the Americas
New York, New York 10019
Tel: (646) 927-5500
hlevy@foleyhoag.com

*Attorneys for Defendant Benjamin Delo*