# EXHIBIT 17

**Douglas K. Yatter**
Direct Dial: (212) 906-1211
douglas.yatter@lw.com

53rd at Third
885 Third Avenue
New York, New York  10022-4834
Tel: +1.212.906.1200  Fax: +1.212.751.4864
www.lw.com

# LATHAM&WATKINS LLP

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Beijing | Moscow |
| Boston | Munich |
| Brussels | New York |
| Century City | Orange County |
| Chicago | Paris |
| Dubai | Riyadh |
| Düsseldorf | San Diego |
| Frankfurt | San Francisco |
| Hamburg | Seoul |
| Hong Kong | Shanghai |
| Houston | Silicon Valley |
| London | Singapore |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |
| Milan | |

January 9, 2021

**VIA E-MAIL**

Jessica Greenwood
Samuel Raymond
Assistant United States Attorneys
Southern District of New York
1 St. Andrew's Plaza
New York, New York 10007

Re:    *United States v. Hayes et al.*, 20 Cr. 500 (JGK)

Dear Ms. Greenwood and Mr. Raymond:

We write in connection with certain issues regarding the Government's productions and ongoing discovery obligations to Samuel Reed (the "Defendant").  This letter supplements our prior communications, including (i) our October 20, 2020 letter to you (the "Rule 16 Letter"), (ii) your productions of November 10, 2020, December 11, 2020, and December 15, 2020, and (iii) our e-mail correspondence regarding these productions.  As we continue to review documents and other materials, we reserve the right to raise additional discovery issues in due course.

A.    Future Productions

The Court has scheduled a status hearing for February 9, 2021 to discuss, among other things, the scheduling and scope of our pre-trial motions.  *See* Ex. A (Tr. Oct. 15, 2020 Status Hr'g) at 10:9-11:15.  The Court set the February 9, 2021 status date based on the Government's representation that it would complete discovery to Defendant by mid-December at the latest.  *See id*. at 9:3-7, 10:9-11:15.  To date, the Government has made only three productions, on November 10, 2020, December 11, 2020, and December 15, 2020.  Based on your December 29, 2020 e-mail, we understand the Government has outstanding productions to make and that those productions will be delivered to Defendant on a rolling basis.  We have repeatedly asked for a timeline for the remaining productions.

The pace of the Government's productions to date and the uncertainty with respect to the timing and scope of its outstanding productions is concerning, as is the level of responsiveness to questions about these critical obligations.  More specifically, the lack of timely productions (and technical issues detailed below) has prevented Defendant from completing the review necessary

LATHAM&WATKINS LLP

to speak to the scope and timing of a pre-trial schedule at the scheduled status conference as expected by the Court.  Accordingly, we renew our request that the Government provide a firm, written timeline for its outstanding productions.

B.      Technical Production Issues

The materials the Government has produced so far are replete with technical issues.  Our review of the three productions has identified several concerns, including:

1.  More than 9,000 documents in the Third Party Productions documents within Global Production 03, and more than 24,000 documents in the Subpoena Returns Productions documents within Global Production 03, are missing the Custodian Value field.  Without those values, it is not possible to associate those documents with the producing parties.  Relatedly, we have identified many documents that include an individual's, rather than a producing party's, name in the Custodian Value.  *See e.g.* US_00246063.  For such documents, we request the Government provide both the Custodian Value and an Entity Value to allow us to associate those documents with the producing party.

2.  None of the documents in the 3500 Production series (both 3500 Production 01 and 3500 Production 02) contain page-level bates stamping.  Instead, only the first page of these documents is stamped.

3.  Loose PDF and native files were not exported in database-ready format with supplemental tracking information.  Specifically, production demands appear to have been made to more than 40 entities, and there appears to have been no enforcement of formatting according to federal production guidelines.  As a result, a substantial portion of the Government's production requires manual coding and sorting before it can be reviewed in database format.

4.  The " ▆▆▆▆ Subpoena Return documents within Global Production 02 were stamped with US bates stamping schema, but the associated load file only contains references to the ▆▆▆▆ bates stamping schema, preventing us from indexing the documents by the relevant US bates stamps.  In addition, the load files themselves were bates stamped, creating gaps in the bates ranges of the primary documents.

5.  Certain documents in the production appear to have been produced by parties not listed on the Government's production cover letters.  For example, we have identified a series of documents that appear to have been produced by ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ is not identified as a producing party.  *See, e.g.*, US_00635927; US_00635960.

These issues raise a host of concerns, including the reliability of the Government's evidence and chain thereof.  For the moment, to address these concerns, and any others we may encounter as we continue reviewing the productions in due course, we request that the Government (1) provide indices for each production set specifying the bates range of documents for each producing party; (2) produce or identify all subpoenas and search warrants that prompted

January 9, 2021
Page 3

LATHAM&WATKINS LLP

productions, and the production cover letters that accompanied each responsive production; and (3) provide a metadata overlay resolving the issues described above.

### C.      Taint Team Review

Based on the Government's December 15, 2020 production cover letter and its responses to our e-mails of December 23 and December 29, 2020, we understand that the Government used a Taint Team to review privileged material obtained by the Government in this matter.  Multiple parties' privileges were implicated by the materials in question.  We further understand you to have stated that materials deemed privileged were withheld from the Investigative Team or provided to the Investigative Team in redacted form, with the exception of a document to which the Investigative Team had access before the document was reviewed and redacted by the Taint Team.  The Government has not provided, however, any information explaining the Taint Team's privilege determinations or process, or identifying whose privileges and which privileges are implicated by each document.

Moreover, our review of the redacted materials identified in the December 15, 2020 production cover letter shows that the Government used varying redaction methods to redact the materials in question, including use of white box redactions with no labels and use of a mixture of black and white box redactions within the same document.  *See*, *e.g.*, 3516-103.  The Government's redaction methodology makes it difficult or impossible to discern the scope of redactions and where, for example, a document was redacted or is simply devoid of content.

Equally concerning is the Government's insistence on the entry of a protective order <u>before</u> it disclosed the access by the Investigative Team to privileged materials and the use of a Taint Team, especially considering all of the materials redacted by the Taint Team are materials designated "Sensitive" by the Government.  We anticipate having additional questions about the Taint Team and its work.  For now, to clarify the scope of the material identified as privileged by the Taint Team and the privileges to which that material relates, we request that the Government (1) provide a privilege log—prepared by the Taint Team—identifying all documents withheld or redacted based on the Taint Team's determination of privilege, including, to the extent known, (a) the date of the document; (b) the identity of each author; (c) its addressees, if any; (d) the affiliation and title (or position) of its author and addressees; (e) the type of document (*e.g.*, letter, memorandum, instant message, report, etc.); (f) its title and subject matter (without revealing privileged information); (g) the privilege holder whose privilege is believed to be implicated; and (h) the nature of the privilege believed to apply; and (2) reproduce all redacted documents with standard black box redactions.

### D.      *Brady* Material

Our October 20, 2020 Rule 16 Letter requested the production of all discovery required under *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States,* 405 U.S. 150 (1972), and related authority, among other material.  On November 2, 2020, the Court issued an order directing production of *Brady* material, noting that the Government must disclose all *Brady* material "promptly after its existence becomes known to the Government so that the defense may make effective use of the information in the preparation of its case."  Order, Nov. 2, 2020, ECF

LATHAM&WATKINS LLP

No. 21; *see also* Order, Dec. 11, 2020, ECF No. 24 (same).  The Government must disclose, at a minimum, all material exculpatory in nature or favorable to Defendant or that may serve to mitigate punishment.  *Id*. (citing *Brady*, 373 U.S. 83 at 87).  To avoid any misunderstanding in that area, we are writing to notify you that the Court's order and the underlying authority relied upon by the Court requires the disclosure of any material or information suggesting, directly or indirectly and in whole or in part, that:

1. BitMEX[1] was not required to comply with the Bank Secrecy Act, 31 U.S.C. § 5311, *et seq*. ("BSA");

2. BitMEX denied service to customers or prospective customers located or believed to be located in the United States;

3. BitMEX took steps to restrict U.S. customers from accessing BitMEX;

4. BitMEX controls blocked customers who circumvented the platform's terms and conditions to attempt to access the platform from the United States;

5. Any customers who accessed the platform from the United States did so in violation of BitMEX's terms and conditions;

6. BitMEX's operations in the United States were limited to back-office support functions;

7. BitMEX took affirmative steps to mitigate the risk of criminal activity on its platform;

8. Defendant, co-defendants, or any alleged co-conspirators believed, at any point, that the statements in 1-7 above were true;

9. Defendant, co-defendants, or any alleged co-conspirators discouraged or denied access to or use of BitMEX by customers or prospective customers located or believed to be located in the United States;

10. Defendant, co-defendants, or any alleged co-conspirators took steps to implement or bolster BitMEX controls to block customers or prospective customers located or believed to be located in the United States;

11. Defendant was unaware of, or disputed the underlying data regarding, any alleged reports attributing trading revenue to U.S. customers; and

12. Any alleged failure of BitMEX to establish, implement, and maintain an adequate anti-money laundering program was not willful but resulted from an oversight failure, honest mistake, lack of knowledge, or lack of resources.

---

[1] The term "BitMEX" as used herein carries the same meaning as the term used in the indictment in this matter.

LATHAM&WATKINS LLP

In addition, *Brady*, *Giglio*, and related authority require the disclosure of information regarding the informants or witnesses who provided information in this case. *See, e.g.*, *Giglio*, 405 U.S. at 154. As noted in the Rule 16 Letter, this information should, at a minimum, include:

1. Witness names and addresses;

2. Evidence of bias or motive to lie;

3. Impeachment evidence;

4. Evidence the Government may offer pursuant to Federal Rules of Evidence 403 and 404(b);

5. Evidence of any charges, indictments, criminal investigation, probation, parole, or offenses known to the Government for which any witness or potential witness has not been charged;

6. Evidence tending to show that any prospective witness' perception, recollection, or ability to communicate or tell the truth is impaired; and

7. Disclosure of any promises, whether express or implied, direct or indirect, of any benefit to be conferred, including a monetary benefit, and/or assurance not to prosecute or leniency made in writing or orally to such persons and the substance of any statements or discussions regarding leniency, compensation, or assurance not to prosecute.

Importantly, the enumerated categories above are only *some* of the categories of materials or evidence that would qualify as exculpatory material under *Brady* and in no way limit the scope of materials subject to mandatory disclosure. As you know, it does not matter if the exculpatory information is specifically requested by Defendant, is itself admissible, or is similar to other information that is produced, or if the government credits the information or not. *See* Order, Dec. 11, 2020, ECF No. 24; *United States v. Mahaffy*, 693 F.3d 113, 131 (2d Cir. 2012).

To date, the government has not produced any material to Defendant identified as *Brady* or *Giglio* material. The absence of such material is curious and concerning, given the government's production of 3500 material relating to 19 separate government witnesses, including six unnamed sources or witnesses, and documents describing the government's communications with a ▮▮▮▮▮▮▮▮▮▮." *See* Dec. 11, 2020 Production Cover Letter (identifying 10 government witnesses with corresponding 3500 material); Dec. 15, 2020 Production Cover Letter (identifying an additional 9 government witnesses with corresponding 3500 material, including unnamed Sources 1-5 and unnamed Witness-1); US_00016230 (reporting FBI conversation ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ about BITMEX management wrongdoings"). The Government's access to privileged materials and the use of a Taint Team raise other questions on these bases.

If you are aware of *Brady* material in the discovery produced to date, you must identify it specifically. *United States v. Thomas*, 981 F. Supp. 2d 229, 239 (S.D.N.Y. Oct. 30, 2013)

LATHAM&WATKINS LLP

("[T]he Government cannot hide *Brady* material as an exculpatory needle in a haystack of discovery materials"); *United States v. Saffarinia*, 424 F. Supp. 3d 46, 86 (D.D.C. Jan. 15, 2020) (ordering the government to identify *Brady* material); *United States v. Blankenship*, No. 5:14–cr–00244, 2015 WL 3687864, at *6-7 (S.D. W.Va. June 12, 2015) (same); *United States v. Salyer*, No. S–10–0061 LKK (GGH), 2010 WL 3036444, at *6 (E.D. Cal. Aug. 2, 2010) (same); *United States v. Hsia*, 24 F. Supp. 2d 14, 29–30 (D.D.C. Aug. 13, 1998) ("The government cannot meet its *Brady* obligations by providing [the defendant] with access to 600,000 documents and then claiming that she should have been able to find the exculpatory information in the haystack."). These courts have recognized in these so-called "big document" cases that the government does not discharge its *Brady* obligations by simply disclosing the troves of documents that it has collected. As the court stated in *Salyer*, "it bears repetition to emphasize that the ultimate issue is whether there is disclosure in the letter *and* spirit of *Brady/Giglio* simply by turning over a mountain of everything acquired over half a decade, and telling defense counsel nothing about where exculpatory/impeaching information can be found." 2010 WL 3036444, at *6 (emphasis in original) (internal quotations omitted).

*   *   *

Please let us know your positions on each of the issues above. We appreciate your attention to these matters and are available to discuss at your convenience.

Very truly yours,

 /s/ Douglas K. Yatter
Douglas K. Yatter
Benjamin A. Naftalis
of LATHAM & WATKINS LLP