# EXHIBIT 26

L5B1HAYC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
UNITED STATES OF AMERICA,

                    v.                        20 Cr. 500 (JGK)

ARTHUR HAYES, et al.,

                    Defendants.               Remote Conference
------------------------------x
                                              May 11, 2021
                                              2:33 p.m.

Before:

                    HON. JOHN G. KOELTL,
                                              District Judge


                         APPEARANCES

AUDREY STRAUSS
     United States Attorney for the
     Southern District of New York
BY:  SAMUEL RAYMOND
     Assistant United States Attorney

AKIN GUMP STRAUSS HAUER & FELD LLP
     Attorneys for Defendant Arthur Hayes
BY:  JAMES J. BENJAMIN, JR., ESQ.
     KATHERINE R. GOLDSTEIN, ESQ.
     PETER I. ALTMAN, ESQ.
     KAITLIN D. SHAPIRO, ESQ.

SMITH VILLAZOR LLP
     Attorneys for Defendant Benjamin Delo
BY:  PATRICK J. SMITH, ESQ.
     ANDREW J. RODGERS, ESQ.

FOLEY HOAG LLP
     Attorneys for Defendant Benjamin Delo
BY:  HARLAN A. LEVY, ESQ.

LATHAM & WATKINS LLP
     Attorneys for Defendant Samuel Reed
BY:  DOUGLAS K. YATTER, ESQ.
     BENJAMIN NAFTALIS, ESQ.
     JACK McNEILY, ESQ.

(Case called)

THE DEPUTY CLERK:  Will all parties please state who they are for the record.

MR. RAYMOND:  Good afternoon, your Honor.  This is Sam Raymond for the government.

MR. BENJAMIN:  Good afternoon, your Honor.  This is Jim Benjamin from Akin Gump for Mr. Hayes.  I'm joined by my colleagues Katie Goldstein, Peter Altman, and Kate Shapiro; and as well Mr. Hayes has dialed in from Singapore, where it is local time 2:34 a.m.

THE COURT:  Wow.  Okay.  Thank you.

MR. SMITH:  Good afternoon, your Honor.  Patrick Smith, Smith Villazor LLP, together with Andrew Rodgers; also on the line is co-counsel Harlan Levy, now of Foley Hoag; and Mr. Delo is also on the line.

THE COURT:  Good afternoon.

MR. YATTER:  Good afternoon, your Honor.  Douglas Yatter from Latham Watkins, together with Ben Naftalis and Jack McNeily, for Mr. Reed, who is also on the line.

THE COURT:  Okay.  Good afternoon, all.

We're doing the conference today by telephone.  There is a national emergency as a result of the pandemic.  There's also a continuing emergency in the court that was declared by our former Chief Judge.  It's possible to be in court, but it is subject to various difficulties.  The interests of justice

L5B1HAYC

would be harmed if we didn't go forward today because it's important that the case, which is now been pending for some time, move forward.

I understand that each of the defendants has agreed to proceed by telephone and has agreed to waive their personal appearances. I actually have consents to proceed by telephone conference from each of the defendants -- Arthur Hayes, Benjamin Delo, and Samuel Reed. So the defendants have agreed to waive their personal presence.

Mr. Raymond, does the government think that I should make any other findings or ask any other questions?

MR. RAYMOND: No, your Honor.

THE COURT: Okay. Fine. Tell me where we are.

MR. RAYMOND: Yes, your Honor. The government has produced a tremendous amount of the discovery in this case, including, as recently as two hours ago, another production. The government continues to receive rolling productions from one party, which it is in the process -- I should be clear, your Honor. With respect to the outstanding documents in the government's possession that have not yet been produced, the government has two search warrant returns of email addresses which it expects to be able to -- email accounts -- expects to produce to the defendants in the next few weeks, and then with respect to another party that is still providing documents to the government, that is going -- the government has a

production in hand which it is preparing for production to the defendants, and that party is still rolling its productions to the government so I don't have a specific date for when that party will be complete with its document production, but the vast majority of the document discovery in the government's possession has been produced.  I should be clear, your Honor, to Mr. Reed's counsel, because Mr. Reed was first in the case. Mr. Hayes and Mr. Delo's counsel have received the document productions since they have entered the case -- the one this morning, for instance -- and both counsel requested that they receive an index of document productions made to Mr. Reed and that they would work with Mr. Reed to obtain the prior document productions.  We've sent indexes to both Mr. Hayes's counsel and Mr. Delo's counsel.  To the extent they can't get access to any of that document discovery, we're happy to work with them.

The last issue, your Honor, is with respect to Mr. Hayes.  One of the outstanding email accounts to be produced is Mr. Hayes's email accounts, and the government is working with Mr. Hayes's counsel to receive a drive so that he can receive his email account.

THE COURT:  Okay.  So the question is:  Should I now fix a date for motions and think about a trial date, or do the defendants want another status conference before we do that?  I realize that there is one defendant who's still out there, but we're not delaying the case just because there is another

L5B1HAYC

defendant out there.  So what are the parties' views?  Do you want another conference in two months, three months, or you want me to begin to set the schedule now for motions and trial? Given the complexity of the case and what the government has indicated with respect to the volume of discovery, I can understand why it would take more time to review the discovery and to determine what motions, if any, to make.  I also note that each of the defendants is released.

So I imagine the parties have discussed this before the conference, so I'm happy to listen to your views.

MR. BENJAMIN:  Your Honor, this is Jim Benjamin from Akin Gump, and I'm happy to at least kick off the discussion. Counsel for the defendants have been in close consultation on this topic about scheduling of motions, and so I'm prepared to outline our collective thinking.

First, we do suggest that it's appropriate to go ahead and set a schedule for motions and, ideally, for a trial date as well.  As Mr. Raymond has indicated, you know, the government has produced quite a lot of discovery material. We're all working diligently to review that material.  We will continue to do so.  We do anticipate pretrial motions.  Our suggestion would be to set sort of a two-track schedule for motions.  We would propose to have an initial set of discovery motions to be filed on or around June 30th.  We presently anticipate at least one and potentially two such motions.

L5B1HAYC

First would be regarding the topic that was discussed in the last conference, which is a request that the government be directed to search the CFTC investigative files for potential *Brady*.  There's been, you know, correspondence back and forth on that topic, there was extensive discussion at the last conference, and I think the view, collective view of the defendants is that that issue is ripe for a motion.

A second potential motion that we expect, if it is going to be filed, would likely be ripe by June 30th is on another topic that was discussed at the last conference -- namely, defense requests for access to certain devices or files that were stored on devices of an individual who's been identified as Witness 1 in the discovery.

So we suggest that that motion practice proceed, and then our thought is that it would make sense to set a subsequent date, perhaps in early September, for a second round of motions.  That might include one or more motions to dismiss that would be directed at, you know, legal issues presented in the indictment.  I'll say that, you know, the defendants have not yet determined whether to file such a motion.  The issues are complex and we want to analyze them carefully.

There could as well be motion practice at that time regarding government's use of a taint team.  The Court may recall we discussed that during the last conference.  Frankly, we don't yet have sufficient information to make a

L5B1HAYC

determination as to whether a motion would be necessary, but it may be the case, and if so, we would expect to be in a position to file such a motion by September.

And then, you know, there may as well be motions for particulars, although I would note that the government very recently has responded to a number of our requests for particulars so that may or may not be ripe.

And then, you know, I guess looking even further down the track, we would envision this case will likely have one or more experts as trial witnesses, and so at some point there would likely be *Daubert* motions and of course *in limine* motions and things like that closer to trial.

But those are some initial thoughts on behalf of the defense with respect to the possible motion schedule.

THE COURT:  Okay.  Government, Mr. Raymond, any thoughts?

MR. RAYMOND:  Yes, your Honor.  You know, I do think that makes sense.  We respectfully request at least -- probably one month to respond.  Mr. Benjamin mentioned June 30th.  If we could have till the end of July to respond to the discovery motions.

I do think that that dual-track briefing might make sense here because to the extent, for instance, the Court rules in certain ways with respect to those issues, it might require additional government disclosures, which we can work on as

L5B1HAYC

we're involved in that second round of briefing.  So I think that makes sense from the government's perspective.

THE COURT:  Okay.  Tell me what the government's estimate is with respect to length of trial.

MR. RAYMOND:  Your Honor, I would estimate about four weeks.

THE COURT:  Okay.  All right.  Give me a moment.  Give me more than a moment.  But I will be back.  Hold on.

(Pause)

THE COURT:  Okay.  Sorry for taking so long.  Is everyone there?

ALL COUNSEL:  Yes, your Honor.

THE COURT:  Okay.  Defense discovery motions, June 4.; government response, July 6; defendant's reply, July 16.

Defense substantive motions, September 10; government response, October 8; defense reply, October 18.

Requests to charge, voir dire requests, motions *in limine*, including any *Daubert* motions, October 29; responses, November 12; replies, November 19.

Conference, December 7, 3 p.m.

Final pretrial conference, January 10, 2022.

Final pretrial conference, December 16, 2021, at 3 p.m.

I should also schedule just another conference in October.  No.  In fact, I'll schedule one earlier, in August,

L5B1HAYC

just to see where you all are.  Give me a moment.

MR. BENJAMIN:  Your Honor, may I be heard briefly --
this is Jim Benjamin -- on the trial date?

THE COURT:  Yes, sure.

MR. BENJAMIN:  So I'm scheduled to start a six-week
trial in the Northern District of Illinois on October 18th --
and I've discussed this with the other defense counsel -- and
in view of that commitment, would request that the Court set
the trial date here in this case sometime in the latter part of
March or thereafter.  I'm afraid that a January trial date
would be very difficult for Mr. Hayes's team.

THE COURT:  Well, you should be free by January.  But
let me listen to the other parties with respect to a trial date
in the third week in March or so, which puts it over for about
two months.

MR. RAYMOND:  Your Honor, this is Sam Raymond for the
government.  My only concern is scheduling around Passover,
which I see for 2022, it will be the middle of April.  But I
think as long as we can schedule around the Passover holidays,
the government has no objection.

THE COURT:  Oh, of course I would schedule around all
holidays that might make it inconvenient for the jurors.

MR. RAYMOND:  Thank you, your Honor.

MR. SMITH:  Your Honor, Patrick Smith here.  We've
conferred with Mr. Benjamin on his availability and trial dates

L5B1HAYC

and we join in his request with respect to that latter part of March date -- latter part of March, beginning of April.

MR. YATTER:  Your Honor, this is Doug Yatter from Latham for Mr. Reed.  Same here; we've conferred, and that proposal is fine with us as well.

THE COURT:  Okay.  Let me look at the calendar.

(Pause)

THE COURT:  Okay.  I've moved some dates.

So defense discovery motions, June 4; government response, July 6; defense replies, July 16.

Conference, August 11, 3 p.m.

Defense substantive motions, September 10; government response, October 8; defendants' reply, October 18.

Requests to charge, voir dire, December 3.  And *Daubert* motions.  Motions *in limine*, *Daubert*, etc., December 3; response, December 13; reply, December 20.

Conference, January 20, 3 p.m.

Final pretrial conference, March 16, 3 p.m.

Trial, March 28, 9:00.

MR. BENJAMIN:  Thank you very much, your Honor.  I appreciate the Court's accommodation.  I believe that Mr. Yatter and Mr. Smith each had particular issues that they were wishing to address briefly.

THE COURT:  Okay.

MR. YATTER:  Thanks.  Your Honor, this is Doug Yatter

L5B1HAYC

from Latham, counsel for Mr. Reed.  Just a couple of quick notes to follow up on Mr. Benjamin's presentation on the timeline.

We just want to note that the schedule that Mr. Benjamin laid out we think is consistent with and contemplates -- allows room for completion of the government's production.  We appreciate the update Mr. Raymond gave this afternoon on the outstanding pieces that are coming.  It's not entirely clear to us if those outstanding pieces are all that remain outstanding or if there are more, particularly if there are other things from third parties that may still be forthcoming, but we're reviewing stuff diligently and hoping the government's productions will -- what's in their possession now will be completed on that timeline Mr. Raymond laid out as being within the next couple of weeks.

I would note as well that in reviewing the discovery materials, part of what the defense is looking for, of course, are areas where additional information might be useful and need to be available for the trial, so the defendants are evaluating whether we may have requests to make of the company for additional data or documents to be shared with all parties in the case to be available for trial, and we also expect to resolve that on a timeline consistent with what is laid out here that your Honor has set.  We just wanted to note that all of that is ongoing as we tee up the motions for the two that we

L5B1HAYC

currently know about -- namely, the *Brady* motion and potentially those hard drives.

One additional detail for Mr. Reed.  We do contemplate coming to your Honor with a motion to modify bail conditions to allow some travel in the near term.  We're discussing that with the government to see where we can agree and where we don't, and as soon as that is crystallized, we'll bring it to your Honor's attention.

THE COURT:  The parties have been able to agree upon bail conditions in the past.  I can't believe that the parties couldn't agree on modifications to the travel restrictions.

MR. YATTER:  That's our hope as well, your Honor, and we're trying to reach agreement on some reasonable parameters, given the passage of time and comparing it to the other defendants and their arrangements, so we hope to be back to your Honor on that shortly.

THE COURT:  Okay.  What else?

MR. SMITH:  Your Honor, Patrick Smith here.

With respect to co-defendant Dwyer, who's not yet in the United States and in the case, I'd asked at the last conference for a status report, and I had hoped to hear one today, about the government's efforts to extradite him from Bermuda.  But now that we've set the schedule and as time passes, it would be disruptive for Mr. Dwyer to appear and -- I guess what I'm saying is, now that we have the schedule, we

want to stick to it.  So a couple of suggestions.  We could sever him out of the case right now or set a tight timeline that if he's not in the case by a date certain -- let's say, four weeks out -- then a severance should follow that.  So I guess I'd ask for an update from the government on their efforts to procure Mr. Dwyer's presence, and then we ought to I think follow through on what your Honor had observed, that if co-defendant Dwyer is not here, he's not going to hold up the case.

THE COURT:  Of course Mr. Dwyer could appear and think that the schedule is a reasonable schedule and one that he chooses to live with, so that a motion for severance would appear to be premature.

While I think about it, by the way, before I ask the government for its comments, I will exclude prospectively the time from today until the date set for trial, March 28, 2022. The continuance is designed to assure assistance of counsel. It's required because of the volume of discovery and the complexity of the case.  The Court finds that the ends of justice served by ordering the continuance outweigh the best interests of the defendants and the public in a speedy trial. This order of exclusion is made pursuant to 18 U.S.C. Section 3161(h)(7)(A).

Okay.  Mr. Raymond.

MR. RAYMOND:  Thank you, your Honor.

L5B1HAYC

So I think your Honor is exactly right.  We are in discussions with Mr. Dwyer's counsel but we have no comment and cannot update regarding any timing for Mr. Dwyer arriving in the United States, and we believe that a severance motion now or in four weeks is premature because, as your Honor said, Mr. Dwyer, whenever he is here, could determine that this is an amenable schedule for him, and if he doesn't, then at that point that would be an appropriate time for a severance motion. But at this point or four weeks from now, your Honor, the government respectfully submits that that's premature, given the posture of the case.

THE COURT:  Okay.

MR. SMITH:  Your Honor, Patrick Smith again.  I can't understand how there can be no update.  We've been in contact with Mr. Dwyer's counsel.  There are no proceedings pending or initiated in Bermuda.  This was an October 1st indictment.  I don't understand why the government can't fill us in on why there's such a lag here.  I guess I'll leave it at that.  But, you know, something tells me we'll be revisiting this issue if and when Mr. Dwyer makes it to these shores.

THE COURT:  That may well be, but I would have thought that there are too many contingencies out there with respect to Mr. Dwyer to be able to make any decisions or set any timeline at this point.  If in fact you're right that he returns to the United States or comes to the United States at a time when it

L5B1HAYC

would be difficult to get on the moving train, as they say, that's one set of possibilities. The other set of possibilities is that he arrives and, particularly with a March trial date, thinks that that's reasonable for him. But I can't make those determinations at this point. I certainly wouldn't make them in the absence of a severance motion, so it doesn't appear that there is anything to be done on that front. You've raised the issue. We'll see what happens.

Okay. I'll put this full schedule into an order. If it's necessary at some point for me to add or subtract a conference, the parties can certainly just send me a letter requesting that.

Okay. Anything else?

MR. RAYMOND: Nothing further from the government, your Honor. Thank you very much.

MR. BENJAMIN: Nothing from Mr. Hayes's counsel. Thank you, your Honor.

MR. YATTER: Nothing else for Mr. Reed, your Honor. Thank you.

MR. SMITH: And nothing for Mr. Delo. Thank you, your Honor.

THE COURT: Okay. Thank you, all. Continue to be well. Stay safe. Bye now I look forward to seeing you at the next conference. Bye now.

ALL COUNSEL: Thank you, your Honor.

o0o