UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

                                               :

UNITED STATES OF AMERICA

                                               :

        - v. -

                                               :     20 Cr. 500 (JGK)

ARTHUR HAYES,
BEN DELO, and                                      :
SAMUEL REED

                                             :

              Defendants.

                                             :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## GOVERNMENT'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

DAMIAN WILLIAMS
United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Samuel Raymond
Jessica Greenwood
Thane Rehn
Assistant United States Attorneys

     - Of Counsel -

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................... 1

RELEVANT LEGAL BACKGROUND ....................................................................... 1

ARGUMENT ................................................................................................................. 4

   I. The Defendants' Motion is Untimely ..................................................................... 5

     A. Applicable Law ............................................................................................... 5

     B. Discussion ........................................................................................................ 6

   II. The Defendants' Fair Notice Arguments Fail on the Merits................................. 7

     1. Applicable Law ................................................................................................ 7

     B. Discussion ........................................................................................................ 9

     1. The Plain Language of the CEA Makes Clear that BitMEX was an FCM.................... 9

     2. Defendants had Ample Notice that Cryptocurrency Derivatives Were Subject to
Criminal Prohibitions........................................................................................ 19

   CONCLUSION........................................................................................................... 22

# Table of Authorities

## Cases

*California Bankers Ass'n v. Shultz*, 416 U.S. 21 (1974) ................................................. 1

*CFTC v. 1Pool Ltd.*, No. 1:18-CV-2243-TNM, 2019 WL 1605201 (D.D.C. Mar. 4, 2019)5, 15, 17

*CFTC v. HDR Global Trading Ltd., et al.*, 20-cv-8132 (S.D.N.Y. 2020) ............................. 18, 24

*CFTC v. Hunter Wise Commodities, LLC*, 749 F.3d 967 (11th Cir. 2014) ................................... 16

*CFTC v. McDonnell*, 287 F. Supp. 3d 213 (E.D.N.Y. 2018) ............................................. 4, 23, 24

*CFTC v. Monex Credit Co.*, 931 F.3d 966 (9th Cir. 2019) ............................................. 19

*CFTC v. My Big Coin Pay, Inc.*, 334 F. Supp. 3d 492, 498 (D. Mass. 2018) ............................... 4

*Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142 (2012) ................................................. 20

*Indiviglio v. United States*, 612 F.2d 624, 631 (2d Cir. 1979) ......................................... 7

*Kergil v. United States*, No. 12 CR. 152 (CM), 2019 WL 3940621 (S.D.N.Y. Aug. 1, 2019) .... 10

*Maynard v. Cartwright*, 486 U.S. 356 (1988) ................................................................. 11

*Ponnapula v. Spitzer*, 297 F.3d 172 (2d Cir. 2002) ......................................... 10, 22, 25

*S.E.C. v. Alpine Sec. Corp.*, 982 F.3d 68 (2d Cir. 2020) ................................................. 16

*S.E.C. v. Rosenthal*, 650 F.3d 156 (2d Cir. 2011) ......................................................... 16

*SEC v. Fife*, 2021 WL 5998525 (N.D. Ill. Dec. 20, 2021) ................................................. 14

*United States v. Block*, No. 16-CR-595 (JPO), 2017 WL 1608905 (S.D.N.Y. Apr. 28, 2017) ... 13, 16, 24, 25

*United States v. Budovsky*, No. 13CR368 DLC, 2015 WL 5602853 (S.D.N.Y. Sept. 23, 2015) ... 3

*United States v. Coscia*, 866 F.3d 782 (7th Cir. 2017) ................................................. 17

*United States v. Faiella*, 39 F. Supp. 3d 544 (S.D.N.Y. 2014) ......................................... 3

*United States v. Halloran*, 821 F.3d 321, 337 (2d Cir. 2016) ......................................... 10

*United States v. Howard*, 998 F.2d 42, 52 (2d Cir. 1993) ............................................. 6

*United States v. Lanier*, 520 U.S. 259 (1997) ......................................................... 10, 14, 23

*United States v. Murgio*, 209 F. Supp. 3d 698 (S.D.N.Y. 2016) ......................................... 3

1

*United States v. Nadi*, 996 F.2d 548 (2d Cir. 1993) ............................................................ 11, 24

*United States v. Pirro*, 212 F.3d 86 (2d Cir. 2000)................................................................ 14

*United States v. Riccio*, 43 F. Supp. 3d 301 (S.D.N.Y. 2014) ........................................... 12, 16

*United States v. Roberts*, 363 F.3d 118 (2d Cir. 2004).......................................................... 11

*United States v. Rosen*, 716 F.3d 691 (2d Cir. 2013)............................................................. 10

*United States v. Schulte*, 436 F. Supp. 3d 747, 750 n.6 (S.D.N.Y. 2020)................................. 7

*United States v. Smith*, 985 F. Supp. 2d 547 (S.D.N.Y. 2014) ............................................ 9, 14

*United States v. Spence*, 21 Cr. 116 (LAK) ............................................................................. 4

*United States v. Ulbricht*, 31 F. Supp. 3d 540 (S.D.N.Y. 2014)............................................ 25

*United States v. Walden*, 625 F.3d 961, 966 (6th Cir. 2010) ................................................... 6

*United States v. Wedd*, 993 F.3d 104, 120 (2d Cir. 2021) ................................................... 9, 15

*United States v. Yousef*, 327 F.3d 56, 125 (2d Cir. 2003)........................................................ 6

*United States v. Zaslavskiy*, No. 17 CR 647 (RJD), 2018 WL 4346339 (E.D.N.Y. Sept. 11, 2018) ........................................................................................................................... 16, 25

*Upton v. S.E.C.*, 75 F.3d 92 (2d Cir. 1996).......................................................................... 17

*Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.*, 455 U.S. 489 (1982)11, 12, 13

**Statutes**

31 U.S.C. § 5312....................................................................................................................... 1

31 U.S.C. § 5318....................................................................................................................... 2

31 U.S.C. § 5322....................................................................................................................... 2

31 U.S.C. §§ 5318...................................................................................................................... 1

49 Stat. 1491 ............................................................................................................................ 2

7 U.S.C. § 1a....................................................................................................................... 2, 10

Pub. L. 107-56, 115 Stat. 272 ................................................................................................... 1

Pub. L. 111-203, 124 Stat. 1376 ............................................................................................... 2

Pub. L. 93-463, 88 Stat. 1389 ........................................................................................... 2

**Other Authorities**

Dawn D. Stump, Digital Assets: Clarifying CFTC Regulatory Authority & the Fallacy of the Question, "Is it a Commodity or a Security?" ........................................................ 21

*In re BFXNA Inc.*, CFTC Docket 16-19, 2016 WL 3137612 (June 2, 2016) .............. 4, 12, 14, 15

*In re Coinflip, Inc.*, CFTC No. 15-29, 2015 WL 5535736 (Sept. 17, 2015) ........................... 3, 20

*In re TeraExchange LLC*, CFTC No. 15-33, 2015 WL 5658082 (Sept. 24, 2015) ....................... 3

**Rules**

Fed. R. Crim. P. 12 ........................................................................................................ 5

**Regulations**

17 C.F.R. § 140.99 ........................................................................................................ 10

17 C.F.R. § 3.4 ............................................................................................................. 15

31 C.F.R. § 1026.210 and 1026.220 ............................................................................... 2

## PRELIMINARY STATEMENT

The defendants filed a motion to dismiss the Indictment (the "Motion to Dismiss" or "MTD") more than three months after this Court's deadline for filing such motions, without prior notice to the Government or the Court, and have not provided "good cause" for their dilatory filing.  Their motion to dismiss for lack of fair notice is also meritless, because the defendants, who had detailed knowledge of U.S. law and discussed relevant CFTC actions contemporaneously, willfully violated decades-old provisions of the Bank Secrecy Act and Commodity Exchange Act during the period charged in the Indictment by offering the products BitMEX sold to U.S. customers without any anti-money laundering program.  The Court should thus deny the motion to dismiss.

## RELEVANT LEGAL BACKGROUND

Congress enacted the Bank Secrecy Act in 1970.  *See, e.g.*, *California Bankers Ass'n v. Shultz*, 416 U.S. 21 (1974) (describing background). Since 2001, the BSA has required that "each financial institution shall establish anti-money laundering" programs, in addition to the statute's requirements that financial institutions have "reasonable procedures for verifying the identity" of accountholders, and "report any suspicious transactions" in accordance with regulations promulgated by the Secretary of the Treasury.  31 U.S.C. §§ 5318(h)(1), (l)(2), and (g)(1); *see* Pub. L. 107-56, 115 Stat. 272, 322.  Also in 2001, Congress provided that "any futures commission merchant . . . registered, or required to register, under the Commodity Exchange Act" is a "financial institution" subject to the BSA.  31 U.S.C. § 5312(c); *see* Pub. L. 107-56, 115 Stat. 272, 315 (2001 amendment).  The CEA has had a remarkably consistent definition of the term "futures commission merchant" for more than 50 years; since at least 2010, the CEA has defined an FCM as an institution "that is engaged in soliciting or in accepting orders for the purchase or sale of a commodity for future delivery . . . a swap" or other retail

1

commodity transactions "and [which] in or in connection with" those activities, "accepts any money, securities, or property (or extends credit in lieu thereof) to margin, guarantee, or secure any trades or contracts that result or may result therefrom."  7 U.S.C. § 1a(28); Pub. L. 111-203, 124 Stat. 1376, 1662 (2010 statutory definition); *see also* 49 Stat. 1491, 1491–1492 (broadly similar definition from 1936).  Since 1974, Congress has defined the term commodity as referring both to specific agricultural products and, with certain irrelevant exceptions, "all other goods and articles . . . and all services, rights, and interests . . . in which contracts for future delivery are presently or in the future dealt in."  7 U.S.C. § 1a(9); Pub. L. 93-463, 88 Stat. 1389, 1395 (1974 amendment to CEA).

In the BSA, Congress also delegated regulatory power to the Secretary of the Treasury, and through him or her, to an "appropriate supervising agency."  31 U.S.C. § 5318(a)(1).  For futures commission merchants, the supervising agency is the Commodity Futures Trading Commission ("CFTC"), and the relevant BSA regulations applicable to FCMs are codified by the Department of the Treasury and CFTC at 31 C.F.R. § 1026.210 and 1026.220.  The BSA contains a provision that individuals who willfully violate the law are subject to criminal penalties.  31 U.S.C. § 5322; Pub. L. 97-258, 96 Stat. 877 (1982 statute including criminal penalties for BSA).

Cryptocurrencies like Bitcoin are of a more recent vintage.  But when people and institutions have used cryptocurrencies in manners that violate established law, they have faced enforcement actions and criminal prosecution, even in the absence of new specific laws or rules directed towards cryptocurrency.  For example, courts have repeatedly upheld indictments alleging that cryptocurrency constitutes "funds" for purposes of criminal prosecution under 18 U.S.C. § 1960, rejecting arguments that such applications are so novel as to create a lack of

"sufficient notice." *United States v. Budovsky*, No. 13CR368 DLC, 2015 WL 5602853, at *10 (S.D.N.Y. Sept. 23, 2015); *United States v. Faiella*, 39 F. Supp. 3d 544, 547 (S.D.N.Y. 2014) (rejecting argument that "applying Section 1960 to a Bitcoin exchange would run afoul of the rule of lenity, constituting such a novel and unanticipated construction of the statute as to operate like an ex post facto law in violation of the Due Process Clause"); *United States v. Murgio*, 209 F. Supp. 3d 698, 707–10 (S.D.N.Y. 2016).

Similarly, because cryptocurrencies are "goods and articles . . . in which contracts for future delivery are presently or in the future dealt in," they can be regulated as a commodity under the plain language of the CEA, and individuals and entities which trade cryptocurrency can be subject to enforcement action. *CFTC v. McDonnell*, 287 F. Supp. 3d 213, 228 (E.D.N.Y. 2018) (holding that "Virtual currencies can be regulated by CFTC as a commodity" and granting CFTC injunctive relief against allegedly fraudulent virtual currency operator), adhered to on denial of reconsideration, 321 F. Supp. 3d 366 (E.D.N.Y. 2018); *In re Coinflip, Inc.*, CFTC No. 15-29, 2015 WL 5535736, at *2 (Sept. 17, 2015) (CFTC administrative order) (requiring operator of online facility that "from in or about March 2014 to at least August 2014" and offered "to connect buyers and sellers of Bitcoin options contracts" without being registered with the CFTC to cease and desist because "Bitcoin and other virtual currencies are encompassed in the definition and properly defined as commodities" under the plain language of the CEA); *In re TeraExchange LLC*, CFTC No. 15-33, 2015 WL 5658082 (Sept. 24, 2015) (CFTC administrative order) ("Bitcoin is a commodity under Section la of the Act, 7 U.S.C. § la (2012), and is therefore subject as a commodity to applicable provisions of the Act and Regulations."); *CFTC v. My Big Coin Pay, Inc.*, 334 F. Supp. 3d 492, 498 (D. Mass. 2018) (holding sufficient

allegations that a virtual currency "is a 'commodity' under the [CEA]").[1]  Among such enforcement actions, the CFTC has specifically brought enforcement actions against entities acting as a futures commission merchant in cryptocurrencies, *e.g., In re BFXNA Inc.*, CFTC Docket 16-19, 2016 WL 3137612 (June 2, 2016) (administrative order), and sued an FCM that accepted cryptocurrency to margin various retail commodity transactions for maintaining an inadequate anti-money laundering program.  *CFTC v. 1Pool Ltd.*, No. 1:18-CV-2243-TNM, 2019 WL 1605201, at *1 (D.D.C. Mar. 4, 2019).  The defendants have not cited, and the Government is unaware of, any legal authority suggesting that cryptocurrency is not a commodity under the CEA, or that entities that solicit retail transactions in cryptocurrency derivatives on margin are not FCMs.

## ARGUMENT

Defendants have provided insufficient cause for their late filing of a motion to dismiss the Indictment.  On the merits, relevant provisions of the BSA and CEA provided fair notice to the defendants that operating a futures commission merchant in the United States that served U.S. customers derivative products denominated in cryptocurrency without an anti-money laundering program was unlawful.  Their motion to dismiss should thus be denied.

---

[1]  Additionally, Magistrate Judge Freeman recently held, for purposes of accepting a guilty plea, that virtual currencies are commodities subject to commodity fraud laws. *See United States v. Spence*, 21 Cr. 116 (LAK), Plea Tr. (factual basis for guilty plea to commodities fraud that defendant was "trad[ing] virtual currencies on the internet for individual investors" while providing false information to his investors).  In accord with its motion *in limine* on this issue, and pending the Court's ruling on that motion, the Government may seek to introduce evidence at trial that this individual was in fact using BitMEX as a means to carry out his fraudulent activity, while he was located in the United States, and that one or more of the defendants knew or should have known about this criminal activity.

## I.   The Defendants' Motion is Untimely

### A.   Applicable Law

Federal Rule of Criminal Procedure 12(b)(3)(B)(v) requires a defendant to make a motion to dismiss an indictment for "failure to state an offense" "by pretrial motion."  Where "a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely" and waived absent a showing of "good cause."  Fed. R. Crim. P. 12(c)(3); *see also United States v. Yousef*, 327 F.3d 56, 125 (2d Cir. 2003) (finding waiver where the defendant had "ample opportunity to raise and develop" a suppression motion in the district court, but "has not provided, much less established, any reasonable excuse for his failure to [do] so").  "[A] district court may grant relief from the waiver upon a showing of: (1) cause for the defendant's non-compliance, and (2) actual prejudice arising from the waiver."  *United States v. Howard*, 998 F.2d 42, 52 (2d Cir. 1993) (internal citation omitted); *see also United States v. Walden*, 625 F.3d 961, 966 (6th Cir. 2010) ("Rule 12 only allows courts to grant relief from the waiver for 'good cause'—not simply in the 'interests of justice.'")

"A strategic decision by counsel not to pursue a claim, inadvertence of one's attorney, and an attorney's failure to timely consult with his client are all insufficient to establish 'cause'" under Rule 12.  *Yousef*, 327 F.3d at 125.  The analysis does not differ based on which of these reasons purports to explain why a motion was not timely filed: "[I]t is irrelevant whether counsel's failure . . . is characterized either as a matter of sheer inadvertence or as one of professional judgment that a motion on such grounds would have been unsuccessful, because neither is sufficient to constitute 'cause' within the meaning of Rule 12."  *Indiviglio v. United States*, 612 F.2d 624, 631 (2d Cir. 1979); *see also United States v. Schulte*, 436 F. Supp. 3d 747, 750 n.6 (S.D.N.Y. 2020) ("Counsel neglecting to file a motion, despite ample opportunity to do so, with no reasonable excuse—does not establish good cause.").

**B. Discussion**

This Court set a deadline for pretrial motions of September 10, 2021. *See* Order, Dkt. No. 71. The defendants filed this motion to dismiss more than three months later, on December 21, 2021. They have provided wholly insufficient bases for such a dilatory filing, which on its own warrants denial of their motion. In fact, as defense counsel acknowledged at the November 23, 2021 conference, the defense made a strategic decision not to file a pre-trial motion to dismiss by the Court-ordered deadline. November 23, 2021 Tr. (defense counsel explained that they had "wrestled with the concept of filing a motion to dismiss and our theory that the indictment has significant potentially fair warning problems," and "whether or not there was some factual development that would be necessary for this to be a proper motion to dismiss"; but ultimately "opted instead for [its] bill of particular requests."). The defense should be held to that decision.

In their motion to dismiss, defendants cite to various sources to raise the supposed "uncertain status of cryptocurrency." MTD at 21–27. All of these sources were available well before September 10, 2021. In their reply letter filed December 22, 2021, Dkt. No. 238 (the "Reply Letter"), the defendants do not even attempt to argue that there is good cause to excuse their delay with respect to the argument that the status of cryptocurrency products are uncertain. The defendants' Reply Letter does not mention changed circumstances or any other explanation for why they did not raise this argument in accordance with the Court's deadline, particularly given the fact that this argument has percolated in the courts and in public commentary for years.

With respect to the argument that defendants lacked notice whether BitMEX could be classified as an FCM, the Reply Letter asserts that "circumstances have changed since the September 10, 2021 deadline." While defendants state that "recent developments" – plural – "cast further doubt on the ability of the government to proceed," Reply Letter at 2, defendants cite just

6

one such development, the recent concurrence by CFTC Commissioner Dawn Stump.  But even the language defendants use – "cast *further* doubt" – makes clear that this argument was available to them by September 10, 2021.  Their brief makes this even clearer, citing dozens of sources pre-dating the deadline.  Defendants describe no reason why they could not have made their supposed "good faith determination" regarding the fair notice argument before September 10, and essentially concede that they had sufficient basis to raise this argument by that date.  Reply Ltr. at 2 (defendants engaged in "further evaluation of relevant legal authorities and review of discovery in this case").

Here, the defendants will have ample opportunity to raise their fair notice arguments through a Rule 29 motion, in the context of a more fully developed factual record at trial. There is no reason to excuse their strategic choice not to raise these challenges in accordance with the Court's schedule for doing so prior to trial.

## II.  The Defendants' Fair Notice Arguments Fail on the Merits

### 1.  Applicable Law

"A defendant faces a high standard in seeking to dismiss an indictment, because an indictment need provide the defendant only a plain, concise, and definite written statement of the essential facts constituting the offense charged." *United States v. Smith*, 985 F. Supp. 2d 547, 561 (S.D.N.Y. 2014), *aff'd sub nom. United States v. Halloran*, 664 F. App'x 23 (2d Cir. 2016). "An indictment is sufficient as long as it (1) 'contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend,' and (2) 'enables [the defendant] to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" *United States v. Wedd*, 993 F.3d 104, 120 (2d Cir. 2021) (quoting *United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998) (internal quotation marks omitted)). "'[A]n indictment

need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime.'"  *Id.*

Additionally, the Second Circuit has long held that "summary judgment does not exist in federal criminal procedure."  *Id.* at 121 (citing *United States v. Sampson*, 898 F.3d 270, 282 (2d Cir. 2018)).  Thus, the "district court must give the Government an opportunity to 'make a detailed presentation of the entirety of the evidence before ... dismiss[ing] an indictment on sufficiency grounds,' and the district court lacks the authority 'to require the government, before trial, to make such a presentation' as this 'could effectively force a summary judgment-like motion on the government.'"  *Id.*

A criminal statute must "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."  *United States v. Halloran*, 821 F.3d 321, 337 (2d Cir. 2016) (internal quotation marks omitted).  While defendants must be given fair notice that their conduct is unlawful, due process does not require that there be "a factual situation that is 'fundamentally similar'" to the crime charged.  *United States v. Lanier*, 520 U.S. 259, 269 (1997); *Ponnapula v. Spitzer*, 297 F.3d 172, 183 (2d Cir. 2002) ("Due process is not, however, violated simply because the issue is a matter of first impression"); *see also Kergil v. United States*, No. 12 CR. 152 (CM), 2019 WL 3940621, at *9 (S.D.N.Y. Aug. 1, 2019). Besides the statutory language itself, "clarity at the requisite level may be supplied by judicial gloss on an otherwise uncertain statute."  *Lanier*, 520 U.S. at 269.

"Although a law has to provide minimal guidelines in the form of explicit standards regarding what conduct is unlawful, it need not achieve meticulous specificity, which would come at the cost of flexibility and reasonable breadth."  *United States v. Rosen*, 716 F.3d 691,

699 (2d Cir. 2013) (internal quotation marks omitted).  Accordingly, "one whose conduct is clearly proscribed by the statute cannot successfully challenge it for vagueness." *United States v. Nadi*, 996 F.2d 548, 550 (2d Cir. 1993); *see also Maynard v. Cartwright*, 486 U.S. 356, 361 (1988) ("Objections to vagueness under the Due Process Clause rest on the lack of notice, and hence may be overcome in any specific case where reasonable persons would know that their conduct is at risk."); *United States v. Roberts*, 363 F.3d 118, 123 (2d Cir. 2004) (skepticism about a lack of fair notice is "further buttressed by the government's proffer that the defendants actually believed what they were doing was illegal").

"[E]conomic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action. Indeed, the regulated enterprise may have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process." *Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982).  Relatedly, the Supreme Court "has recognized that a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed." *Id.*

## B. Discussion

### 1. The Plain Language of the CEA Makes Clear that BitMEX was an FCM

As an initial matter, the defendants have it backwards in arguing that the BSA and CEA are especially prone to vagueness challenges because they are "technical and complex." MTD at 7.  The BSA and CEA are "economic regulation," and are thus "subject to a less strict vagueness test." *Village of Hoffman Estates*, 455 U.S. at 498; *see also United States v. Riccio*, 43 F. Supp. 3d 301, 307 (S.D.N.Y. 2014) (denying motion to dismiss on vagueness grounds because defendant was "a highly trained pharmacist, operates in a heavily regulated industry and hence

should reasonably be expected to inform herself of the relevant laws.").  In fact, as alleged in the

Indictment, and as the Government has explained in the factual description of its motions *in*

*limine*, Gov't MIL at 5–10, the evidence at trial will establish that the defendants were

sophisticated and experienced financial professionals, who were aware they were operating in a

highly regulated industry and "consult[ed] relevant [law] in advance of action."  *Village of*

*Hoffman Estates*, 455 U.S. at 498; *see, e.g.*, Indictment ¶ 28 (alleging that defendants caused

BitMEX to claim that it had withdrawn from the U.S. market following the CFTC "issu[ing]

public enforcement orders clarifying that cryptocurrencies are commodities for purposes of the

CEA").  As defendants have acknowledged, defendant Hayes worked with BitMEX's counsel at

Sullivan & Cromwell to arrange a personal meeting with CFTC staff in 2018.  This illustrates

that he was fully equipped "to clarify the meaning of the regulation by [his] own inquiry."

*Village of Hoffman Estates*, 455 U.S. at 498.  Indeed, the CFTC has specific regulations that

allow market participants to request an interpretive letter from the CFTC; the defendants did not

do so.  17 C.F.R. § 140.99.  Additionally, in order to convict the defendants, the jury must find

that they acted willfully in violating the BSA.  As the Supreme Court has recognized, such a

scienter requirement "mitigate[s]" any vagueness in the law, especially as it relates to the issue of

fair notice.  *Village of Hoffman Estates*, 455 U.S. at 498.

　　　Regardless of the vagueness test applied, the defendants' motion fails under the plain

language of the statute.  Under the CEA, an FCM is an entity "that is engaged in soliciting or in

accepting orders for the purchase or sale of a commodity for future delivery . . . a swap" or other

retail commodity transactions "and [which] in or in connection with" those activities, "accepts

any money, securities, or property (or extends credit in lieu thereof) to margin, guarantee, or

secure any trades or contracts that result or may result therefrom."  7 U.S.C. § 1a(28).  The

Indictment alleges that BitMEX meets this straightforward statutory definition: BitMEX "solicits and accepts orders for trades in, among other things, futures contracts and other derivative products tied to the value of cryptocurrencies including Bitcoin.  BitMEX accepts Bitcoin to margin and guarantee its derivative products," Indictment ¶ 1; and "offers and sells commodity futures and swaps to retail and non-retail customers in the U.S, and in connection with such offers and sales accepted property to margin, guarantee, and secure those trades and contracts." Indictment ¶ 18.

That ends the inquiry: under the "plain language" of the CEA, BitMEX was allegedly an FCM and accordingly subject to the BSA, so there is no fair notice problem.  *United States v. Block*, No. 16-CR-595 (JPO), 2017 WL 1608905, at *3 (S.D.N.Y. Apr. 28, 2017) (denying motion to dismiss on due process grounds because defendant's conduct clearly fell within the statute's plain language); *Smith*, 985 F. Supp. 2d at 588–89 ("'fair notice' prong of the vagueness test" "requires only that the *statutory language* conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices.") (emphasis added); *Lanier*, 520 U.S. at 266 ("due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope"); *SEC v. Fife*, 2021 WL 5998525, at *7 (N.D. Ill. Dec. 20, 2021) (rejecting fair notice argument when agency alleged that defendant's "conduct falls within the scope of the statute").  The defendants repeatedly cite *United States v. Pirro*, 212 F.3d 86, 91 (2d Cir. 2000), but that case is inapposite. In *Pirro*, the Second Circuit found that a tax reporting charge in an indictment was deficient because it used a term that was not in any statute or regulation, which gave rise to a fair notice problem because the defendant could not have known that failure to report in accordance with that term was criminal.  By contrast, the defendants here

11

do not deny that the Indictment alleges that their business was covered by the plain terms of the

BSA; instead, they simply handwave at the Indictment's allegations as being "little more than an

incantation."  MTD at 11.  That statement, while worded dismissively, essentially concedes the

meritless nature of this motion, because the Indictment "need do little more than to track the

language of the statute charged and state the time and place (in approximate terms) of the alleged

crime.'"  *Wedd*, 993 F.3d at 120.

Because the statute is clear, there would be no need for additional regulatory action by

the CFTC to put market participants on notice that acting as an unregulated FCM is unlawful.

But in fact, there was significant regulatory action by the CFTC during the charged time period

that would have further put the defendants on notice that their conduct was unlawful.  *See In re

BFXNA Inc.*, 2016 WL 3137612 (2016 CFTC enforcement action alleging that "online platform

for exchanging and trading cryptocurrencies, mainly bitcoins" was an unregistered FCM); *CFTC

v. 1pool Ltd.*, 2019 WL 1605201, at *2-*3 (CFTC civil complaint brought in 2018 alleging that

company offering "online trading platform" and accepting bitcoin to margin trades was FCM).

The defendants have also admitted that they were aware of a March 2016 Wells notice from

CFTC staff to ICBIT, a company that offered a Bitcoin trading platform similar to BitMEX, in

which the staff alleged that ICBIT was acting as an unregistered FCM.  *CFTC Staff Letter Re:

ICBIT Trading Inc.*, filed at Dkt. No. 176-1.  The Government expects that the proof at trial will

include evidence that the defendants were aware of all of these CFTC actions, among others, and

understood that they meant that BitMEX could not lawfully operate in the United States without

complying with the BSA.

The defendants attempt to brush off these enforcement actions by claiming that they

lacked the "force of law."  But that is not the point.  It is the CEA's definition of "futures

12

commission merchants," which the defendants do not seriously question applies to their business, that has the force of law, and the CFTC's enforcement actions against companies similar to BitMEX is evidence that the defendants were fully on notice of the import of that law for their business.[2]  Enforcement actions and judicial decisions that do not themselves have force of law can provide additional notice about the scope of a statute.  *Block*, 2017 WL 1608905, at *2 (citing to, *inter alia*, an SEC enforcement action as a basis for fair notice); *accord Riccio*, 43 F. Supp. 3d at 307 (prior out-of-district district court decisions, which "do not have precedential authority," MTD at 26, provided "a clarifying 'judicial gloss' . . . to put the defendant on notice that the specific activity charged was criminal in nature.") (citing *Lanier*, 520 U.S. at 266); *United States v. Zaslavskiy*, No. 17 CR 647 (RJD), 2018 WL 4346339, at *9 (E.D.N.Y. Sept. 11, 2018) (in criminal securities fraud case tied to cryptocurrency, denying motion to dismiss on notice grounds based on, *inter alia*, SEC reports and public statements and newspaper article co-written by the SEC Chairman and CFTC Chairman).  As these cases illustrate, a regulatory action can inform market participants that their conduct is potentially subject to liability without having the "force of law."[3]

---

[2]  The defendants' assertion that these agency actions have no "force of law" is also misleading. The CFTC's interpretation of its own regulations in those enforcement actions and consent or administrative orders are, to the extent those regulations are or were ambiguous, subject to *Auer*/*Kisor* deference, and must be deferred to if not "plainly erroneous or inconsistent with the regulation."  *S.E.C. v. Alpine Sec. Corp.*, 982 F.3d 68, 77 n. 34 (2d Cir. 2020).  Similarly, although the CEA is not ambiguous as it applies to this case, even if the statute were ambiguous the CFTC's interpretation through its lawsuits and consent and administrative orders "should still be followed to the extent persuasive."  *S.E.C. v. Rosenthal*, 650 F.3d 156, 160 (2d Cir. 2011); *CFTC v. Hunter Wise Commodities, LLC*, 749 F.3d 967, 977 (11th Cir. 2014) (considering CFTC's interpretation of the CEA pursuant to *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944)).

[3]  Defendants' citation to *Upton v. S.E.C.*, 75 F.3d 92 (2d Cir. 1996), is also misplaced.  In *Upton*, it was "undisputed that [the defendant's business] complied with the literal terms of the Rule at all times," but the SEC alleged that the defendant had "violated the spirit" of the rule. 75 F.3d at 94; *see also United States v. Coscia*, 866 F.3d 782, 792–93 (7th Cir. 2017) (explaining that in *Upton*,

Notably, the defendants' motion does not even argue that BitMEX's business does not fall within the statutory definition of an FCM.  Instead, the defendants resort to distraction, spending several pages explaining that there are different categories of market participants, including designated contract markets (DCMs), derivative contract organizations (DCOs), foreign boards of trade (FBOTs), and swap exchange facilities (SEFs).  That is true but irrelevant.  The issue in this criminal case is whether BitMEX operated unlawfully as an FCM, not whether it also unlawfully operated as one of the other types of contract participants.  To be sure, the defendants certainly could have also operated as a DCM, and thereby violated multiple CFTC registration requirements at once.  Indeed, the CFTC's civil complaint against BitMEX specifically alleges that they did so, alleging both that BitMEX operated as an unregistered FCM, and also that BitMEX operated as an unregistered FBOT, DCM or SEF.  *See CFTC v. HDR*

---

"the defendant had technically complied with the requirements of a rule, but the SEC took the position that his actions nevertheless violated the spirit and purpose of the rule").  Here, by contrast, the Indictment alleges that the defendants have never complied with the express statutory terms of the CEA or BSA, technically or otherwise, and that their violation was willful at least as of September 2015.  When "Congress provide[s] the necessary definition" in a statute," "any agency inaction … is irrelevant." *Coscia*, 866 F.3d at 793.  Additionally, there was actual agency action here that was known to the market as a whole and to these defendants specifically.  Whereas in *Upton* the SEC had issued only "one consent order carrying little, if any, precedential weight," and thus did not "reasonably communicate[]" this policy shift to the public, 75 F.3d at 98, here the CFTC repeatedly sanctioned FCMs dealing with cryptocurrency.  *BFXNA Inc.; 1pool Ltd.*  As the Government has described in its motion *in limine*, defendants *in fact* reviewed each of these orders which were well-communicated to the public.  *See also Federal Judge Adopts CFTC Position That Cryptocurrencies Are Commodities*, *available at* https://www.akingump.com/en/news-insights/federal-judge-adopts-cftc-position-that-cryptocurrencies-are.html (March 2018 article written by defendant Hayes' counsel referencing *BFXNA* order); *CFTC Brings Significant Enforcement Action Against Online Cryptocurrency Exchange*, *available at* https://www.lw.com/thoughtLeadership/CFTC-brings-significant-enforcement-action-against-online-cryptocurrency-exchange (June 2016 article written by defendant Reed's counsel directly analyzing *BFXNA* order); *CFTC Issues New Guidance Relating to Virtual Currency Regulations*, *available at* https://www.sullcrom.com/siteFiles/Publications/SC_Publication_CFTC_Issues_New_Guidance_Relating_to_Virtual_Currency_Regulations.pdf (January 2018 article written by attorneys for BitMEX referencing *BFXNA* order).

*Global Trading Ltd., et al.*, 20-cv-8132 (S.D.N.Y. 2020), Dkt. No. 1 (CFTC Complaint ¶¶ 116–121 (unregistered FCM), 102–109 (unregistered FBOT), 122–128 (unregistered DCM/SEF)). There is no inconsistency between these allegations.[4]

The defendants next argue that because FCMs are commonly referred to as "an intermediary *between customers and an exchange*," MTD at 1, 8–11, and they set up BitMEX to be a "direct-access exchange," MTD at 1, they lacked notice that BitMEX could have been an FCM. But there is nothing in the definition of FCM or in any regulation that suggests that an FCM can evade the CEA merely by operating its own exchange rather than fulfilling customer orders on a separate exchange. The defendants' argument here is a complete non sequitur; it is the equivalent of a person operating an unlicensed distillery and an unlicensed bar at the same location, and then claiming that he does not need a license for a bar because he is operating a distillery (and also that he does not need a license for a distillery because he is operating a bar). And the CFTC has routinely brought enforcement actions against entities for failing to register as an FCM, even when those entities executed transactions themselves rather than on a separate exchange. *See, e.g., CFTC v. Monex Credit Co.*, 931 F.3d 966, 969-70 (9th Cir. 2019) (CFTC lawsuit for failure to register as FCM against entity that provided retail commodity trading "off-exchange," where same entity also "control[led] the platform" on which the trading occurred); *In re BFXNA Inc.*, 2016 WL 3137612 (enforcement action against cryptocurrency trading platform for failure to register as FCM). The defendants are free to assert at trial, to the extent there is admissible evidence to support that assertion, that they personally were uncertain of the regulatory regime applicable to BitMEX and the requirement to comply with the BSA. But the

---

[4] CFTC regulations further clarify this point, providing that "registration in one capacity under the Act shall not include registration in any other capacity." 17 C.F.R. § 3.4.

plain text of the statutory definition of FCM, along with the CFTC's enforcement actions against similar entities, completely undermines their fair notice argument here.

The defendants also cite the fact that certain other cryptocurrency platforms successfully registered with the CFTC under non-FCM registration categories. MTD at 10-12. But this says nothing about whether BitMEX was an FCM. The Government does not deny that there are DCMs, SEFs, and other types of entities, or that the CFTC is the appropriate entity to evaluate particular registration applications. By its terms, a CFTC decision to grant a registration application is tailored to the specific applicant, and granting such an application does not authorize other unregistered market participants to conduct business without applying to the CFTC.[5] Notably, while Hayes had a meeting with the CFTC at one point to discuss a proposal for a new business entity, BitMEX never submitted an application to the CFTC to register in any capacity.[6]

---

[5] The actual terms set forth in the CFTC's various registration orders also show that the CFTC required compliance with the BSA where appropriate, regardless of the category of registration it permitted. For instance, before the CFTC granted LedgerX authorization to register as a DCO for futures and non-digital currency products, the Commission required that LedgerX "comply with the Bank Secrecy Act . . . as if LedgerX were a covered 'financial institution.'" https://www.cftc.gov/media/4556/ledgerxllcamendeddcoorder9-2-2020/download, ¶ 8. Similarly, in granting KalshiEX authorization to register as a DCM, the CFTC specifically conditioned its authorization on procedures submitted by KalshiEX requiring its members to verify their identity and to have an account with LedgerX, which, as noted, was required to comply with the BSA. *See* KalshiEx LLC Rulebook, 23-24, available at https://www.cftc.gov/sites/default/files/filings/orgrules/21/06/rule061521kexdcm002.pdf.

[6] Defendants' citation to *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142 (2012) is yet another red herring. MTD at 16. There, the Supreme Court warned that an "agency should not change an interpretation in an adjudicative proceeding where doing so would impose 'new liability on individuals for past actions which were taken in good-faith reliance on agency pronouncements.'" *Id.* at 157. The defendants suggest that this Court should only review the CFTC's registration grants to other platforms as "agency pronouncements," but that it should completely ignore the enforcement actions the CFTC took against similar platforms for acting as FCMs because those lack "force of law." That is exactly backward: by their very definition each registration grant applies only to the registered platform itself, whereas enforcement actions reflect

The defendants resort to grasping at straws by referencing a recent concurring statement by CFTC Commissioner Dawn Stump calling for more CFTC guidance in the cryptocurrency space.  MTD at 16–18 (citing *Concurring Statement by Commissioner Dawn D. Stump Regarding Enforcement Action Against Payward Ventures, Inc. (d/b/a Kraken)*).  By definition, Commissioner Stump's statement cannot support defendants' position here, because she stated that she "agree[d] that Kraken's activities meet the definition of an FCM set out in the CEA."  In other words, her statement is further evidence that the statutory definition by its terms covers cryptocurrency trading platforms as long as they perform the functions set forth in the definition of an FCM.  Critically, Commissioner Stump ***concurred*** in the CFTC's decision to impose a civil penalty on a company that operated a cryptocurrency trading platform for failing to register as an FCM.  If she had seen a due process or fair notice problem with penalizing such a company, she presumably would not have concurred in the action to do so.

Moreover, the defendants fail to note that Commissioner Stump did not provide a separate public statement when the CFTC sued BitMEX, or when it settled with BitMEX just a few weeks before her statement in Kraken, both decisions in which she participated.[7]  Thus, Commissioner Stump's statement does not reflect a fair notice problem with the law against operating an unregistered cryptocurrency FCM; rather, it simply reflects one commissioner's

---

the CFTC's interpretation of the generally applicable law.  In addition, the Court must review all "agency pronouncements," not just those that putatively help the defendants.

[7] Indeed, Commissioner Stump has specifically cited, with approval, the CFTC's action against BitMEX.  Dawn D. Stump, Digital Assets: Clarifying CFTC Regulatory Authority & the Fallacy of the Question, "Is it a Commodity or a Security?", *available at* https://www.cftc.gov/media/6306/DigitalAssetsAuthorityInfographic_CommStump082321 ("For example, a trading platform that offers derivatives on digital assets to U.S. persons without registering, or in violation of CFTC trading rules, is subject to the CFTC's enforcement authority.  That was the case in the recent CFTC enforcement action against BitMEX, and the CFTC has brought similar such actions dating back to 2015.").

belief that the CFTC should provide more guidance to market participants on what they need to do to "register as an FCM" so that they can "conduct business with U.S. customers."  Moreover, the defendants cannot argue that Commissioner Stump's concurrence created any uncertainty for them, because the statement was made a full year after the time period charged in the Indictment.

Finally, defendants rehash their prior argument, made in their bill of particulars motion, that the Government or CFTC are required in some way to provide information "about measures that could be implemented to avoid the application of U.S. law and prevent U.S. persons from circumventing trading restrictions."  MTD at 19.  As the Government explained in its briefing on the bill of particulars motion, there is no legal requirement for the Government to advise market participants on how to avoid regulations, and the defendants again cite no authority for that outlandish proposition.  The Court rejected the defendants' argument in ruling on their motion for a bill of particulars.  *See* November 23, 2021 Tr. at 17 ("The defendants claim that the government must provide particulars regarding the steps BitMEX needed to take to be exempted from U.S. laws, but the indictment is sufficiently detailed as to the government's theory on why BitMEX was an FCM and failed to comply with the BSA.  Any further explanations would be evidentiary details and are not required.").  The Court should do so again now.  The gravamen of the Indictment is not that BitMEX did not "check its users' IP addresses a certain way"; it is that defendants "well knew" and "intended" that the IP address check was insufficient to identify all U.S. customers; that they then went further and caused BitMEX to "undermine the effectiveness" of the IP address check; that they took no steps to restrict access via VPN which they knew meant U.S. customers could continue to access BitMEX; that they knew specific U.S. customers were actually accessing BitMEX; and that they tracked company revenue attributable to U.S. customers.  Indictment ¶¶ 26-28.  Because the defendants knew they could not trade with U.S.

customers, and they knew the IP address check was not restricting U.S. customers, they were fully on notice that their actions violated the law.  *Ponnapula*, 297 F.3d at 183.[8]

### 2.  Defendants had Ample Notice that Cryptocurrency Derivatives Were Subject to Criminal Prohibitions

Defendants' argument that the status of cryptocurrency as a commodity was "uncertain," to the degree that they lacked fair notice, is also misguided.  The argument, if credited, would undermine numerous prior decisions by federal courts and the CFTC applying the CEA to cryptocurrency derivatives, since many of those decisions involved sanctioning an entity for prior conduct.  Indeed, their argument is an attack on every interpretation of plain Congressional language in a context not literally described in the statute.  MTD at 22 ("The pertinent statutory language was old and did not address or even contemplate the invention of digital assets.").  Unfortunately for the defendants, whether statutory language is "old" or contemplates a specific application of the language is not the legal standard.  *Lanier*, 520 U.S. at 269 (due process does not require that there be "a factual situation that is 'fundamentally similar'" to the crime charged).  To take an obvious example, the federal wire fraud statute long predates the Internet,

---

[8] The defendants cite the CFTC staff letter to ICBIT, but they appear to selectively edit the CFTC's letter to ICBIT in a manner designed to mislead.  Defendants summarize the letter as describing certain measures to remain outside CFTC jurisdiction, including "(1) blocking U.S. customers from accessing the website (based on their IP addresses) and (2) displaying a notice on the website notifying users that the service cannot be used by U.S. citizens."  MTD at 19–20.  The defendants omit that the letter also says that "ICBIT must also close any accounts known to be held by U.S. citizens, and return any monies held in those accounts."  The defendants, of course, did not even attempt to comply with this last requirement, which perhaps explains their misleading edit and their claim that they were outside of U.S. regulation because they "adopted such blocking measures."  MTD at 20 n.5.  Moreover, the evidence at trial will also establish that defendants did not block access to the website based on IP address, but only blocked certain IP addresses in the United States from opening new accounts. And, of course, in citing the ICBIT letter the defendants concede a critical fact showing that they had fair notice, because the letter expressed the view that a company like ICBIT (and, by extension, BitMEX) was an FCM.

and yet countless defendants have been properly charged and convicted under that statute for committing fraud over the Internet.

Cryptocurrencies are, and since their inception have been, "goods and articles . . . in which contracts for future delivery are presently or in the future dealt in." 7 U.S.C. § 1a(9). They have thus always been commodities under the plain language of the CEA. *E.g.*, *McDonnell*, 287 F. Supp. 3d at 228; *Coinflip*, 2015 WL 5535736, at *2.[9] That plain language once again ends the due process inquiry. *See, e.g.*, *Block*, 2017 WL 1608905, at *3. Indeed, as alleged in the Indictment and as the Government will establish at trial, the defendants themselves learned of *Coinflip* and *TeraExchange* contemporaneously and took steps in reaction to those decisions. *See also Nadi*, 996 F.2d at 550 ("one whose conduct is clearly proscribed by the statute cannot successfully challenge it for vagueness.").[10]

The sources defendants cite are unconvincing. Whether cryptocurrencies can also be characterized as "funds," subject to regulation by FinCEN, or "securities," subject to regulation by the SEC, MTD at 24–26, is not relevant to whether defendants had fair notice that cryptocurrency products are commodities subject to regulation by the CFTC, since agencies can have concurrent regulatory authority. *McDonnell*, 287 F. Supp. 3d at 222 ("The SEC, IRS, DOJ,

---

[9]  Defendants thus misunderstand the Government's allegations: cryptocurrency was always a commodity and defendants' conduct was always unlawful under the Commodity Exchange Act, but the Indictment alleges that these defendants only acted willfully as to the Bank Secrecy Act, as required for a criminal violation, once they knew that the CFTC had so determined in September 2015. This is illustrated by the fact that the CFTC alleged that BitMEX violated the CEA from "November 2014 and continuing to the present," *CFTC v. HDR Global Trading Ltd.*, 20 Civ. 8132 (MKV), Dkt. No. 1 ¶ 2; whereas the Indictment alleges that BitMEX's BSA violations spanned September 2015 through the date of the Indictment.

[10]  Indeed, soon after *Coinflip* and *TeraExchange*, Hayes wrote to a U.S. customer interested in trading on BitMEX that "Given the CFTC regs we don't expect to unban the US any time soon" – in other words, he perfectly understood that cryptocurrencies were commodities under the CEA, and that BitMEX could not trade with U.S. customers without complying with U.S. law. Hayes forwarded his response to Delo, Reed, and Greg Dwyer soon thereafter.

Treasury Department, and state agencies have increased their regulatory action in the field of virtual currencies without displacing CFTC's concurrent authority."); Dawn D. Stump, Digital Assets: Clarifying CFTC Regulatory Authority & the Fallacy of the Question, "Is it a Commodity or a Security?" (describing financial products which Congress determined "may be regulated by the CFTC or the SEC, or jointly by both").  As noted, multiple cases and CFTC actions have recognized this, and defendants' argument that an agency's "position in the context of a civil enforcement action is not sufficient notice," MTD at 24, has been flatly rejected by Judge Oetken in *Block* and the Eastern District in *Zaslavskiy*.

Defendants' last argument encapsulates the theme of their brief.  They complain that the Government's case "is the first" to be brought applying the BSA's criminal prohibitions to a cryptocurrency derivative entity.  MTD at 26–27.  But some case has to be first.  *Ponnapula*, 297 F.3d at 183 ("Due process is not, however, violated simply because the issue is a matter of first impression"); *United States v. Ulbricht*, 31 F. Supp. 3d 540, 566 (S.D.N.Y. 2014) ("The fact that a particular defendant is the first to be prosecuted for novel conduct under a pre-existing statutory scheme does not ipso facto mean that the statute is ambiguous or vague or that he has been deprived of constitutionally appropriate notice."); *United States v. Kinzler*, 55 F.3d 70, 74 (2d Cir. 1995) ("claimed novelty of this prosecution does not help [defendant's] cause, for it is immaterial that there is no litigated fact pattern precisely in point.") (citations omitted). Defendants are simply upset that they are first. That, however, does not constitute a due process violation.

## CONCLUSION

For the reasons set forth above, the Court should deny the defendants' motion to dismiss.


Dated: New York, New York
       January 14, 2022

                              Respectfully submitted,

                              DAMIAN WILLIAMS
                              United States Attorney

                    By:    /s/ Thane Rehn
                           Samuel Raymond
                           Jessica Greenwood
                           Thane Rehn
                           Assistant United States Attorneys
                           (212) 637-6519/1090/2354