M1KAAHAYC                    Conference

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

                v.                      20 CR 500 (JGK)

ARTHUR HAYES, BENJAMIN DELO
SAMUEL REED and GREGORY DWYER,

                Defendants.

------------------------------x

                                        New York, N.Y.
                                        January 20, 2022
                                        3:40 p.m.

Before:

                    HON. JOHN G. KOELTL,

                                        District Judge


                        APPEARANCES

DAMIEN WILLIAMS
     United States Attorney for the
     Southern District of New York
SAMUEL RAYMOND
     Assistant United States Attorney

JAMES J. BENJAMIN, JR.
     Attorney for Defendant Hayes

PATRICK J. SMITH
ANDREW J. ROGERS
     Attorneys for Defendant Delo

DOUGLAS YATTER
     Attorney for Defendant Reed

JENNA DABBS
     Attorney for Defendant Dwyer

M1KAAHAYC                    Conference

```
 1              (Case called)
 2              MR. RAYMOND:  Good afternoon, your Honor.
 3              This is Sam Raymond, joined by college Thane Rehn, for
 4     the government.
 5              MR. BENJAMIN:  Good afternoon, your Honor.
 6              Jim Benjamin and Katey Goldstein, from Aken Gump,
 7     appearing on behalf of Authur Hayes.  We are joined by our
 8     colleague, Kate Shapiro.  And Mr. Hayes is on the line, as
 9     well.
10              MR. SMITH:  Good afternoon, your Honor.
11              Patrick Smith, with my colleague, Andrew Rogers, for
12     the defendant Ben Delo, who is present with me and on the line.
13              Good afternoon.
14              THE COURT:  Good afternoon.
15              MR. YATTER:  Good afternoon, your Honor.
16              Douglas Yatter, from Latham & Watkins, together with
17     my partner, Ben Naftalis, for Sam Reed, who is also on the
18     line.
19              MS. DABBS:  Good afternoon, your Honor.
20              Jenna Dabbs, from Kaplan Hecker & Fink, for Mr. Dwyer.
21     I am joined on the line by my colleagues, Sean Heckle and Mike
22     Ferrara.  Mr. Dwyer is on the line, as well.
23              THE COURT:  All right.  Good afternoon, everyone.
24              I am sorry for the delay.  I was on another criminal
25     case which ran longer than originally expected.
```

1          Today I have correspondence from the parties, from the

2    defendants dated January 18, and the government's response

3    today, January 20.  I also have the motions in limine which

4    have been briefed so far.

5          If there are any other issues that the parties have,

6    I'm perfectly prepared to consider them but let me deal first

7    with those issues.

8          So, the dueling correspondence from January 18 and

9    January 20, there are two issues.  The first is, the tank team

10   has reviewed some documents.  The only privilege that's

11   possibly being asserted is a BitMEX privilege.  Defendants

12   objected that the government has not yet turned over the

13   materials because they say that BitMEX has agreed to waive its

14   privilege if the documents are simply produced to BitMEX.

15         The government says okay.  At this point they will

16   produce the documents to BitMEX today, January 20.  And if

17   BitMEX is not asserting the privilege, the documents will

18   remain with BitMEX.  The redacted copies have already been

19   produced.

20         The government says give BitMEX a date.  I don't know

21   why the parties can't discuss that among themselves.  There are

22   some indications in the government letter that they're not

23   (technical interruption) here any more, that when BitMEX

24   discloses the documents to the individual defendants that

25   that's not a waiver of BitMEX's privilege.  But the government

1   hasn't reached that decision yet.

2          It also -- well, somewhat inconsistent with the

3   government's position about how BitMEX's statements are

4   statements of individual defendants, but no reason to reach

5   that either.  It doesn't appear that there's anything for me to

6   do on this.  The government is going to produce, the redacted

7   documents have already been produced to the defendants.  And

8   the documents are going to be produced to BitMEX today, by

9   today to see if BitMEX is intending to assert any privilege.

10  in any event, BitMEX will have the documents and BitMEX can do

11  what it will with the documents.  Again, it doesn't seem as

12  though there's anything for me to decide here.

13          The second issue is the parties have appeared to reach

14  the end of the line with respect to the documents that the

15  government has been able to get from the CFTC to produce to the

16  defendants.  I've already indicated in the past that this

17  cooperation between the government and the defendants and the

18  CFTC has resulted in a great deal of information being provided

19  by the CFTC that might not otherwise have been provided, and

20  that there's a very limited today amount of material that the

21  CFTC had not produced.  And so, the continuing negotiations

22  between the parties was very productive.

23          There was and is outstanding a request by the

24  defendants for additional, that the government produced

25  additional documents from the CFTC, that the government be

1    required to produce those documents because the CFTC was in

2    fact conducting a joint investigation with the government and

3    it's never been necessary for me to rule on whether it was a

4    joint investigation or a parallel investigation.  Although, I

5    intimated some views on that subject because the continuing

6    negotiations were very productive toward producing documents.

7    And the defendants have never asked me to rule specifically on

8    whether the investigation with the CFTC was a joint

9    investigation or simply a parallel investigation.  Although, I

10   intimated some views on that subject.  So, that issue is still

11   out there.  Whenever the defendants want me to rule on that,

12   I'm perfectly prepared to rule on that issue, today or at any

13   other time.

14           But at this point, the defendants have proposed to

15   issue a subpoena and they asked me to sign it for the CFTC.

16   So, the government objects.  Although, they say they're not

17   sure they're the right party to object, they don't know since

18   it's subpoena directed to the CFTC, whether they have standing

19   or not.  They're looking at it but they say that the subpoena

20   is plainly improper, overbroad.

21           My general view is I sign subpoenas because if a party

22   objects to the subpoena then I'll rule on the objections to the

23   subpoena and I may quash the subpoena, but at least it should

24   be subject to an adversary process.

25           Having said that, even without getting the defense

1    letter, I looked at the subpoena and I had intended to urge the

2    defendants if they were serious about the subpoena, to look

3    carefully at the Nixon case and make sure that they were

4    comfortable that the subpoena was in fact the subpoena for

5    evidence to be used at trial and not simply a discovery

6    subpoena or more akin to a request for documents in a civil

7    case, because if the subpoena was overbroad in response to an

8    objection, it would be quashed.  And so, this particular

9    subpoena has definitions which go on for pages, followed by

10   requests which include such things as all CFTC investigative

11   documents or communications relating to HDR or defendants that

12   the CFT has not produced to the department justice in

13   connection with United States against Hayes.  That, in and of

14   itself, appears to be a dragnet rather than requesting specific

15   documents where there's a good faith belief that they are

16   evidence for trial.

17          So, that was my reaction to the subpoena.  If the

18   defendants want to proceed with that subpoena, so be it.  I'll

19   look at it again.  I would probably sign it in order to give

20   the parties, whether it be the CFTC represented by their own

21   counsel or the government, if appropriate, the opportunity to

22   move to quash the subpoena.

23          But it would, I would have thought, behoove the

24   defendants to try harder because it would take time to move to

25   quash a subpoena, get a response, get a reply and the Court to

M1KAAHAYC                    Conference

1   rule and you'll all be weeks down the road with respect that to

2   that.

3              So, those were my observations on the recent

4   correspondence, the January 18 letter from the defendants and

5   the government's response.

6              MR. NAFTALIS:  Thank you, judge.

7              What we would propose is, judge, let us rereview the

8   rider this evening and we'll come back to the Court with an

9   (inaudible) as written or any modification consistent with your

10  comments just now.

11             THE COURT:  Okay.

12             MR. NAFTALIS:  Is that okay?

13             THE COURT:  Yes, sure.

14             MR. NAFTALIS:  And as to the tainting question, just

15  so we're clear, assuming and BitMEX has already consented to

16  the provision of the privileged documents to the defendants, as

17  soon as they reaffirm that, is it your intention that the

18  government should produce that to us?

19             THE COURT:  I don't see the correspondence as any

20  objection to that.

21             MR. RAYMOND:  Your Honor, I think just the issue that

22  sort of spoke in the wheel, we would want to convey to BitMEX

23  counsel before we actually are -- by "we" I mean the tank team,

24  were to produce that that we would want first, that we would

25  want to look at the materials and actually assert a privilege

M1KAAHAYC                    Conference

1    or not, and then to discuss whether or not production to the

2    defendants constitutes a waiver vis-a-vis the investigative

3    team and vis-a-vs any other party.

4           So, I think that would be the interplead that we would

5    want to discuss with the next corporate counsel before making

6    that production and get their prospective on that --

7           THE COURT:  That's fine.  I want to make sure that

8    people go through this process with eyes open.  If there's a

9    dispute, you can bring it to me.  I'm not opposed to the

10   government discussing this with BitMEX counsel or, certainly,

11   BitMEX counsel looking at the specific documents and

12   determining whether it is asserting a privilege or not

13   asserting a privilege.  If it's not asserting a privilege then

14   the documents go to the government trial team because there's

15   no privilege, at least as I understand it.

16          If BitMEX says, yes, we are asserting the privilege,

17   it doesn't go to the government.  But then it's up to BitMEX if

18   it chooses to give those documents to the individual

19   defendants.  And the government is now raising a caution that

20   BitMEX may in fact be waiving its privilege by giving them to

21   the individual defendants but that's up to BitMEX.

22          MR. RAYMOND:  Your Honor, the company has already

23   written to the government on November 19 saying They have no

24   objection to producing anything to us.  So, I would hope that

25   this is not something that requires another comeback to the

M1KAAHAYC                    Conference

1   Court given that it's been two months since we have been

2   waiting for this.

3          THE COURT:  I hope so too.  But I don't see an issue

4   with assuring that BitMEX is doing this with eyes open with

5   respect to the specific documents at issue.

6          And second, we are about two months away from trial

7   and there is no provision that I'm aware of on these documents

8   that would have required that they be produced, required under

9   the rules that they be produced before now.  So, they're still

10  being produced two months before trial.

11         There's been more early production in this case than

12  usual which is good.  I encourage it.  Helps to prepare for

13  trial, helps to narrow the issues but making sure that BitMEX

14  has eyes open.  It's certainly a good thing, isn't it?

15         Okay.  Any other thoughts on these two issues?  No.

16  Okay.  Which leads then to the defendants' motions in limine.

17         I have gone over the motions and I am prepared to

18  rule.  If the parties want to indicate anything else after I've

19  ruled or explain to me why I should be ruling differently, I'm

20  perfectly prepared to listen but I don't have any questions

21  based on the papers at this point.

22         The defendants have filed six motions in limine.

23  Decisions on motions in limine are necessarily preliminary and

24  can be changed before or during trial.  That is particularly

25  true in this case where the motions have been filed

1    considerably before trial and where some of the motions are not

2    directed at specific information and where the positions of the

3    parties may change, and where the defendants are not required

4    to present any evidence.  Nevertheless, the Court will deal

5    with the defendants' motions as currently briefed, without

6    prejudice to reconsideration.

7            First, the Defendants move to preclude the government

8    from offering any statements from a purported debate between

9    defendant Hayes and Neil Roubini in July 2019, termed the

10   "Tangle in Taipei."  In response, the government narrowed its

11   offer to three segments.  The defendants contend that the

12   statements are irrelevant, and that any relevance is

13   substantially outweighed by the danger of unfair prejudice

14   under Federal Rule of Evidence 403.  The Court agrees. The

15   segments are excluded at this point,

16           In segment 2, Hayes spoke in a plainly jocular fashion

17   about the small cost of bribing an official in the Seychelles

18   where BitMEX was incorporated. The government concedes that

19   this is no evidence that any bribe was paid, and invites the

20   Court to give a limiting instruction to that effect, but argues

21   that the quote is relevant to show the defendant's desire to

22   avoid regulation.  It is difficult to credit that argument.

23   The clip is plainly inflammatory because it precisely suggests

24   bribery in the most crass way, and the danger of unfair

25   prejudice is not outweighed by the relevance of showing that

1  the defendants thought that the Seychelles was a less regulated

2  jurisdiction than the United States.  It is hard to believe

3  that the prejudice from joking about bribing in the Seychelles

4  could be cured by an instruction that tells the jury, Never

5  mind, there's no evidence of bribery in the Seychelles.

6  Plainly, the relevance of the segment is substantially

7  outweighed by the danger of unfair prejudice which would not be

8  cured by a limiting instruction.

9        Segment 1 is a statement by Mr. Roubini to the effect

10 that US investors are subject to US regulation and can avoid

11 detection by using a VPN.  The statement is offered, not for

12 its truth, but for its notice to Mr. Hayes.  But the context of

13 the entire debate makes any individual statement suspect

14 because of the circus-like atmosphere.  In any event, the

15 statement has little relevance.  It came in July 2019, almost

16 four years after the beginning of the alleged conspiracy.  And

17 presumably, there will be more specific evidence as to the

18 ability of US citizens to use VPNs to avoid detection.  Indeed,

19 it's one of the items that specifically mentioned in the

20 indictment.  The relevance of this piece of the debate is

21 outweighed by the danger of unfair prejudice, particularly,

22 because it will be necessary to place any comments from the

23 debate into the context of the debate, which is loaded with

24 opprobrious comments by Roubini against Hayes.

25        Finally, segment 3 suggests that Hayes objects to the

1   burden of anti-money laundering regulations.  But the relevance

2   of this comment is outweighed by the danger of unfair prejudice

3   for the reasons already explained.  The defendants assert in

4   their responses to the pending motions that there will be no

5   dispute at trial that BitMEX did not attempt to adopt

6   anti-money laundering procedures.  The relevance of this

7   comment therefore, is substantially outweighed by the danger of

8   unfair prejudice, namely, the need to place the comment in the

9   perspective of the debate which is laden with highly

10  prejudicial attacks on Hayes.

11          Second, the defendants move to preclude evidence of

12  other legal actions.  In response to this motion, the

13  government states that it will not offer evidence of other

14  private lawsuits against BitMEX.  That portion of the motion is

15  therefore moot.  Those other actions plainly should not be

16  mentioned because the government undertakes that they will not

17  be.

18          The defendants also seek to preclude -- if of course

19  the evidence at trial changes, these other lawsuits should not

20  be mentioned without bringing it to the attention of the Court

21  outside the presence of the jury.

22          The defendants also seek to preclude evidence of the

23  CFTC civil lawsuit against BitMEX and the defendants that was

24  filed on the same day as the indictment in this case and that

25  was settled by BitMEX without BitMEX's admitting or denying the

1    allegations in the complaint, and is still pending against the

2    defendants in this case.

3           The defendants also seek to preclude a lawsuit filed

4    by FinCen against BitMEX and the defendants that was also

5    resolved in the same way as the CFTC lawsuit.

6           The government says that it will not seek to offer

7    those lawsuits unless the defendants argue that the law was

8    unclear, in which case it will offer the lawsuits and the

9    settlements.  But this argument fails on several levels.  The

10   lawsuits were only brought at the same time as the indictment

11   in this case.  Therefore, the lawsuits could not have provided

12   notice to the defendants about what the law was at the time

13   that the defendants allegedly violated it.  Moreover,

14   allegations in a complaint are simply that, allegations.

15          See In re Blech Sec. Litig., No. 94-cv-7696, 2003 WL

16   1610775, at *11 (S.D.N.Y. Mar. 26, 2003).

17          The fact that the CFTC took a position in litigation,

18   or that FinCen did, without a court decision affirming that

19   interpretation was correct, does not establish the meaning of

20   the law.  Similarly, settlements without admitting or denying

21   any of the allegations do not establish the law.  Therefore, at

22   this point, the government has failed to proffer any relevance

23   to the CFTC and FinCen lawsuits or settlements.  And certainly,

24   any relevance is substantially outweighed by the danger of

25   unfair prejudice.  The lawsuits are laden with prejudicial

1    allegations that the defendants in this case have never

2    accepted, and the relevance of the lawsuits and settlements and

3    the relevance of the settlement is substantially outweighed by

4    the danger of unfair prejudice.

5           Finally, the Government refers in passing to the fact

6    that defendants may have made statements in the course of those

7    lawsuits which can be admitted as evidence of prior statements

8    of a party opponent, but the Government has not pointed

9    specifically to what those statements are and therefore, the

10   Court could not rule on their admissibility at this time.

11          Therefore, the motion to exclude the CFTC lawsuit and

12   settlement and the FinCen lawsuit and settlement and other

13   civil lawsuits against BitMEX is granted.

14          By the way, whoever is not muted should place their

15   phone on "mute".

16          The defendants move to dismiss any evidence of alleged

17   suspicious trading activity on BitMEX, and specifically, the

18   findings by FinCen about the amount of suspicious trading

19   activity on BitMEX, and the failure to file Suspicious Activity

20   Reports ("SARs").  In response, the government appears to take

21   the position that it will not seek to admit evidence of any

22   suspicious trading activity unless it was known to one of the

23   defendants.  But the papers are unclear as to what specific

24   incidents the government seeks to admit, what the specific

25   evidence is and what the alleged knowledge of one of the

1  defendants was.  The papers became even more clouded by

2  assertions that the suspicious activity may have been known to

3  one of the defendants' agents and that the government many seek

4  to admit evidence of what one of the defendants should have

5  known.  But the Court cannot decide this motion without knowing

6  the specific evidence that is at issue.  It appears plain at

7  this point that the Government does not seek to admit general

8  evidence about the extent of suspicious activity on BitMEX.

9          Therefore, the motion is denied without prejudice.

10         The defendants seek to require the government to

11  submit expert disclosure reports for witnesses that the

12  government contends are simply lay witnesses, namely, CFTC

13  witnesses, a FinCen witness, and an FBI witness.  The

14  government contends that all of these witnesses are lay

15  witnesses and that therefore, the government does not have to

16  make the detailed disclosure of an expert witness required by

17  Federal Rule of Criminal Procedure 16(a)(1)(G).  The government

18  says that each of these witnesses will simply testify as lay

19  witnesses pursuant to Federal Rule of Evidence 701 about

20  opinions rationally based on their own perceptions and "not

21  based on scientific, technical, or other specialized knowledge

22  within the scope of Rule 702."

23         Rule 702, in turn, allows a witness to testify as an

24  expert if qualified by knowledge, skill, experience, training

25  or education if "the expert's scientific, technical, or other

M1KAAHAYC                    Conference

specialized knowledge will help the trier of fact to understand

the evidence or to determine a fact in issue."

The government's description of this testimony is

somewhat at odds with another statement in its papers that the

CFTC witnesses will not "testify about their prior fact-based

expertise." Govt. Resp. at 12.

In any event, it is plain that each of these witnesses

is not testifying simply to what the witnesses have perceived,

but rather to issues on which they have specialized knowledge.

The CFTC witnesses and the FinCen witness are testifying to the

regulatory background of the statute at issue in this case.

They are not testifying about facts that they perceived.  And

to allow them to testify to the regulatory framework without a

detailed expert report would invite opinions that otherwise

can, and should be challenged before trial.

The government asserts that its witnesses will not be

usurping the role of the trial judge in instructing the jury as

to the applicable law, Govt. Resp. at 13, but that "the

witnesses are testifying only to their understanding of the law

from the course of their employment." Id.  But that is

precisely what experts are not supposed to do.  The jury is to

be instructed as to the law by the Court and not by alleged

experts from the government or the defense.  Experts can

provide expert testimony as to the regulatory framework to help

the jury understand unfamiliar terms and concepts, but its use

M1KAAHAYC                    Conference

1    must be carefully circumscribed to assure that the expert does

2    not usurp either the role of the trial judge in instructing the

3    jury as to the applicable law or the role of the jury in

4    applying the law to the facts before it.

5         See United States v. Bilzerian, 926 F, 2d 1285, 1294

6    (2d Cir. 1991).

7         Indeed, as a general rule, an expert's testimony on

8    issues of law is inadmissible. Id. But the Court of Appeals

9    allowed testimony about regulatory background from Professor

10   Coffee in a securities case. Id.  If an expert witness cannot

11   testify about what the law is, it is not apparent why an

12   alleged lay witness should be permitted to testify about what

13   the law is under the cover of a statement that it is only the

14   witness's lay opinion about what the law is.  What the law is

15   is something for the Court to instruct the jury on and it is

16   for the parties to provide sufficient input to the Court to

17   instruct the jury on what the law is.

18        The government's effort to cloak expert testimony as

19   lay testimony is all the more reason for detailed expert

20   reports under Federal Rule of Criminal Procedure 16(a)(1)(G).

21   When those reports are prepared, specific opinions that are

22   impermissible can then be excluded prior to trial.  This

23   applies to both the defendants and the Government.

24        Similarly, it is plain that FBI Agent Berger is not

25   testifying about matters that he perceived, but rather to an

1   analysis of records that have been provided to him for purposes

2   of this litigation that he has analyzed using his considerable

3   computer science expertise.  That is expert testimony, not lay

4   testimony and he should also provide a detailed expert report

5   pursuant to Rule 16(a)(1)(G).

6          Therefore, the government's CFTC, FinCen, and FBI

7   witnesses should submit proper expert reports pursuant to

8   Federal Rule of Criminal Procedure 16(a)(1)(G).  The parties

9   can then agree upon a proper schedule, and then the defendants

10  can make specific objections to specific opinions.

11         Of course, if an expert were to attempt to offer an

12  opinion at trial that is not contained in the detailed expert

13  report, that opinion could be excluded.  Therefore, there is

14  all the more reason for the parties to provide detailed expert

15  reports that include the specific opinions by the expert.

16         Finally, the defendants move to preclude the

17  government from offering evidence of unrelated offenses,

18  specifically, fraud, manipulation, and customer losses.  The

19  government responds that it does not intend to offer evidence

20  of these other unrelated offenses, but that evidence of some of

21  these items might well be part of the evidence of the crimes at

22  issue.  For example, United States customers may have been

23  victims and complained to BitMEX making it clear that they were

24  in fact US customers.  The Court cannot decide to preclude any

25  of this evidence without reference to specific evidence that is

M1KAAHAYC                    Conference

1    sought to be excluded.  Therefore, the motion is denied without

2    prejudice.

3            That concludes the defendants' motions in limine.  Let

4    me deal with the government's motions in limine nation.

5            The Court agrees basically with the defense

6    observation that the government's motions in limine fail to

7    refer to specific evidence to be included or excluded at trial

8    and thus, are not proper motions in limine.  Moreover, many of

9    them are so general that they could not be decided on the

10   current record.

11           Finally, some of the motions provide the detail for

12   the alleged proffers only in the reply brief without an

13   opportunity for the defendants to respond and thus, also could

14   not be decided on the current record.  To the extent that the

15   Court can offer any observations on the current motions, the

16   Court will, without prejudice to further briefing by the

17   parties on specific evidence.  And as the Court has already

18   pointed out in response to the defendant's motion in limine,

19   the decisions on these motions are without prejudice to

20   reconsideration.

21           First, the government argues that statements by the

22   defendants' agents and co-conspirators are admissible.  But the

23   government largely simply repeats well-accepted concepts from

24   the Federal Rule of Evidence 801(d)(2) that statements by

25   agents are not hearsay, without specific reference to specific

M1KAAHAYC                  Conference

1    statements.

2            The government also points out without contradiction

3    that statements no offered for their truth are not hearsay.

4    But the government generally does not point to any specific

5    statements that show how those specific statements are

6    admissible, why they are not being offered for their truth and

7    why many of those statements may well not be contested at

8    trial.  The government also points out that statements by

9    co-conspirators are admissible, an unacceptable proposition,

10   but the government has largely not identified the

11   co-conspirators.  And generally, statements by co-conspirators

12   would be admitted at trial subject to connection.

13           See Bourjaily v. United States, 483 U.S. 171, 175

14   (1987); see also United States v. Geaney, 417 F.2d 1116, 1120

15   (2d Cir. 1969).

16           The Court could not make the necessary findings before

17   trial.  The government does specifically refer to statements by

18   BitMEX as admissible, but with the exception of the BitMEX

19   wells position does not identify the statements it seeks to

20   admit.  The government provides various reasons for

21   admissibility, but does not point to a case where a

22   corporation's statements are automatically admissible against a

23   shareholder.  The government points out that a defendant could

24   have adopted a statement by BitMEX, but does not develop that

25   argument in the context of any specific statement and the Court

M1KAAHAYC                         Conference

1    could not rule on that issue on the present record.  There is

2    no proffer as to what the specific statements by BitMEX that a

3    defendant specifically adopted were.

4            Therefore, the motion is denied without prejudice to

5    further development in the context of specific statements.  It

6    may well be that this is an issue that should await trial

7    unless there are specific statements that require decision

8    before trial and that the Court could determine admissible or

9    not admissible prior to trial.

10           The government argues that documents produced by

11   BitMEX should be admissible as business records.  It is

12   self-evident that if the records are authentic and properly

13   satisfy the requirement of Federal Rule of Evidence 803(6),

14   they would be admissible as business records and the defendants

15   do not disagree.  Obviously, there may be issues with respect

16   to specific records and that could not be decided at this point

17   on this record.  The government also seeks a ruling that a

18   proper certification under Federal Rule of Evidence 902(11)

19   will be sufficient without the testimony of a custodian.  But

20   no ruling is necessary.  That is what Federal Rule of Evidence

21   803(6)(D) explicitly provides.  Of course, there can always be

22   the need for testimony if there is something questionable about

23   a document such that the circumstances indicate a lack of

24   trustworthiness.  See Fed. R. Evid. 803(6)(E).  But the

25   government does not need a ruling that otherwise simply follows

M1KAAHAYC                    Conference

1    the explicit provision of Fed. R. Evid. 803(6)(D).  The parties

2    also indicate that this motion may be moot because the parties

3    are working on stipulations as to the admissibility of business

4    records.  Plainly, a stipulation with respect to the

5    admissibility of large numbers of business records would be in

6    all parties' interests.

7         The government seeks to admit evidence of BitMEX's

8    failure to file SARs and its facilitation of suspicious

9    transactions and sanctions.  The defendants do not object to

10   evidence that BitMEX did not file SARs.  The defendants also do

11   not appear to object to the introduction of specific evidence

12   of specific transactions that came to the attention of one or

13   more of the defendants.  But there is no specification of the

14   specific evidence that is at issue.

15        The government seeks to introduce evidence about

16   transactions with Iranian customers, but it is unclear from the

17   papers what the specific evidence is, and the Court could not

18   decide the issue on the present papers.  The Court notes that

19   the indictment charges that internal BitMEX reports identified

20   that customers located in Iran were subject to US sanctions

21   traded on the platform from at least in or about November 2017,

22   to at least in or about April 2018.  And that defendants Hayes

23   and Delo personally communicated with BitMEX customers who

24   self-identified as Iranian.  And BitMEX did not implement a

25   formal anti-money laundering policy in response to this Iranian

1    customer activity.  Indictment Paragraph 14.

2          Whether dealing with Iranian customers and so

3    integrally intertwined with evidence of the conspiracy or arose

4    out of the same facts or transactions that form the basis for

5    the charges in violation of the Bank Secrecy Act, as charged in

6    the indictment has not been sufficiently developed so that the

7    Court could decide the issue on the present papers.

8          The government seeks to introduce alleged false

9    statements to a Hong Kong Bank and the San Francisco Exchange.

10   The government argues that this evidence is not Rule 404(b)

11   evidence because it is inextricably intertwined with the

12   charged offense and arose out of the same series of

13   transactions as the charged offenses.

14         See United States v. Towne, 870 F.2d 880, 886 (2d Cir.

15   1989).

16         This is a correct statement of the law but the half

17   page devoted to explaining why this is true, Govt. Br. at 32,

18   fails to explain why this is so in connection with the specific

19   acts relating to the San Francisco Exchange.  In its Reply

20   Brief, the government spends seven pages attempting to explain

21   why this is so, but the defendants never had the opportunity to

22   respond to why the alleged Hong Kong Bank scheme was

23   inextricably intertwined with the charged conspiracy.  And

24   indeed, one of the underpinnings of the argument that the

25   defendants were attempting to separate themselves from any

M1KAAHAYC                    Conference

1    association with Bitcoins, appears to strain credulity in view

2    of the government's arguments about the prominence of the

3    defendants in Bitcoins.

4            Moreover, the government did not appear to respond at

5    all to the argument that there was no showing that the alleged

6    false statements to the San Francisco Exchange were

7    inextricably intertwined with the conspiracy alleged in the

8    indictment.

9            With respect to the government's argument that this

10   evidence is admissible as Rule 404(b) evidence, Rule 404(b)

11   should generally be reserved for the government's rebuttal case

12   when it is clear what issues the defendants have put in issue

13   and when the Court can make an informed Rule 403 balancing

14   analysis.

15           See United States v. Colon, 880 F.2d 650, 661 (2d Cir.

16   1989).

17           At this point, the Court could not decide the

18   admissibility or inadmissibility of this evidence and either

19   party may make a subsequent motion with respect to its

20   admissibility or inadmissibility.

21           The government moves to preclude the expert testimony

22   of the defendants' expert witnesses: Professor Jerry Markham,

23   former CFTC Commissioner, Jill Sommers, and derivatives

24   industry expert Marc Nagel.  The government does not contest

25   the expertise of these proposed witnesses but argues that the

M1KAAHAYC                    Conference

1   subject of their testimony, namely, the regulatory framework

2   for the industry at issue in this case, should be the subject

3   of lay testimony and not expert testimony.  For the reasons

4   already explained in response the Government's motion in

5   limine, this is a subject of expert testimony, and the

6   defendants' experts properly submitted expert reports and the

7   government's purported lay witnesses should also produce expert

8   reports.  Therefore, it is not a proper objection that the

9   defendants have submitted expert reports.  The reports were

10  properly submitted.

11          There appears to be some confusion between the parties

12  as to the proper scope of expert testimony.  The government

13  objects to the substance of the defense expert reports to the

14  extent that the experts testify as to what the law is or that

15  the law was unsettled or confusing.  However, the government's

16  proposed witnesses on this subject would purport to give their

17  lay opinion as to what the law is.

18          As the Court already explained, it is for the Court

19  and not for the witnesses to tell the jury what the law is.  It

20  is apparent that witnesses on both sides are attempting to push

21  the boundaries of expert witness testimony.  But the only way

22  to police the boundary is to make specific objections to

23  specific parts of the expert reports on both sides and for the

24  Court to rule on those objections.  The Court cannot preclude

25  the testimony of the defendants' experts without specific

1   objections directed to specific conclusions in the expert

2   reports.  To the extent that the expert reports are

3   insufficient to provide a detailed account of the opinions,

4   they should be more detailed.  The experts, of course, will be

5   precluded from giving any opinions not contained in their

6   expert reports.  Therefore, there is an incentive to making

7   those reports as comprehensive as possible.

8           At this point, the Court cannot preclude the

9   defendants' experts from testifying, but the government may

10   move to preclude any specific opinions rendered in the expert

11   reports.  If the reports are inadequate, fuller reports should

12   be provided.  The experts will be precluded from offering any

13   opinions not included in the expert reports.

14           Thus far, the government has not provided a basis to

15   preclude the expert testimony of a representative from AquaQ.

16   Therefore, the motion to preclude that testimony is denied

17   without prejudice to raising any specific objections to the

18   expert report.

19           Finally, the government seeks to preclude the

20   defendants form making any arguments inconsistent with the

21   Court's instructions on the law.  Naturally, the defendants

22   profess to having no such intention.  The motion is therefore

23   denied as moot.

24           The government moves to preclude any cross examination

25   of Witness One as to alteration of evidence.  The motion is

1    denied.  Based on the evidence about evidence of attempting to

2    destroy evidence, there is a sufficient basis to examine the

3    witness as to alteration of evidence.

4          The government also seeks to preclude examination of a

5    certain aspect of alleged motive.  This motion is also denied.

6    There is ample basis to cross-examine with respect to motive

7    and there is a sufficient connection to motive to allow this

8    examination.  The defendants appropriately undertake not to

9    examine the witness as to any religious topics.

10         So ordered.

11         All right.  I've denied the motions that were made.  I

12   know that there's a current motion to dismiss the indictment

13   which is currently being briefed.  I remind the parties that I

14   don't in a criminal case impose any page limits because I never

15   want to limit the parties to what they can tell me.  But I

16   always believe that briefer is better and more persuasive.  So,

17   the parties can conduct their briefing accordingly.  I don't

18   limit you.  I don't place time limits.  I don't place page

19   limits.  But everything that you write has to go through me.

20   So, a sufficient caution in view of the multiplying papers.

21   The parties are welcome to comment on everything that I've said

22   and to raise any other issues with me.

23         Always good to get together with you.

24         MR. BENJAMIN:  Your Honor, we have no comments or

25   question.  We appreciate the Court's thorough attention to all

1    the motions.

2           MR. REHN:  Your Honor, we don't have questions about

3    the Court's rulings.  There is one thing I just wanted to raise

4    with the Court briefly was the government had filed a letter

5    regarding the requests to charge and the defendants have filed

6    a significantly longer responsive letter on January 14th.  We

7    would ask for a leave to file a reply to that letter in

8    accordance with the motion to dismiss.

9           THE COURT:  Sure.  Of course.  I usually don't reach

10   the request to charge until later but, perhaps, in this case

11   I'll review the request to charge and the parties' objections

12   in connection with the motion to dismiss.  I think that's

13   probably a good idea.  Okay?  So, sure, you can file a reply.

14          MR. ROGERS:  We also thank you for your attention to

15   these motions and your statements today and have no further

16   questions.

17          THE COURT:  Okay.

18          MR. SMITH:  Nothing further on the motions.  I do have

19   maybe something more than a housekeeping matter on the status

20   of discovery.  There is a substantial amount of data that was

21   produced by BitMEX to the government on, I believe it was

22   December 2nd, involves data relating to a customer service

23   application known as "Fresh Desk" that BitMEX used to

24   correspond with its customers.  It's a pretty substantial

25   amount of data.  It's been sitting with the government for at

M1KAAHAYC                    Conference

1    least six weeks.  We've inquired repeatedly as to the status of

2    producing it to us and our vendor.  As of right before this

3    call our vendor had not received production of the data.  We

4    followed the usual procedure, sent them a drive to receive the

5    data.  There's a lot work to do on this data, your Honor.  And

6    as you noted, we're two months out from trial.  I just don't

7    quite understand what the delay has been.  I don't want to

8    speculate on any slow walking of this.  We just need the data.

9    And I'd like to hear from the government as to the reason for

10   the delay and when we could expect it.

11                  THE COURT:  Okay.

12                  MR. REHN:  I don't think the defendant has the

13   timeline exactly right.  I think we received that data on

14   September 13.  But in any event, when we receive data from the

15   company we have to upload it to our system and process it and

16   Bates stamp it so that it can be searched and sort of

17   adequately produced in a way that is useful to the parties.  We

18   have been engaged in this process.  As the defense notes, it's

19   somewhat voluminous data and takes some time to do that.  We

20   have previously attempted to produce to the defendants data

21   we've obtained from third parties directly.  They've asked us

22   not to do that.  They've asked us to process it and date stamp

23   it.  That just takes time because the computer can only run so

24   fast.  So, we're engaged in that process.  We expect that this

25   data will be released within a week.

```
1              THE COURT:  Okay.

2              MR. SMITH:  It's just kind of hard to credit that

3    response.  It doesn't take weeks and weeks to process the data.

4    They told to send the drive down ten days ago.  We sent it.

5    that's a signal that it's ready.  Everyday that goes by without

6    access to this data, which I would note is chock full of

7    exculpatory material to raise our ability to prepare for trial.

8              MR. REHN:  Your Honor, a couple things.  Number one,

9    we are processing it as quickly as we can.  I can assure you

10   it's with our vendor being stamped and we will produce it as

11   soon as it's ready to go.

12             I would just note, defense counsel's just indicated

13   the defense is very well aware of the contents of these

14   materials.  These are materials that were produced by the

15   company BitMEX, which of course the defendant controlled and

16   operated throughout the period in question.  That company has

17   been very slowly producing information to us pursuant to a

18   subpoena I think for some two years, including information as

19   recently as just last month, the data we're talking about now.

20   (technical interruption) late production, we are attempting to

21   turn it around and produce it.

22             THE COURT:  Mr. Smith, you don't have to answer if you

23   don't want.  So, BitMEX produces the information to the

24   government.  Don't the defendants have access to BitMEX for

25   getting the same material from BitMEX that BitMEX produces to
```

M1KAAHAYC                    Conference

1  the government?  There obviously is an advantage to all the

2  parties to have a central discovery process with Bates numbers

3  that the parties can use on both sides and know where it comes

4  from, et cetera, as opposed to BitMEX producing it solely to

5  the defendants, which if the defendants then attempted to use,

6  might result in some questions by the government whether it be

7  authenticity or something else.  So, there's an advantage to

8  all parties to have a central means of getting documents and

9  then providing them to both parties.  I would have thought that

10 to the extent that the defendants say this information is chock

11 full of exculpatory information, the defendants have it.  They

12 know what's in the information and they could and may have

13 already gotten it from BitMEX.

14         Again, I'm saying you don't have to respond to that if

15 you don't to.

16         MR. SMITH:  We certainly all wish to be singing off

17 the same sheets ever music, your Honor so there is no confusion

18 about what data is, and we have had access a limited to a

19 subset of the Fresh Desk data.  But the idea is now that BitMEX

20 has produced a comprehensive set of the data and that the

21 volume sort of outstrips anything we have had access to before

22 and it's just not so simple for the defense team here to -- we

23 don't -- just instruct the company to give us the data.  That's

24 not the protocol we have been following.  The defendants are

25 all on leave and we don't really have direct access to the

1    material.  So, certainly, we made a request.  It got produced.

2    There's a protocol for us to follow in terms of receipt from

3    the government and the delay is just -- as you can tell, I

4    didn't raise it unless it was incredibly frustrating in the

5    context of the upcoming trial and that's why I raised it.

6            THE COURT:  Okay.  So, does the government have an

7    estimate as to when the Fresh Desk data will be produced?

8            MR. REHN:  Yes, your Honor.  We have been informed

9    that the data will be produced next week.  As I said, at this

10   point it's a process of loading it and that's it but it's in

11   process.  We understand that it will be ready next week.

12           THE COURT:  Does it make any sense to produce port of

13   it?

14           MR. REHN:  Essentially no, because it's one set of

15   data that kind of needs to be uploaded all together onto the

16   drive that the defense has provided.  I don't think there's

17   really a way to batch it out to least as we have.  So, we are

18   going to produce it as one production.

19           THE COURT:  Okay.  Anything else that anyone wants to

20   raise with me?

21           When will the motion to dismiss be fully briefed?

22   There's just a reply brief that's necessary, right?

23           MR. SMITH:  Yes.  I think we are due at the end of

24   next week, your Honor.  Patrick Smith speaking.

25           THE COURT:  Okay.  I'll get to the motion promptly and

M1KAAHAYC                         Conference

1    probably schedule another conference with you.

2              When is our next set date?

3              MR. RAYMOND:  The next set date actually appears is

4    the final pretrial conference which is March 16th.

5              THE COURT:  Okay.  Depending upon what comes in, I may

6    meet with you before then but I can't promise that unless

7    someone specifically has issues that need to be raised, in

8    which case I'm always available.

9              Okay.  Anything else from me today?  Okay.  Good to

10   talk to you all.

11             (Adjourned)

12

13

14

15

16

17

18

19

20

21

22

23

24

25